THE HONORABLE JAMAL N. WHITEHEAD

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TED ENTERTAINMENT, INC., MATT FISHER, and GOLFHOLICS, INC., each individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>AMAZON.COM, INC., a Delaware Corporation,<br><br>        Defendant. | Case No. 2:26-cv-1134-JNW<br><br>**DEFENDANT AMAZON.COM, INC.'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**<br><br>Note on Motion Calendar: July 13, 2026<br><br>Oral Argument Requested |

DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. 2:26-cv-1134-JNW

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................... 1

FACTUAL BACKGROUND ........................................................................... 2

LEGAL STANDARD ..................................................................................... 3

ARGUMENT ................................................................................................. 4

I.     Plaintiffs' Scraping Allegations Are Entirely Speculative ................................... 4

II.    Plaintiffs Have Not Alleged that Their Works Are Protected by Access Controls ................................................................................. 6

     A.     Plaintiffs Must Identify a Technological Measure that Controls Access .............................................................. 6

          1.     Statutory Text..................................................................... 6

          2.     Statutory Structure ............................................................ 7

          3.     Legislative History ........................................................... 10

     B.     Plaintiffs Have Not Identified a Technological Measure that Controls Access ..................................................... 12

          1.     Plaintiffs' Concession that Their Videos Are Publicly Accessible Forecloses Their Section 1201(a) Claim ................................................................. 12

          2.     Plaintiffs Have Not Otherwise Identified an Access Control ............................................................................... 14

     C.     Plaintiffs' Attempt to Rewrite Section 1201(a)(1) Should Be Rejected ........................................................................... 18

CONCLUSION.............................................................................................. 22

DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. 2:26-cv-1134-JNW

i

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*,
744 F.3d 595 (9th Cir. 2014) ...............................................................................22, 23

*Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ'g Co.*,
747 F.3d 673 (9th Cir. 2014) ...............................................................................21

*Anderson v. Stability AI Ltd.*,
700 F. Supp. 3d 853 (N.D. Cal. 2023) ...................................................................5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...............................................................................3, 4, 5

*Avaya, Inc. v. Telecom Labs, Inc.*,
No. 6-cv-2490, 2012 WL 13035096 (D.N.J. May 1, 2012)...................................14

*Bell Atl. Co. v. Twombly*,
550 U.S. 544 (2007)...............................................................................4

*Columbia Pictures Indus., Inc. v. Fung*,
710 F.3d 1020 (9th Cir. 2013) .............................................................................18, 21

*Cordova v. Huneault*,
817 F. Supp. 3d 819 (N.D. Cal. 2026) ...................................................................14

*CouponCabin LLC v. Savings.com, Inc.*,
No. 14-cv-39, 2016 WL 3181826 (N.D. Ind. June 8, 2016)...................................13

*Digital Drilling Data Sys., L.L.C. v. Petrolink Servs., Inc.*,
965 F.3d 365 (5th Cir. 2020) ...............................................................................13

*Disney Enter., Inc. v. VidAngel, Inc.*,
869 F.3d 848 (9th Cir. 2017) ...............................................................................16

*EchoStar Satellite, L.L.C. v. Viewtech, Inc.*,
543 F. Supp. 2d 1201 (S.D. Cal. 2008)...................................................................22

*Ets-Hokin v. Skyy Spirits, Inc.*,
225 F.3d 1068 (9th Cir. 2000) .............................................................................19

*Google LLC v. Oracle Am., Inc.*,
593 U.S. 1 (2021)...............................................................................21

DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT                    ii
CASE NO. 2:26-cv-1134-JNW

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

*Hattler v. Ashton*,
No. 16-cv-4099, 2017 WL 11634742 (C.D. Cal. Apr. 20, 2017) ......................................13, 23

*In re Century Aluminum Co. Sec. Litig.*,
729 F.3d 1104 (9th Cir. 2013) ................................................................................................5

*Kodadek v. MTV Networks, Inc.*,
152 F.3d 1209 (9th Cir. 1998) ..............................................................................................21

*Levitt v. Yelp! Inc.*,
765 F.3d 1123 (9th Cir. 2014) ................................................................................................5

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
387 F.3d 522 (6th Cir. 2004), *abrogated on other grounds by eBay Inc. v.*
*MercExchange, L.L.C.*, 547 U.S. 388 (2006) ......................................................................7, 13

*London-Sire Rec., Inc. v. Doe 1*,
542 F. Supp. 2d 153 (D. Mass. 2008) ...................................................................................19

*Matthew Bender & Co. v. W. Publ'g Co.*,
158 F.3d 693 (2d Cir. 1998).................................................................................................19

*MDY Indus., LLC v. Blizzard Ent., Inc.*,
629 F.3d 928 (9th Cir. 2010) ...................................................................................... *passim*

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*,
551 U.S. 644 (2007)..............................................................................................................20

*Perfect 10, Inc. v. Amazon.com, Inc.*,
508 F.3d 1146 (9th Cir. 2007) ..............................................................................................19

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ..................................................................................................4

*Sullivan v. Flora, Inc.*,
936 F.3d 562 (7th Cir. 2019) ................................................................................................19

*Tremblay v. OpenAI, Inc.*,
716 F. Supp. 3d 772 (N.D. Cal. 2024) ...................................................................................5

*Twitter, Inc. v. Taamneh*,
598 U.S. 471 (2023)............................................................................................................2, 12

*United States v. Elcom Ltd.*,
203 F. Supp. 2d 1111 (N.D. Cal. 2002) ............................................................................8, 11

*Universal City Studios, Inc. v. Corley*,
273 F.3d 429 (2d Cir. 2001)............................................................................................7, 8, 11

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

*Van Buren v. United States*,
   593 U.S. 374 (2021)................................................................................................................7

*Williams v. Gaye*,
   895 F.3d 1106 (9th Cir. 2018) ...........................................................................................21

*Woodland v. Hill*,
   136 F.4th 1199 (9th Cir. 2025) ............................................................................................5

*Yout, LLC v. Recording Indus. Ass'n of Am., Inc.*,
   633 F. Supp. 3d 650 (D. Conn. 2022)................................................................................14

## STATUTES

17 U.S.C.
   § 106................................................................................................................................9, 18
   § 106(1).............................................................................................................................8, 21
   § 107.................................................................................................................................9, 11
   § 407........................................................................................................................................9
   § 411(a).............................................................................................................................9, 21
   § 501........................................................................................................................................9
   § 501(b)................................................................................................................................21
   § 504(c)(1)............................................................................................................................21
   § 504(c)(2)............................................................................................................................21
   § 1201(a) ..................................................................................................................... *passim*
   § 1201(a)(1)(A) ........................................................................................................... *passim*
   § 1201(a)(2) ............................................................................................................................9
   § 1201(a)(3)(A) ..................................................................................................................7, 12
   § 1201(a)(3)(B) ........................................................................................................... *passim*
   § 1201(b)........................................................................................................................8, 9, 20
   § 1201(b)(1)(A) ......................................................................................................................8
   § 1201(b)(2)(B) ......................................................................................................................8
   § 1201(c)(1) ............................................................................................................................9
   § 1203(a) ..............................................................................................................................22
   § 1203(c)(3)(A).....................................................................................................................22

## RULES

Fed. R. Civ. P.
   8(a)(2) ....................................................................................................................................4
   12(b)(6) ..................................................................................................................................3

## OTHER AUTHORITIES

Exemption to Prohibition on Circumvention of Copyright Protection Systems for
   Access Control Technologies, 89 Fed. Reg. 85437 (Oct. 28, 2024).....................................16

H.R. Rep. No. 105-551, pt. 1 (1998).............................................................................................11

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

Jessica D. Litman, Digital Copyright 131 (2d ed. 2006) ...............................................10

NII Copyright Protection Act of 1995, H.R. 2441, 104th Cong. § 1201 (1995) ..........................10

*NII Copyright Protection Act of 1995: Hearing on H.R. 2441 and S. 1284 Before
    the Subcomm. on Cts. & Intell. Prop.,* pt. 2, 104th Cong. 380 (1996)......................................10

Register of Copyrights, *Section 1201 Rulemaking: Ninth Triennial Proceeding to
    Determine Exemptions to the Prohibition of Circumvention* (2024) ................................16, 17

S. Rep. No. 105-190 (1998) .......................................................................................8

U.S. Copyright Office, *The Digital Millennium Copyright Act of 1998: U.S.
    Copyright Office Summary*  (1998) ........................................................................10

U.S. Copyright Office, Section 1201 of Title 17: A Report of the Register of
    Copyrights (June 2017) .............................................................................. *passim*

*WIPO Copyright Treaties Implementation Act; and Online Copyright Liability
    Limitation Act: Hearing on H.R. 2281 and H.R. 2280 Before the Subcomm. on
    Cts. & Intell. Prop.*, 105th Cong. (1997) ....................................................8, 11, 18

DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT                    v
CASE NO. 2:26-cv-1134-JNW

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

**INTRODUCTION**

Over the last several months, Plaintiffs have filed a string of complaints against a wide range of generative artificial intelligence ("AI") companies, asserting a single claim: that those companies violated Section 1201(a)(1) of the Digital Millennium Copyright Act ("DMCA") by circumventing supposed "access controls" on publicly accessible YouTube videos, in order to download and use them to train generative AI systems. But this indiscriminate barrage of Section 1201 complaints aimed at AI companies should never have targeted Amazon. There are no plausible allegations that Amazon actually engaged in the complained-of conduct. Plaintiffs' contrary theory rests on nothing more than Amazon's public statement that it trained its Nova Reel system using "curated data from a variety of sources"—including "publicly available data" and "open source datasets." Dkt. 1 ("Compl.") ¶ 61. From that innocuous disclosure, Plaintiffs conjure the unsupported conclusion that Amazon must have used four specific third-party datasets that involve downloading videos from YouTube. *Id.* ¶¶ 61-62. They identify no facts linking Amazon to those datasets. They point to no admissions, no technical evidence, no whistleblower, no document—nothing. That is not plausible pleading. It is guesswork dressed up as a class action.

But even if Plaintiffs' speculative leaps were credited, they fail to state a claim under Section 1201(a)(1). That provision *only* prohibits circumventing technological measures that control "*access* to a work." 17 U.S.C. § 1201(a)(1)(A) (emphasis added). It does not prohibit circumventing technological measures that prevent *copying* of a work. This asymmetric legal framework was by design. Congress deliberately declined—notwithstanding the urging of content owner groups—to prohibit circumventing controls that prevent *copying* of works. Doing so, Congress appreciated, would effectively eliminate the fair use defense for digital works, because Congress had not created an explicit fair use exception to violations of Section 1201.

Given that framework, Plaintiffs concede the dispositive point: every member of the public "can watch and listen to videos" on YouTube "for free." Compl. ¶ 29. No password. No paywall. No encryption. YouTube videos are accessible to anyone with a web browser—and Plaintiffs upload them to YouTube precisely so the public will watch them. The five technological

DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. 2:26-cv-1134-JNW

1

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

protection measures ("TPMs") Plaintiffs identify do not gate *access* to their works; as the Complaint's allegations concede, they restrict *downloading*, that is, making copies of the content. That makes them, at best, copy controls that may be circumvented (subject to the restrictions of the Copyright Act)—not access controls under Section 1201(a).

Plaintiffs' gambit is transparent. Plaintiffs are attempting to shoehorn what is fundamentally a copyright infringement claim into Section 1201(a)'s anti-circumvention framework, in an effort to evade the fair use defense. Permitting that claim to proceed would collapse the careful distinctions that Congress crafted in Section 1201, turning every copy control into an access control, and rendering fair use a dead letter in the digital world. The Court should not permit it.

## FACTUAL BACKGROUND

Amazon Nova Reel is an AI model that generates short and novel videos based on text prompts and optional image prompts. Amazon Nova Reel – AWS AI Service Cards, https://docs.aws.amazon.com/ai/responsible-ai/nova-reel/overview.html (last visited June 15, 2026); *see also* Compl. ¶ 2. Individuals can use Nova Reel "to create content within advertising, branding, product design, and social media workflows." Amazon Nova Reel, *supra*. For example, Nova Reel "can be used as a creative tool to help advertisers or brands create video-based assets for their advertising or marketing campaigns." *Id.* Amazon trained Nova Reel using "curated data from a variety of sources, including licensed and proprietary data, open source datasets, and publicly available data where appropriate." Compl. ¶ 61 (quoting Amazon Nova Reel, *supra*).

YouTube is a "video sharing platform" on which all members of "the public" can "watch and listen to videos for free." *Id.* ¶¶ 3, 29, 129. YouTube has "over 1 billion" users, who "collectively watch more than 1 billion hours of video *every day*." *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 479-80 (2023). Plaintiffs Ted Entertainment, Inc., Matt Fisher, and Golfholics, Inc. are "content creators" who upload videos to YouTube in order to take advantage of YouTube's public-facing nature and wide reach. Compl. ¶ 27. They "invest[] substantial time and money into

DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. 2:26-cv-1134-JNW

2

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

bringing awareness around [their] content." *Id.* ¶¶ 15-16, 18-21.  Their goal is to increase revenue by increasing "viewership" of their videos.  *Id.*

A user who uploads a video to YouTube, like Plaintiffs, agrees to YouTube's Terms of Service.  *Id.* ¶ 31.  The Terms provide that such user grants a license to "other users of YouTube to access content through YouTube's services," but not "'to make use of [the] Content independent of the Service.'"  *Id.* (quoting YouTube Terms of Service, https://www.youtube.com/t/terms (last visited June 15, 2026)).  Put differently, YouTube users can "*access*" videos by "watching and listening" to them "for free" on YouTube's platform; but they cannot "use" the videos, such as by "possessing a permanent digital copy" of them.  *Id.* ¶ 33.  Plaintiffs allege that YouTube uses five TPMs to reinforce this divide between "[s]treaming" and "downloading."  *Id.*  Specifically, they contend that these TPMs "impede[] an ordinary user from creating a permanent, unrestricted download of audiovisual content made available on YouTube."  *Id.* ¶ 45.  But they concede that the TPMs do not affect a user's ability to "stream[]" this content.  *Id.*

On April 3, 2026, Plaintiffs brought this action, on behalf of a putative class of all individuals "whose videos were posted on YouTube" and allegedly scraped by Amazon, asserting a single count under Section 1201(a)(1).  *Id.* ¶¶ 114, 127-39.  Based on Amazon's statement that it trained Nova Reel "from a variety of sources," including "publicly available data" and "open source datasets," Plaintiffs somehow assert that Amazon must have trained Nova Reel using four specific datasets—namely, HD-VG-130M, HD-VILA-100M, Panda-70M, and HowTo100M.  *Id.* ¶¶ 61-62 (citation omitted).  Plaintiffs allege that these datasets require users to "download the referenced videos directly from YouTube," and that such "download[ing] … necessarily required the mass circumvention of YouTube's TPMs."  *Id.* ¶ 62.  Plaintiffs seek statutory damages and an injunction requiring Amazon to "cease infringing … any of Plaintiff[s'] or the Class Members' exclusive rights under federal law."  *Id.* (Prayer for Relief).

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

*v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  A claim is "'plausible'" when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).  Allegations merely "consistent with" liability, or where "more likely explanations" exist, are insufficient.  *Id.* at 681.  Nor are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678.

<u>**ARGUMENT**</u>

**I.      Plaintiffs' Scraping Allegations Are Entirely Speculative**

Plaintiffs' allegations that Amazon scraped YouTube videos to train Nova Reel are entirely "speculative," *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 555 (2007), and rely on "unwarranted deductions of fact," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  They thus fail to satisfy Rule 8's requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This failure to plausibly allege that Amazon scraped videos from YouTube is reason alone to dismiss.

According to Plaintiffs, Amazon disclosed that it trained Nova Reel using "curated data from a variety of sources, including licensed and proprietary data, open source datasets, and publicly available data where appropriate."  Compl. ¶ 61 (citation omitted).  From this sole reference to "publicly available data" and "open source datasets," Plaintiffs conclude that Amazon trained Nova Reel using the HD-VG-130M, HD-VILA-100M, Panda-70M, and HowTo100M datasets.  *Id.* ¶¶ 61-62.  But Plaintiffs offer no support for this conceded "logical inference."  *Id.* ¶ 64.  They do not allege, for example, that these datasets are the only sources of publicly available data or open source datasets.

Plaintiffs assert, at most, that the HD-VG-130M, HD-VILA-100M, Panda-70M, and HowTo100M datasets are a "kind" of "dataset[] collected from the web" and "*among* the industry-standard machine learning datasets."  *Id.* ¶¶ 62, 64 (emphasis added).  But they offer no factual allegations to support their conclusory assertion that these datasets are "industry standard."  Nor do they offer reason to infer that Amazon used "industry-standard machine learning datasets"—

DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. 2:26-cv-1134-JNW

4

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

much less ones that involved scraping from YouTube, and certainly not the specific datasets identified by Plaintiffs. *See Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135-36 (9th Cir. 2014) (dismissing claim where "nothing connect[ed] … general allegations to the specific [conduct] complained of"). Plaintiffs further allege that Amazon has not publicly "identif[ied] their training data sources with specificity." Compl. ¶ 61. But Plaintiffs offer no explanation why one could reasonably infer from this nondisclosure that Amazon used the specific datasets identified by Plaintiffs. Indeed, Plaintiffs do not even argue that AI developers have an obligation to disclose this information. *See Tremblay v. OpenAI, Inc.*, 716 F. Supp. 3d 772, 779 (N.D. Cal. 2024) (rejecting argument that defendant's "failure to state which internet books it use[d] to train [AI] shows that it knowingly enabled infringement").

Plaintiffs' allegations are thus insufficient to satisfy *Iqbal*'s plausibility standard, which "asks for more than a sheer possibility that a defendant has acted unlawfully." 556 U.S. at 678; *see, e.g.*, *Woodland v. Hill*, 136 F.4th 1199, 1209 (9th Cir. 2025) (concluding, in copyright infringement context, that allegations of "access" based primarily on "wide[] accessib[ility]" is speculative); *Anderson v. Stability AI Ltd.*, 700 F. Supp. 3d 853, 869 (N.D. Cal. 2023) (dismissing copyright claim where training allegation was supported by only "the comments of Midjourney's CEO that Midjourney uses the open datasets (that plaintiffs presume are from LAION) and that they and everyone else 'train' across them"). They, at best, "remain stuck in 'neutral territory,'" and their Complaint must be dismissed. *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (citation omitted).

The allegations in nearly identical cases brought by Plaintiffs against other AI developers, asserting Section 1201(a) claims, further reinforce that the scraping allegations here are speculative. In some, Plaintiffs alleged that the developers created and published the HD-VG-130M, HD-VILA-100M, Panda-70M, and/or HowTo100M datasets, and trained their AI on them. *See, e.g.*, Dkt. 36 ¶ 89, *Ted Ent., Inc. v. Snap Inc.*, No. 26-cv-754 (C.D. Cal. Apr. 13, 2026). In others, Plaintiffs alleged that defendants disclosed their use of HD-VG-130M, HD-VILA-100M, Panda-70M, and/or HowTo100M datasets. *See, e.g.*, Dkt. 27 ¶ 82, *Ted Ent., Inc. v. ByteDance*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

*Inc.*, No. 25-cv-10933 (N.D. Cal. Apr. 13, 2026); Dkt. 31 ¶ 101, *Ted Ent., Inc. v. Meta Platforms, Inc.*, No. 25-cv-10931 (N.D. Cal. Apr. 22, 2026); Dkt. 1 ¶ 77, *Ted Ent., Inc. v. Apple, Inc.*, No. 26-cv-2936 (N.D. Cal. Apr. 3, 2026); Dkt. 30 ¶¶ 62-64, *Ted Ent., Inc. v. Nvidia Corp.*, No. 25-cv-10287 (N.D. Cal. Mar. 16, 2026).  Plaintiffs allege nothing of the sort here—presumably because they cannot, in good faith, do so.  The Complaint should be dismissed for this reason alone.

**II.    Plaintiffs Have Not Alleged that Their Works Are Protected by Access Controls**

To state a claim under Section 1201(a), Plaintiffs must identify "a technological measure that effectively controls access to a work protected under this title."  17 U.S.C. § 1201(a)(1)(A).  The text, statutory structure, and legislative history of Section 1201(a) confirm that the technological measure must control the ability for users "to gain *access* to [a] work," *id.* § 1201(a)(3)(B) (emphasis added), and that a technological measure that controls only the ability of users to *use* a work after gaining access, such as by copying, is not an access control.

Plaintiffs cannot identify a qualifying technological measure here.  At the outset, their admission that all YouTube users "can watch and listen to videos" on YouTube "for free" ends the inquiry, as it makes clear that YouTube users can access videos on YouTube *without* circumventing any technological measure.  Compl. ¶ 29.  In any case, the five TPMs identified by Plaintiffs concededly do not affect a user's experience watching or listening to videos on YouTube.  *See, e.g.*, *id.* ¶¶ 45, 65.  They are, at best, measures that limit or prohibit downloading and are thus not access controls.

**A.    Plaintiffs Must Identify a Technological Measure that Controls Access**

**1.    Statutory Text**

Section 1201(a) governs access controls, i.e., "technological measure[s] that effectively control[] access to a work protected under this title."  17 U.S.C. § 1201(a) (emphasis added); U.S. Copyright Office, Section 1201 of Title 17: A Report of the Register of Copyrights ("USCO 2017 Rep.") at 6 (June 2017), https://copyright.gov/policy/1201/section-1201-full-report.pdf.   To "'effectively control[] access to a work'" is to "in the ordinary course of its operations, require[] the application of information, or a process or a treatment, with the authority of the copyright

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

owner, to *gain access to the work*." 17 U.S.C. § 1201(a)(3)(B) (emphasis added).  The text thus makes clear that when determining whether a technology is an access control, the relevant conduct is "gain[ing] access to the work."  *Id.*; *see also Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 441 (2d Cir. 2001) (access controls "prevent access to a work" in the first instance).  An access control is agnostic to the accessing party's ultimate use of the work, meaning that it does not necessarily prevent a use that might constitute copyright infringement.  *See MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 945 (9th Cir. 2010).

"Access" under Section 1201(a) is binary; a technological measure either prevents others from gaining access to the work or does not control access at all.  Take the examples of access controls identified by Congress as illustration.  An "encrypted" DVD cannot be watched at all until "decrypt[ed]."  17 U.S.C. § 1201(a)(3)(A).  A "scrambled" audio file cannot be played at all until "descramble[d]."  *Id.*  And when faced with a password protected website "limiting access to [the] website to paying customers," a user who has the password can use it to view the works on the website, whereas a user who does not have the password cannot view the works at all.  USCO 2017 Rep. at 6.  In short, "access" is a "gates-up-or-down inquiry"; "one either can or cannot access" a work.  *Van Buren v. United States*, 593 U.S. 374, 390 (2021) (interpreting "access" as used in the analogous Computer Fraud and Abuse Act).

Section 1201(a) thus does not apply to "a technological measure that restricts one form of access but leaves another route wide open."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 547 (6th Cir. 2004), *abrogated on other grounds by eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006).  And so, when a work is publicly accessible, no "authority of the copyright owner" is required to "gain access"; that is, no technological measure controls access to the work.

### 2.    Statutory Structure

The statutory structure reinforces that Section 1201(a) concerns only the initial exposure to a copyrighted work.  As the Ninth Circuit has recognized, Section 1201 distinguishes between two types of TPMs: access controls and copy controls.  *See MDY Indus.*, 629 F.3d at 944-45.

DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. 2:26-cv-1134-JNW                           7                    LATHAM&WATKINS LLP
                                                                    ATTORNEYS AT LAW
                                                                    1271 AVENUE OF THE AMERICAS
                                                                    NEW YORK, NY 10020
                                                                    TEL: (212) 906-1200

Whereas Section 1201(a) governs access controls and is concerned with what happens *to gain access*, *see supra* at 6-7, Section 1201(b) governs copy controls and is concerned with what happens *after gaining access*.

Copy controls are "technological measure[s] that effectively protect[] a right of a copyright owner under this title in a work or a portion thereof." 17 U.S.C. § 1201(b)(1)(A). A technological measure that "effectively protects a right of a copyright holder" "prevents, restricts, or otherwise limits the exercise of a right of a copyright owner under this title." *Id.* § 1201(b)(2)(B). The "right[s] of a copyright owner" are set out in the Copyright Act and include the "exclusive right" of reproduction. *Id.* § 106(1).

Unlike access controls, copy controls "do[] nothing to prevent access to … the work." S. Rep. No. 105-190 ("Senate Rep."), at 12 (1998). Rather, they are concerned with how the work is used *after* it is accessed and are designed "to prevent [a] work from being copied" after the fact. *Id.*; *see also Corley*, 273 F.3d at 441 (copy controls "*permit access* to a work but *prevent copying* of th[at] work"); *MDY Indus.*, 629 F.3d at 944-45 (similar). The quintessential copy control is "a technology that blocks users from downloading copies" of a work. *WIPO Copyright Treaties Implementation Act; and Online Copyright Liability Limitation Act: Hearing on H.R. 2281 and H.R. 2280 Before the Subcomm. on Cts. & Intell. Prop.* ("1997 Hearing"), 105th Cong. 48 (1997). Such a system is not an access control because it does not prohibit a user from viewing, listening to, or otherwise "gain[ing] access to the work." 17 U.S.C. § 1201(a)(3)(B). Instead, it prevents a user from creating an unauthorized reproduction of the work; that is, it "protects a right of a copyright owner." *Id.* § 1201(b)(1)(A).

This distinction is critical because Section 1201 prohibits different conduct for access controls and copy controls. *MDY Indus.*, 629 F.3d at 944. With regard to access controls, "Congress banned *both* the act of circumventing access controls *as well as* trafficking in and marketing of devices that are primarily designed for such circumvention." *United States v. Elcom Ltd.*, 203 F. Supp. 2d 1111, 1119-20 (N.D. Cal. 2002) (emphasis added). Section 1201(a)(1), the act-of-circumvention prohibition, provides that "[n]o person shall circumvent a technological

measure that effectively controls access to a work protected under this title."   17 U.S.C. § 1201(a)(1)(A).   Section 1201(a)(2), the anti-trafficking provision, prohibits the manufacture or sale of "any technology, product, service, device, component, or part thereof" that is "primarily designed or produced for the purpose of circumventing" an access control.   *Id.* § 1201(a)(2).

Congress chose to treat copy controls differently.   Section 1201(b) bans trafficking in devices primarily designed for circumvention.   *Id.* § 1201(b).   But it does *not* ban the act of circumventing a copy control.   That is because "copyright law has long forbidden copyright infringement"—the result of circumventing a copy control—and "so no new prohibition was necessary."   *MDY Indus.*, 629 F.3d at 945 (citation omitted).   Any claim alleging a circumvention of a copy control is properly brought (if at all) as a copyright infringement claim under the Copyright Act, *see* 17 U.S.C. § 501, subject to its various requirements, including registration, *see id.* § 411(a), and deposit copies, *see id.* § 407, and its variety of affirmative defenses—most notably, the fair use defense, *see id.* § 107; *see also* 17 U.S.C. § 1201(c)(1) ("Nothing in this section shall affect … defenses to copyright infringement, including fair use.").

In short, Sections 1201(a) and (b) are "not interchangeable."   Senate Rep. at 12.   Rather, access controls and copy controls are distinctly defined and governed by different statutory provisions:

|  | **Circumvention Prohibition** | **Trafficking Prohibition** |
|---|---|---|
| **Access Controls** | § 1201(a)(1) | § 1201(a)(2) |
| **Copy Controls** | §§ 106, 501 (not governed by § 1201) | § 1201(b) |

*See* USCO 2017 Rep. at 7.   Any interpretation of what constitutes an access control, what constitutes a copy control, and, in rare circumstances, what constitutes both must not collapse this considered distinction between access and copy controls and must "ensure[] that neither section [1201(a) or (b)] is rendered superfluous."   *MDY Indus.*, 629 F.3d at 946.

DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT                                        9
CASE NO. 2:26-cv-1134-JNW

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

### 3.     Legislative History

The legislative history reinforces that Section 1201(a) covers only technological measures that control access and makes clear that Congress deliberately enacted an asymmetrical framework to ensure that the DMCA did not serve as a workaround to the Copyright Act, including the fair use defense.

When proposals for an anti-circumvention bill first came before Congress in 1995, the bill prohibited only trafficking in devices designed to circumvent copy controls. NII Copyright Protection Act of 1995, H.R. 2441, 104th Cong. § 1201 (1995). Legacy media groups wanted to go even further and lobbied for a sweeping prohibition, backed by criminal sanctions, on the act of circumventing copy controls. *See, e.g.*, *NII Copyright Protection Act of 1995: Hearing on H.R. 2441 and S. 1284 Before the Subcomm. on Cts. & Intell. Prop.,* pt. 2 ("1996 Hearing"), 104th Cong. 380, 494 (1996); *see also* Jessica D. Litman, Digital Copyright 131 (2d ed. 2006), available at https://repository.law.umich.edu/books/1. But technology industry representatives, among others, noted that such a broad prohibition would "impede 'legal' copying"—namely, fair use. 1996 Hearing at 149; *see also id.* at 83, 432 (tech coalitions arguing that "any 'anti-circumvention' provision must be carefully drafted so as not to prevent legitimate activities"); *id.* at 543 (noting that fair use is a prototypical example of the public being able to "make copies of [a] work without infringing the copyright"); Litman, *supra*, at 132 (industry groups argued that "[i]f the reason a person circumvented a copy protection measure was to make fair use of the protected work, then that circumvention should itself be legal"). Prohibiting *anything* that could be construed as circumvention of copy controls would prohibit and chill activity that the fair-use doctrine expressly authorizes.

To protect "the continued ability to make fair use of copyrighted works," Congress enacted an asymmetrical framework that clearly distinguishes between access controls and copy controls. U.S. Copyright Office, *The Digital Millennium Copyright Act of 1998: U.S. Copyright Office Summary* ("USCO 1998 Rep.") at 4 (1998), https://www.copyright.gov/legislation/dmca.pdf. As explained, the statute prohibits the circumvention of access controls. *See supra* at 8-9. But "[s]ince

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

copying of a work may be fair use under appropriate circumstances, section 1201 does not prohibit the act of circumventing a [copy control]." USCO 1998 Rep. at 4.

The justification for the "compromise" reflected in the resulting statutory framework is straightforward. Litman, *supra*, at 133-34. Any copyright owner has the baseline right to decide when and how to make her work accessible to the public—e.g., whether to keep a newly written book under "lock and key," whether to "show it to others selectively," or whether to make it freely available for public access. 1997 Hearing at 49 (testimony of Marybeth Peters, Register of Copyrights). Access controls are simply another way to implement this decision, and prohibiting their circumvention is nothing more than another way to "back[]" the choice to withhold access *ab initio* "with legal sanctions." *Corley*, 273 F.3d at 435.

But once a copyright owner decides to make a work accessible to the public, whether someone can copy it depends not on the copyright owner's preference, but on the Copyright Act, which encompasses the doctrine of fair use. *See* 17 U.S.C. § 107; *see also Elcom*, 203 F. Supp. 2d at 1121 (fair use "allow[s] a certain amount of direct copying for certain uses, without the permission of the copyright owner and notwithstanding the copyright owner's exclusive rights"). Copyright holders and the platforms that host their works are free to implement TPMs that prevent copying as a technical matter. *See* H.R. Rep. No. 105-551, pt. 1 ("House Rep."), at 19 (1998). Indeed, Congress encouraged such self-help, by prohibiting trafficking in tools designed to allow others to circumvent copy controls. But prohibiting the circumvention of copy controls outright would have amounted to a strict legal prohibition on copying any time a work is protected by a copy control, even if that copying would otherwise be explicitly authorized under the doctrine of fair use. By enacting Section 1201's asymmetrical regime, "Congress expressly disclaimed any intent to impair any person's rights of fair use." *Elcom*, 203 F. Supp. 2d at 1120-21. And it affirmed that the remedies for circumventing copy controls, if any, are governed by the Copyright Act—not the DMCA. *See MDY Indus.*, 629 F.3d at 947.

DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. 2:26-cv-1134-JNW

11

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

In short, Section 1201(a)(1) prohibits the circumvention of only technological measures that control "access"—not copying or any other form of copyright infringement that occurs after access.

**B.      Plaintiffs Have Not Identified a Technological Measure that Controls Access**

**1.      Plaintiffs' Concession that Their Videos Are Publicly Accessible Forecloses Their Section 1201(a) Claim**

On Plaintiffs' own account, YouTube is the paradigmatic platform where videos can be accessed *without* circumventing an access control. Plaintiffs do not allege that YouTube has technological measures that restrict or otherwise control one's ability to "gain access to the work." 17 U.S.C. § 1201(a)(3)(B). For example, they do not allege that YouTube encrypts or scrambles its videos so that they cannot be viewed by anyone without the decryption or a descrambler or that YouTube uses a password that prevents those without the password from watching videos. *Id.* § 1201(a)(3)(A). Nor do they allege that Amazon "appli[ed]"—or needed to apply—any "information, or a process or a treatment" in order to watch videos on YouTube's platform. *Id.* § 1201(a)(3)(B).

Rather, YouTube is "generally available to the internet-using public." *Twitter*, 598 U.S. at 498. Plaintiffs concede that all members of the public "can watch and listen to videos" on YouTube "for free." Compl. ¶ 29; *see also id.* ¶¶ 3, 129 (similar). And YouTube's Terms of Service expressly state that individuals, like Plaintiffs, who upload their content to YouTube, grant a "license" to "other users of YouTube to *access [their] content* through YouTube's services." *Id.* ¶ 31 (emphasis added). Indeed, YouTube's business model depends on such free access. The whole reason why content-creators, like Plaintiffs, upload their work on YouTube is *because* it allows a broader number of people to view their work. Plaintiffs, for example, "invested substantial time and money into bringing awareness around [their] content" because they "deriv[e] value … through viewership" of their videos. *Id.* ¶¶ 15-16, 18-21. And they did so successfully: billions of people have watched Plaintiffs' public videos for free. *See id.* As the Ninth Circuit has made clear, access controls affect whether "someone [can] watch or listen to a work." *MDY Indus.*,

DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. 2:26-cv-1134-JNW

12

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

629 F.3d at 945. Plaintiffs' concession that YouTube employs no measures that affect whether someone can watch or listen to a work is thus dispositive of their Section 1201(a) claim.

Multiple courts of appeals have confirmed that public accessibility squarely forecloses a Section 1201(a) claim. In *MDY Industries*, the Ninth Circuit concluded that a TPM that "scans a computer[]" to ensure that "a bot is [not] running" "prior to allowing the player to connect to [World of Warcraft's ("WoW")] servers" did not control access to WoW's source code or the "visual and audio components of [its] game" because both could "be accessed by a user without signing on to the server." *Id.* at 942, 952. The Court confirmed that a technology that "block[s] only one form of access" to a work while "le[aving] intact another form of access" is not an access control. *Id.* at 952. In *Lexmark*, the Sixth Circuit concluded that a TPM that prevents the use of unauthorized toner cartridges with printers was not an access control because "[a]nyone who buys a Lexmark printer may read the literal code of [the program] directly from the printer memory" and thus can access the work without interacting with the technological measure. 387 F.3d at 546-47. In other words, although the TPM blocked the *use* of the printer when an unauthorized cartridge was present, it did not prevent the purchaser of a printer from *accessing* the copyrighted code without circumventing anything, such as by simply examining it directly. *Id.* Drawing on a physical analogy, the Sixth Circuit emphasized: "Just as one would not say that a lock on the back door of a house 'controls access' to a house whose front door does not contain a lock … , it does not make sense to say that [Section 1201] applies to otherwise-readily-accessible copyrighted works." *Id.* at 547. And in *Digital Drilling Data Sys., L.L.C. v. Petrolink Servs., Inc.*, the Fifth Circuit concluded that a TPM that "may have effectively restricted certain unauthorized uses of [a] software" was not an access control in part because the relevant "data was stored in an open database file." 965 F.3d 365, 376 (5th Cir. 2020). Numerous district courts are in accord. *See, e.g.*, *Hattler v. Ashton*, No. 16-cv-4099, 2017 WL 11634742, at *5-8 (C.D. Cal. Apr. 20, 2017) (dismissing Section 1201(a)(1) claim for failure to identify access control where plaintiff alleged that defendant had circumvented a TPM that prohibited downloading); *CouponCabin LLC v. Savings.com, Inc.*, No. 14-cv-39, 2016 WL 3181826, at *6 (N.D. Ind. June 8, 2016) (similar, where

DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. 2:26-cv-1134-JNW

13

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

"website remains accessible" notwithstanding technological measures); *Avaya, Inc. v. Telecom Labs, Inc.*, No. 6-cv-2490, 2012 WL 13035096, at *8 (D.N.J. May 1, 2012) (similar, where TPM did not "prevent all forms of access to the protected work").

To be sure, a small handful of non-binding district court decisions have addressed YouTube's anti-scraping measures under Section 1201(a). In *Yout, LLC v. Recording Industry Association of America, Inc.*, the district court suggested for the first time in the DMCA's 28-year history that a technology that controls a means of copying but not access constitutes an access control. 633 F. Supp. 3d 650, 662 (D. Conn. 2022), *appeal pending*, No. 22-2760 (2d Cir.). But the parties in *Yout* did not brief or argue the statutory distinction between access and copy controls, leading to an opinion that failed to analytically distinguish between the two on this critical, threshold question. *Id.* Nor did the defendants or court reconcile their position with the binary meaning of access and the body of circuit precedent suggesting that public accessibility forecloses a Section 1201(a) claim. *Id.* For this reason, the Second Circuit granted a motion to file an out-of-time amicus brief in support of neither party, and gave the parties the opportunity to file responsive briefing, so this issue could be properly briefed and considered. *See* Dkt. 124, *Yout*, No. 22-2760 (2d Cir. Oct. 10, 2025) (motion order); Dkt. 127, *Yout*, No. 22-2760 (2d Cir. Oct. 10, 2025) (amicus brief). In the meantime, a few district courts have followed suit and have compounded the error in *Yout*. But none meaningfully grappled with the statutory distinction between access and copy controls. In *Cordova v. Huneault*, for example, the court purported to follow the lead of several cases, including *Yout*, and concluded that "identifying measures that restrict access to downloadable files[] [is] sufficient" to state a Section 1201(a)(1) claim—but revealingly cited cases considering *both* Section 1201(a) and Section 1201(b) claims to support this mistaken conclusion. 817 F. Supp. 3d 819, 834 (N.D. Cal. 2026). These cases are thus inconsistent with Section 1201(a)'s text, structure, and purpose and should be disregarded.

### 2.    Plaintiffs Have Not Otherwise Identified an Access Control

The public accessibility of Plaintiffs' videos ends the inquiry and is sufficient, alone, to dismiss Plaintiffs' Section 1201(a) claim. Although Plaintiffs identify five TPMs that they allege

DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. 2:26-cv-1134-JNW

14

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

are access controls, Plaintiffs concede that none affects a user's experience watching or listening to videos on YouTube. The TPMs still "allow[] the public" to "watch and listen to videos" on YouTube "for free," without having to apply any information, process, or treatment. Compl. ¶¶ 3, 29; *see also, e.g.*, *id.* ¶¶ 32-33, 45, 65, 134. And they do not otherwise affect the viewing experience on YouTube or a user's ability to "gain access to [a] work." 17 U.S.C. § 1201(a)(3)(B). As explained, that concession is dispositive. *See supra* at 12-14.

But even if the Court were to consider the specific TPMs identified by Plaintiffs, the Complaint's allegations make clear that none "controls access to a work." 17 U.S.C. § 1201(a). They, at best, limit or prohibit only downloading.

Rolling Cipher: By Plaintiffs' own admission, the purpose of the rolling cipher is to "restrict[] downloading." Compl. ¶ 45. Every video on YouTube has two URLs: (1) a "page URL," which is "visible to the user" and links to "the webpage where the video playback occurs"; and (2) a "file URL," which is "not visible to the user" and links to "the video file itself." *Id.* Plaintiffs allege that the rolling cipher encrypts the file URL to prevent "downloading, copying or distribution of the audiovisual content." *Id.* They further allege that Amazon circumvented the rolling cipher by decrypting the file URL to "download[]" the "audiovisual file[]." *Id.* ¶ 90. But according to Plaintiffs, the rolling cipher does not similarly encrypt the page URL or otherwise affect the experience of *watching* videos on YouTube. *See id.* ¶ 45 (content still "available on YouTube … for streaming"). And a user does not need to do anything—much less apply any information, process, or treatment—to watch a YouTube video. Rather, anyone with a web browser and internet connection can view Plaintiffs' works on YouTube. The rolling cipher is thus not an access control.

IP-Based Blocking and Rate Limiting Triggered by Excessive Downloading: Plaintiffs do not allege that this measure is employed each time a YouTube video is watched or streamed. Rather, they allege that this measure is employed only against certain IP addresses, when those IP addresses exhibit "excessive or abuse request patterns" consistent with "too many download attempts." *Id.* ¶¶ 40, 47. When that happens, YouTube blocks that IP address from "further"

DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. 2:26-cv-1134-JNW

15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

accessing the YouTube platform. *Id.* ¶¶ 49, 95. There is thus no dispute that prior to the block, users have free access to the videos on YouTube's platform.

Importantly, Plaintiffs do not allege that Amazon circumvented the TPM by somehow "gain[ing] access" to YouTube's platform after its IP address was blocked. 17 U.S.C. § 1201(a)(3)(B). Rather, they baldly allege that Amazon used an IP rotator to download at scale, without triggering the block at all. *Id.* ¶ 95; *see Disney Enter., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 864 (9th Cir. 2017) (TPM was access control insofar as it required decryption to "watch" DVD using "unlicensed DVD player," but copy control insofar as it required decryption to "reproduce[]" or "cop[y]"). Even when the block is triggered, Plaintiffs do not allege that Amazon applies any information, process, or treatment to circumvent the block. Rather, they contend that Amazon simply uses a "different IP address[]," which allegedly allows them to "immediately resume" "accessing and downloading." Compl. ¶ 94. These allegations only reinforce that anyone with Internet access can freely access Plaintiffs' works on YouTube.

For these reasons, the Copyright Office has already concluded that these sorts of "rate limit enforcement systems do not effectively control access to a work as contemplated by section 1201," explaining that "[t]hey do not require 'the application of information, or a process or a treatment'— but instead require that users refrain from [certain] conduct," namely, downloading. Register of Copyrights, *Section 1201 Rulemaking: Ninth Triennial Proceeding to Determine Exemptions to the Prohibition of Circumvention* ("Section 1201 Rulemaking Rep.") at 125 (2024), available at https://www.copyright.gov/1201/2024/2024_Section_1201_Registers_Recommendation.pdf; *see also* Exemption to Prohibition on Circumvention of Copyright Protection Systems for Access Control Technologies, 89 Fed. Reg. 85437, 85437 (Oct. 28, 2024) (final rule adopting Copyright Office's recommendations). And it has observed that "IP address rotation … does not appear to involve the circumvention of an effective control" because it does "not prevent [users] from accessing … the web service via other servers and internet service providers." Section 1201 Rulemaking Rep. at 125. Plaintiffs offer no reason to depart from this conclusion.

DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. 2:26-cv-1134-JNW

16

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

Short-Lived, Session-Bound Streaming URLs: Plaintiffs allege that YouTube uses temporary URLs to make it more difficult to copy videos that a user is free to access and view. As explained, Plaintiffs allege that every video on YouTube has two URLs: (1) a link to "where the video playback occurs," and (2) a link to "the video file itself." Compl. ¶ 45. Whereas the latter is a permanent link, the former is a temporary link "tied to a particular playback session." Id. ¶ 51. When a user watches a video on YouTube, YouTube provides them with only the temporary link to "where the video playback occurs"—and not a permanent link to "the video file itself." Id. ¶¶ 45, 51. By providing users with only the temporary link, YouTube prevents users from being able to download the video file itself using "a static link." Id. ¶ 52. Plaintiffs acknowledge that the use of these temporary URLs affects only users who attempt to "persistent[ly] retriev[e] [the video] files in a manner not available to ordinary users," such as by "scraping" (i.e., downloading). Id. And they likewise acknowledge that the use of these links does not affect the experience of an average user within the "ordinary playback" environment—i.e., viewing and streaming videos on YouTube. Id. These URLs are thus not access controls.

CAPTCHA Challenges Triggered by Excessive Downloading: Like with IP-based blocking, Plaintiffs do not allege that CAPTCHA challenges are employed each time a user tries to watch a YouTube video. Rather, users can watch videos on YouTube without completing a CAPTCHA challenge. But if their "traffic patterns indicate automated or suspicious activity," such as excessive downloading by "bot[s]," YouTube "may require completion of a CAPTCHA challenge." Id. ¶ 53. Plaintiffs' allegations thus make clear that the purpose of the CAPTCHA challenge is to prevent further downloading—not access in the first instance. In addition, Plaintiffs allege that Amazon "circumvented" the technology by downloading in bulk without triggering the CAPTCHA challenge. Id. ¶ 54. As with IP blocking, Plaintiffs' allegation that the CAPTCHA penalty was never imposed is incompatible with an allegation that Amazon circumvented the unapplied measure. In all events, these speculative CAPTCHA challenges serve as a tool to prevent downloading (i.e., copying) and not to restrict who can view (i.e., access) the work in the first instance.

DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. 2:26-cv-1134-JNW

17

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

Proof-of-Origin Tokens: As alleged, YouTube uses proof-of-origin tokens to ensure that a user is merely viewing content on YouTube and not downloading or otherwise "retriev[ing] [the] audiovisual file[]" itself. *Id.* ¶¶ 53, 55. As alleged by Plaintiffs, these tokens do not limit or otherwise affect a user's ability to watch videos on YouTube. *Id.* A user does not need to do anything—much less apply any information, process, or treatment—to watch a video on YouTube's platform. *Id.* These tokens are thus not access controls.

On Plaintiffs' own account then, YouTube's TPMs prohibit only "unauthorized downloading." Compl. ¶ 90; *see also id.* ¶¶ 34, 38, 40, 43. But to "download[]" is a form of "reproduction." *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1034 (9th Cir. 2013). And so, a prohibition on downloading protects a copyright holder's exclusive right to reproduction under Section 106—not the right to control access to the work. The legislative history confirms this. Most obviously, the Register of Copyrights described "a technology that blocks users from downloading copies" of a work as the quintessential example of a "measure[] that prevent[s] acts of infringement, rather than access"—i.e., a copy control. 1997 Hearing at 48. And the Register of Copyrights stated, unambiguously, that Section 1201 "does not include a prohibition on the act of circumvent[ing]" a measure that prevents downloading. *Id.* Put simply, a TPM that prohibits downloading is not an access control.

## C.    Plaintiffs' Attempt to Rewrite Section 1201(a)(1) Should Be Rejected

Plaintiffs cannot avoid this straightforward result by rewriting the statute as prohibiting the circumvention of TPMs that control "access to *files* for unauthorized downloading." Compl. ¶ 40; *see also id.* ¶ 34 ("scraping or bulk downloading … is an act of unauthorized access to data files that YouTube affirmatively withholds from public downloading"). Plaintiffs' core contention appears to be that TPMs that prohibit downloading are access controls because downloading is "an act of unauthorized access to data files." *Id.* ¶ 34. But that is not what the statute says. Section 1201(a)(1) defines an access control as a TPM that "controls access to *a work*." 17 U.S.C. § 1201(a)(1)(A) (emphasis added); *see also id.* § 1201(a)(3)(B) (to "'effectively control[] access to a work'" is to "require[] the application of information … to gain access to *the work*" (emphasis

DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. 2:26-cv-1134-JNW

18

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

added)).  Had Congress intended for Section 1201(a) to protect access to specific files, i.e., "copies of" a work, Compl. ¶ 86, Congress would have said so explicitly.

*First*, controlling access to a "file" is not the same as controlling access to a "work."  In copyright law, the term "work" refers to the "original expression … entitled to protection." *Sullivan v. Flora, Inc.*, 936 F.3d 562, 567-68 (7th Cir. 2019); *see also Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1079 (9th Cir. 2000) ("[T]he term 'work' or 'works' is used throughout the Copyright Act to refer to the 'subject matter' that the act is designed to protect: 'original works of authorship.'").  In other words, a "work," in this context, means *the expressive content itself*—i.e., the copyrighted expression embodied in the video files that YouTube makes available for free public streaming—and not the particular "material object" in which the work is embodied.  *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1160 (9th Cir. 2007) ("[a] photographic image is a work," while "[t]he image stored in the computer is the 'copy' of the work for purposes of copyright law"); *London-Sire Rec., Inc. v. Doe 1*, 542 F. Supp. 2d 153, 171 (D. Mass. 2008) (Congress "distinguish[ed] between the abstract, original work on the one hand, which is the source of the copyrights, and its material incarnation on the other"); *Matthew Bender & Co. v. W. Publ'g Co.*, 158 F.3d 693, 702 (2d Cir. 1998) (the Copyright Act establishes a "fundamental distinction" between a work and a copy of that work).  If the copyrighted *expression* is available without going through or circumventing the TPM, then the TPM does not "control[] access to [the] *work*."  17 U.S.C. § 1201(a)(1)(A) (emphasis added).

Here, Plaintiffs allege, at most, that YouTube has TPMs that present a barrier to parties seeking to download specific files containing "copies of" Plaintiffs' works.  Compl. ¶¶ 86, 45.  And they allege, at most, that Amazon circumvented these TPMs by "retriev[ing] permanent copies of content that YouTube makes available only for streaming." *Id.* ¶ 86.  But, as explained, Plaintiffs never allege that YouTube has TPMs that restrict or otherwise control one's ability to "gain access to the work" in the first place. *See supra* at 15-18.  Indeed, Plaintiffs acknowledge that the "expression" embodied in those works is readily accessible without circumventing TPMs. *See supra* at 12-14.  As described by Plaintiffs, therefore, YouTube's TPMs are not access controls.

DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. 2:26-cv-1134-JNW

19

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

*Second*, Plaintiffs' attempt to equate downloading with access is inconsistent with the structure and purpose of the DMCA. *See Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 666 (2007) (noting the "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme"). Plaintiffs allege that TPMs preventing users from copying or downloading content are access controls, under the theory that a prohibition of copying or downloading restricts the "manner" of access. Compl. ¶ 43. But Plaintiffs' allegations, taken to their logical conclusion, would mean that all copy controls are also access controls. That is the opposite of what Congress intended.

As explained, Congress carefully distinguished between access and copy controls and created an asymmetrical statutory scheme that treats them differently. *See supra* at 7-12. Section 1201(a) "'protect[s] access to a copyrighted work,'" a right "independent of traditional copyright infringement." *MDY Indus.*, 629 F.3d at 946-47 (citation omitted). Subsection (b) "'protect[s] the traditional copyright rights of the copyright owner'" by "grant[ing] copyright owners a new weapon against copyright infringement." *Id.* (citation omitted). Whereas subsection (a) prohibits circumventing access controls, subsection (b) "d[id] not prohibit circumvention [of copy controls] because such conduct was already outlawed," where appropriate, "as copyright infringement." *Id.* at 945.

As the Ninth Circuit has emphasized, Sections 1201(a) and (b) are "not interchangeable." *Id.* at 946 (quoting Senate Rep. at 12). Indeed, "many devices will be subject to challenge only under one of [Sections 1201(a) or (b)]." *Id.* But Plaintiffs' interpretation would collapse this distinction. Take, for instance, a mechanism designed to "prevent[] the copying of an e-book after it has been downloaded to a user's device"—a paradigmatic copy control. USCO 2017 Rep. at 6. Under Plaintiffs' formulation, that mechanism would also be an access control, even though it does not prevent a user from accessing (i.e., reading) the book, because it "restrict[s] users' ability to access" the work by preventing the kind of access that would enable a user to make a copy. Compl. ¶ 41. That is not a plausible interpretation of the statute.

DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. 2:26-cv-1134-JNW

20

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

*Finally*, if Section 1201(a)(1) creates liability for circumventing a TPM that controls *how* freely accessible works are used or interacted with, as Plaintiffs urge, it would permit an end-run around the requirements and defenses of the Copyright Act.  The Copyright Act gives copyright owners several exclusive rights, including the right to reproduction.  17 U.S.C. § 106(1).  This right to reproduction encompasses the right to prevent others from downloading the work.  *See Columbia Pictures Indus.*, 710 F.3d at 1034.  When this right is infringed, the Copyright Act provides a remedy: "The legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of section 411, to institute an action for any infringement of that particular right committed while he or she is the owner of it."  17 U.S.C. § 501(b).  Accordingly, before bringing an infringement claim, such as for unauthorized downloading, a plaintiff must "regist[er] … the copyright claim" with the Copyright Office, *see id.* § 411(a), and "deposit as part of his application … 'bona fide copies of the original work,'" *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1211 (9th Cir. 1998) (citation omitted).  To prevail on the claim, the plaintiff must prove that "(1) he or she owns the copyright in the infringed work, and (2) the defendant copied protected elements of the copyrighted work." *Williams v. Gaye*, 895 F.3d 1106, 1119 (9th Cir. 2018).  And the plaintiff must defeat any affirmative defenses a defendant raises, including fair use. *See Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 18 (2021).

To obtain statutory damages for the infringement, the Copyright Act imposes additional requirements.  For instance, "[r]egistration prior to infringement or, if the work is published, within three months of publication, is necessary for an owner to obtain statutory damages and attorneys' fees." *Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ'g Co.*, 747 F.3d 673, 678 (9th Cir. 2014).  Even then, an award of statutory damages is capped at $30,000 per "work," or when a plaintiff has satisfied its burden of proving that "infringement was committed willfully," at $150,000 per "work."  17 U.S.C. § 504(c)(1)-(2).

Section 1201(a) of the DMCA was enacted against this existing backdrop and targeted a specific problem: the circumvention of access controls.  For this narrow set of claims, "[a]ny person injured by a violation of section 1201[(a)]" can "bring a civil action … for such violation."

DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. 2:26-cv-1134-JNW

21

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

*Id.* § 1203(a). And it imposes penalties ranging from $200 to $2,500 for each "act of circumvention." *Id.* § 1203(c)(3)(A). Unlike a copyright infringement claim, therefore, a Section 1201(a) claim is not limited to copyright holders and thus does not require registration to initiate a suit or obtain statutory damages. *See, e.g.*, *EchoStar Satellite, L.L.C. v. Viewtech, Inc.*, 543 F. Supp. 2d 1201, 1205 (S.D. Cal. 2008) (collecting cases). And it imposes statutory damages for "each act of circumvention," rather than for each "work," meaning that damages in a Section 1201(a) case could outstrip statutory damages in an infringement action.

As explained, the legislative history makes clear that Section 1201 was not supposed to replace the Copyright Act as the way to vindicate copyright infringement. *See supra* at 10-11. Indeed, Congress deliberately crafted Section 1201 to not prohibit circumvention of copy controls *because* "such conduct was already outlawed as copyright infringement." *MDY Indus.*, 629 F.3d at 945. And Section 1201 was certainly not enacted to implicitly expand the Copyright Act to prohibit all forms of copying—regardless of whether such copying was fair use—so long as it involved the circumvention of a technological measure. Such a regime would make no sense— and, regardless, Congress explicitly considered and rejected it. Plaintiffs' attempt at an end run around the Copyright Act and its various requirements and limitations should thus be firmly rejected.

## CONCLUSION

For the foregoing reasons, Amazon's motion should be granted, and Plaintiffs' Complaint should be dismissed. Dismissal should be with prejudice because "[a] party cannot amend pleadings to 'directly contradict an earlier assertion made in the same proceeding.'" *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) (cleaned up). Because Plaintiffs have alleged that YouTube's TPMs permit all members of the public to stream, watch, and listen to Plaintiffs' videos on YouTube for free and prohibit only "downloading permanent copies," *see, e.g.*, Compl. ¶ 33, any attempt to reverse these core allegations would be impermissible. And any other amendment in the face of those allegations would be futile. *See Airs Aromatics*, 744 F.3d at 600; *see, e.g.*, *Hattler*, 2017 WL 11634742, at *8

DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT                    22
CASE NO. 2:26-cv-1134-JNW

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

(amendment of Section 1201(a) claim would be futile where plaintiff failed to identify access control and "it is uncontested that the Works are accessible to the public on many websites").

Dated:  June 15, 2026

By: _/s/ Sarang V. Damle_
Sarang V. Damle (*pro hac vice*)
*sy.damle@lw.com*
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Tel: (202) 637-3332

Allison L. Stillman (*pro hac vice*)
*alli.stillman@lw.com*
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200

_/s/ David Freeburg_
David Freeburg (WSBA No. 48935)*
*david.freeburg@us.dlapiper.com*
Danielle Igbokwe
*danielle.igbokwe@us.dlapiper.com*
DLA PIPER US LLP
701 Fifth Avenue, Suite 6900
Seattle, WA 98104
Tel: (206) 839-4800

*Attorneys for Defendant Amazon.com, Inc.*

*I certify that this memorandum contains 8,146 words, in compliance with the Local Civil Rules.

DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. 2:26-cv-1134-JNW

23

## CERTIFICATE OF CONFERRAL

Pursuant to Section 5.6 of the Court's Chambers Procedures – Civil, I certify that counsel for Defendant Amazon.com, Inc. conferred with counsel for Plaintiffs on June 8, 2026. The parties were unable to reach an agreement that would obviate the need for this motion.

/s/ Sarang V. Damle
Sarang V. Damle

DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. 2:26-cv-1134-JNW

24