THE HONORABLE JAMAL N. WHITEHEAD

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

TED ENTERTAINMENT, INC.,
MATT FISHER, and GOLFHOLICS, INC.,
each individually and on behalf of all others
similarly situated,

        Plaintiffs,

    v.

AMAZON.COM, INC.,
a Delaware Corporation,

        Defendant.

Case No. 2:26-cv-01134-JNW

**DEFENDANT AMAZON.COM, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

Note on Motion Calendar: August 25, 2026

Oral Argument Requested

DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 2:26-cv-01134-JNW

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................. 1

FACTUAL BACKGROUND.................................................................................................. 2

LEGAL STANDARD............................................................................................................. 3

ARGUMENT .......................................................................................................................... 4

I.     PLAINTIFFS MUST IDENTIFY A TECHNOLOGICAL MEASURE THAT CONTROLS ACCESS................................................................................... 4

       A.     Statutory Text....................................................................................................... 4

       B.     Statutory Structure .............................................................................................. 6

       C.     Legislative History .............................................................................................. 8

II.    PLAINTIFFS HAVE NOT IDENTIFIED A TECHNOLOGICAL MEASURE THAT CONTROLS ACCESS........................................................... 10

       A.     Plaintiffs' Concession that Their Videos Are Publicly Accessible Forecloses Their Section 1201(a) Claim................................................... 10

       B.     Plaintiffs Have Not Otherwise Identified an Access Control ............................. 13

III.   PLAINTIFFS' ATTEMPT TO REWRITE SECTION 1201(A)(1) SHOULD BE REJECTED.................................................................................... 17

CONCLUSION.................................................................................................................... 22

DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED CLASS ACTION COMPLAINT          i
CASE NO. 2:26-cv-01134-JNW

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Adobe Sys. Inc. v. A&S Elec., Inc.*,
No. 15-cv-2288, 2015 WL 13022288 (N.D. Cal. Aug. 19, 2015) .....................................21, 22

*Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*,
744 F.3d 595 (9th Cir. 2014) ........................................................................................22

*Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ'g Co.*,
747 F.3d 673 (9th Cir. 2014) ........................................................................................20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................3, 4

*Ass'n for Info. Media & Equip. v. Regents of the Univ. of Cal.*,
No. 10-cv-9378, 2012 WL 7683452 (C.D. Cal. Nov. 20, 2012) ............................................21

*Avaya, Inc. v. Telecom Labs, Inc.*,
No. 6-cv-2490, 2012 WL 13035096 (D.N.J. May 1, 2012)..................................................12

*Columbia Pictures Indus., Inc. v. Fung*,
710 F.3d 1020 (9th Cir. 2013) ................................................................................17, 20

*Cordova v. Huneault*,
817 F. Supp. 3d 819 (N.D. Cal. 2026) ............................................................................13

*CouponCabin LLC v. Savings.com, Inc.*,
No. 14-cv-39, 2016 WL 3181826 (N.D. Ind. June 8, 2016)..................................................12

*Digital Drilling Data Sys., L.L.C. v. Petrolink Servs., Inc.*,
965 F.3d 365 (5th Cir. 2020) ........................................................................................12

*Disney Enters., Inc. v. VidAngel, Inc.*,
869 F.3d 848 (9th Cir. 2017) ........................................................................................15

*Echostar Satellite, L.L.C. v. Viewtech, Inc.*,
543 F. Supp. 2d 1201 (S.D. Cal. 2008)............................................................................20

*Ets-Hokin v. Skyy Spirits, Inc.*,
225 F.3d 1068 (9th Cir. 2000) ......................................................................................18

*Google LLC v. Oracle Am., Inc.*,
593 U.S. 1 (2021)......................................................................................................20

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

*Hattler v. Ashton*,
   No. 16-cv-4099, 2017 WL 11634742 (C.D. Cal. Apr. 20, 2017) ...............................12, 21, 22

*In re OpenAI, Inc. Copyright Infringement Litig.*,
   No. 25-cv-4315, 2025 WL 3635559 (S.D.N.Y. Dec. 15, 2025) ...............................................13

*Kodadek v. MTV Networks, Inc.*,
   152 F.3d 1209 (9th Cir. 1998) ...................................................................................................20

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   387 F.3d 522 (6th Cir. 2004), *abrogated on other grounds by*
   *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006)..............................................5, 11, 12

*London-Sire Recs., Inc. v. Doe 1*,
   542 F. Supp. 2d 153 (D. Mass. 2008) .......................................................................................18

*Matthew Bender & Co. v. W. Publ'g Co.*,
   158 F.3d 693 (2d Cir. 1998)......................................................................................................18

*MDY Indus., LLC v. Blizzard Ent., Inc.*,
   629 F.3d 928 (9th Cir. 2010) .............................................................................................. *passim*

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*,
   551 U.S. 644 (2007).....................................................................................................................18

*Perfect 10, Inc. v. Amazon.com, Inc.*,
   508 F.3d 1146 (9th Cir. 2007) ...................................................................................................18

*Project Travel, LLC v. Terra Dotta, LLC*,
   No. 24-cv-2817, 2026 WL 890422 (M.D. Fla. Apr. 1, 2026)....................................................12

*Sullivan v. Flora, Inc.*,
   936 F.3d 562 (7th Cir. 2019) .....................................................................................................18

*Twitter, Inc. v. Taamneh*,
   598 U.S. 471 (2023)................................................................................................................2, 10

*United States v. Elcom Ltd.*,
   203 F. Supp. 2d 1111 (N.D. Cal. 2002) ...............................................................................7, 9, 10

*Universal City Studios, Inc. v. Corley*,
   273 F.3d 429 (2d Cir. 2001)...............................................................................................5, 6, 9

*Van Buren v. United States*,
   593 U.S. 374 (2021).......................................................................................................................5

*Williams v. Gaye*,
   895 F.3d 1106 (9th Cir. 2018) ...................................................................................................20

DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED CLASS ACTION COMPLAINT    iii
CASE NO. 2:26-cv-01134-JNW

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

*Yout, LLC v. Recording Indus. Ass'n of Am., Inc.,*
633 F. Supp. 3d 650 (D. Conn. 2022), *appeal pending*, No. 22-2760 (2d Cir.) ......................12

**STATUTES**

17 U.S.C.
§ 106(1) ..............................................................................................................6, 19
§ 107 ..........................................................................................................................7, 9
§ 407 ............................................................................................................................7
§ 411 .......................................................................................................................7, 20
§ 501 ............................................................................................................................7
§ 501(b) .....................................................................................................................20
§ 504(c)(1) ................................................................................................................20
§ 504(c)(2) ................................................................................................................20
§ 1201(a) ........................................................................................................... *passim*
§ 1201(a)(1) ...................................................................................................... *passim*
§ 1201(a)(1)(A) ................................................................................................. *passim*
§ 1201(a)(2) ................................................................................................................7
§ 1201(a)(3)(A) ......................................................................................................5, 10
§ 1201(a)(3)(B) .................................................................................................. *passim*
§ 1201(b) .................................................................................................................6, 7
§ 1201(b)(1)(A) ..........................................................................................................6
§ 1201(b)(2)(B) ..........................................................................................................6
§ 1201(c)(1) ................................................................................................................7
§ 1203(a) ...................................................................................................................20
§ 1203(c)(3)(A) ...........................................................................................................7

**RULES**

Federal Rule of Civil Procedure 12(b)(6) ..................................................................3

**TREATISES**

4 *Nimmer on Copyright*
§ 12A.03[C] ................................................................................................................7
§ 12A.03[D][3] .........................................................................................................21
§ 12A.06[C][5] .........................................................................................................14

**REGULATIONS**

89 Fed. Reg. 85437, 85437 (Oct. 28, 2024) ............................................................15

**OTHER AUTHORITIES**

Amazon Web Services, *Amazon Nova Reel*,
https://docs.aws.amazon.com/ai/responsible-ai/nova-reel/overview.html ..........................2, 3

H.R. Rep. No. 105-551, pt. 1 (1998) .......................................................................5, 9

DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED CLASS ACTION COMPLAINT          iv
CASE NO. 2:26-cv-01134-JNW

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

Jessica D. Litman, Digital Copyright (2d ed. 2006),
available at https://repository.law.umich.edu/books/1................................................8, 9

Merriam-Webster, *Gain*, https://www.merriam-webster.com/dictionary/gain..............................5

Merriam-Webster, *Gain/Get Access To*, https://www.merriam-
webster.com/dictionary/gain%2Fget%20access%20to ..........................................................5

NII Copyright Protection Act of 1995, H.R. 2441, 104th Cong. § 1201 (1995) ...........................8

*NII Copyright Protection Act of 1995: Hearing on H.R. 2441 and S. 1284 Before
Subcomm. on Cts. & Intell. Prop.*, pt. 2, 104th Cong. 380 (1996)............................................8

S. Rep. No. 105-190 (1998) ......................................................................6, 7, 19

Terms of Service, YouTube, https://www.youtube.com/t/terms ......................................................2

U.S. Copyright Off., *Section 1201 of Title 17: A Report of the Register of
Copyrights* (June 2017), https://copyright.gov/policy/1201/section-1201-full-
report.pdf.............................................................................................. *passim*

U.S. Copyright Off., *Section 1201 Rulemaking: Ninth Triennial Proceeding to
Determine Exemptions to the Prohibition of Circumvention, Recommendation
of the Register of Copyrights* (Oct. 2024),
https://www.copyright.gov/1201/2024/2024_Section_1201_Registers_Recom
mendation.pdf ..........................................................................................15

U.S. Copyright Off., *The Digital Millennium Copyright Act of 1998: U.S.
Copyright Office Summary* (Dec. 1998),
https://www.copyright.gov/legislation/dmca.pdf........................................................9

*WIPO Copyright Treaties Implementation Act; and Online Copyright Liability
Limitation Act: Hearing Before the Subcomm. on Cts. & Intell. Prop.*, 105th
Cong. 48 (1997) ...................................................................................6, 9, 17

DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED CLASS ACTION COMPLAINT          v
CASE NO. 2:26-cv-01134-JNW

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

**INTRODUCTION**

Over the last several months, Plaintiffs have filed a string of complaints against a wide range of generative artificial intelligence ("AI") companies, asserting a single claim: that those companies violated Section 1201(a)(1) of the Digital Millennium Copyright Act ("DMCA") by circumventing supposed "access controls" on publicly accessible YouTube videos, in order to download and use them to train generative AI systems. But Section 1201(a)(1) *only* prohibits circumventing technological measures that control "*access* to a work." 17 U.S.C. § 1201(a)(1)(A) (emphasis added). It does not prohibit circumventing technological measures that prevent *copying* of a work. This asymmetric legal framework was by design. Congress deliberately declined—notwithstanding the urging of content owner groups—to prohibit circumventing controls that prevent *copying* of works. Doing so, Congress appreciated, would effectively eliminate the fair use defense for digital works, because Congress had not created an explicit fair use exception to violations of Section 1201. Congress determined to safeguard fair use through this asymmetric framework instead.

Given that framework, Plaintiffs concede the dispositive point: every member of the public "can watch and listen to videos" on YouTube "for free." Dkt. 13 ("FAC") ¶ 35. No password. No paywall. No encryption. YouTube videos are accessible to anyone with a web browser—and Plaintiffs upload them to YouTube *precisely* so the public will watch them. The five technological protection measures ("TPMs") Plaintiffs identify do not gate *access* to their works; as the FAC's allegations concede, they restrict *downloading*, that is, making copies of the content. That makes them, at best, copy controls, whose circumvention is governed by the Copyright Act (not the DMCA). They are certainly not access controls under Section 1201(a).

Plaintiffs' gambit is transparent. Plaintiffs are attempting to shoehorn what is fundamentally a copyright infringement claim into Section 1201(a)'s anti-circumvention framework, in an effort to evade the fair use defense. Permitting that claim to proceed would collapse the careful distinctions that Congress crafted in Section 1201, turning every copy control

DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 2:26-cv-01134-JNW

1

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

into an access control, and rendering fair use a dead letter in the digital world.  The Court should not permit it.

### FACTUAL BACKGROUND

YouTube is a "video sharing platform" on which all members of the public can "watch and listen to videos for free."  FAC ¶¶ 33, 35.  YouTube has "over 1 billion" users, who "collectively watch more than 1 billion hours of video *every day*."  *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 479-80 (2023).  Plaintiffs Ted Entertainment, Inc., Matt Fisher, and Golfholics, Inc. are "content creators" who upload videos to YouTube for the express purpose of taking advantage of YouTube's public-facing nature.  FAC ¶ 9; *see id.* ¶¶ 20, 23, 25.  They "invest[] substantial time and money into bringing awareness around [their] content."  *Id.* ¶¶ 22, 24; *see also id.* ¶ 19.  Their goal is to increase revenue by increasing "viewership" of their videos.  *Id.* ¶¶ 20, 23, 25.

When users, like Plaintiffs, upload videos to YouTube, they agree to YouTube's Terms of Service and grant a license to "each other user of [YouTube]" to "access [their] Content through [YouTube's] Service."  Terms of Service, YouTube, https://www.youtube.com/t/terms (last visited July 28, 2026) (cited at FAC ¶ 71 n.1).  But they "do[] not grant any rights or permissions for a user to make use of [the] Content independent of the Service."  *Id.*  In other words, YouTube users can "*access*" videos by "watching and listening" to them "for free" on YouTube's platform; but they cannot "use" the videos, such as by "possessing a permanent digital copy" of them.  FAC ¶ 73.  According to Plaintiffs, YouTube uses five TPMs to reinforce this divide between "[s]treaming through YouTube and downloading permanent copies."  *Id.*  Specifically, they allege that YouTube uses these TPMs to "impede[] an ordinary user from creating a permanent, unrestricted download of audiovisual content made available on YouTube," without affecting a user's ability to "stream[]" this content.  *Id.* ¶ 55.

Amazon Nova Reel is an AI model that generates short and novel videos based on text prompts and optional image prompts.  *Id.* ¶ 2.  Individuals can use Nova Reel "to create content within advertising, branding, product design, and social media workflows."  Amazon Web Services, *Amazon Nova Reel*, https://docs.aws.amazon.com/ai/responsible-ai/nova-

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

reel/overview.html (last visited July 28, 2026) (cited at FAC ¶ 85 n.4). For example, Nova Reel "can be used as a creative tool to help advertisers or brands create video-based assets for their advertising or marketing campaigns." *Id.*

On April 3, 2026, Plaintiffs brought this action, on behalf of a putative class of all individuals "whose videos were posted on YouTube" and allegedly scraped by Amazon, asserting a single count under Section 1201(a)(1). Dkt. 1 ("Compl.") ¶¶ 114, 127-39. Based on Amazon's statement that it trained Nova Reel "from a variety of sources," including "publicly available data" and "open source datasets," Plaintiffs asserted that Amazon must have trained Nova Reel using four specific datasets—namely, HD-VG-130M, HD-VILA-100M, Panda-70M, and HowTo100M. *Id.* ¶¶ 61-62 (citation omitted). Amazon moved to dismiss, arguing that Plaintiffs' allegations concerning Amazon's alleged use of these datasets were speculative and relied on unwarranted deductions of fact. Dkt. 11 at 4-6. Amazon further argued that Plaintiffs cannot state a claim under Section 1201(a), having failed to allege that their works are protected by access controls. *Id.* at 6-22.

Rather than oppose the motion, Plaintiffs amended. The FAC similarly brings a single count under Section 1201(a)(1)—this time based on Amazon's alleged use of an entirely new dataset (the YT-Temporal-1B dataset) to train not only Nova Reel but also other, unspecified "generative AI models." FAC ¶¶ 1, 86-91. Plaintiffs allege that this dataset "necessarily required [Amazon] to obtain the referenced videos by downloading them directly from YouTube," and that such downloading necessarily "circumvent[s] YouTube's TPMs." *Id.* ¶ 86; *see also id.* ¶ 94. Plaintiffs seek statutory damages and an injunction requiring Amazon to "cease infringing … any of Plaintiffs' or the Class Members' exclusive rights under federal law." *Id.* (Prayer for Relief).

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A claim is "'plausible'" when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is

DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED CLASS ACTION COMPLAINT        3
CASE NO. 2:26-cv-01134-JNW

liable for the misconduct alleged." *Id.* (citation omitted).  Allegations merely "consistent with" liability, or where "more likely explanations" exist, are insufficient.  *Id.* at 681.  Nor are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Id.* at 678.

## ARGUMENT

To state a claim under Section 1201(a), Plaintiffs must identify "a technological measure that effectively controls access to a work protected under this title."  17 U.S.C. § 1201(a)(1)(A).  The text, statutory structure, and legislative history of Section 1201(a) confirm that the technological measure must control the ability for users "to gain *access* to [a] work," *id.* § 1201(a)(3)(B) (emphasis added), and that a technological measure that controls only the ability of users to *use* a work after gaining access, such as by copying, is not an access control.

Plaintiffs cannot identify a qualifying technological measure here.  At the outset, their admission that all YouTube users "can watch and listen to videos" on YouTube "for free" ends the inquiry, as it makes clear that YouTube users can access videos on YouTube *without* circumventing any technological measure.  FAC ¶ 35.  In any case, the five TPMs identified by Plaintiffs concededly do not affect a user's experience watching or listening to videos on YouTube.  *See, e.g.*, *id.* ¶¶ 35, 73.  They are, at best, measures that limit or prohibit downloading and are thus not access controls.

## I.    Plaintiffs Must Identify a Technological Measure that Controls Access

### A.    Statutory Text

Section 1201(a) governs access controls, i.e., "technological measure[s] that effectively control[] *access to a work* protected under this title."  17 U.S.C. § 1201(a) (emphasis added); U.S. Copyright Off., *Section 1201 of Title 17: A Report of the Register of Copyrights* ("USCO 2017 Rep.") at 6 (June 2017), https://copyright.gov/policy/1201/section-1201-full-report.pdf.  To "'effectively control[] access to a work'" is to "in the ordinary course of its operations, require[] the application of information, or a process or a treatment, with the authority of the copyright owner, to *gain access to the work*."  17 U.S.C. § 1201(a)(3)(B) (emphasis added).  The text thus

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

makes clear that when determining whether a technology is an access control, the relevant conduct is "gain[ing] access to the work." *Id.* To "gain access" is "to get the right to see." Merriam-Webster, *Gain/Get Access To*, https://www.merriam-webster.com/dictionary/gain%2Fget%20access%20to (last visited July 28, 2026); *see* Merriam-Webster, *Gain*, https://www.merriam-webster.com/dictionary/gain (last visited July 28, 2026) (to "gain" is "to acquire"). An access control thus "prevent[s] access to a work" in the first instance. *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 441 (2d Cir. 2001). It is agnostic to the accessing party's ultimate use of the work; that is, it does not necessarily prevent a use that might constitute copyright infringement. *See MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 945 (9th Cir. 2010); *see also* H.R. Rep. No. 105-551, pt. 1 ("House Rep."), at 18 (1998) ("[Subsection] (a)(1) does not apply to the subsequent actions of a person once he or she has obtained authorized access to a copy of a work protected under Title 17, even if such actions involve circumvention of additional forms of technological protection measures.").

"Access" under Section 1201(a) is binary; a technological measure either prevents others from gaining access to the work or does not control access at all. *See* 17 U.S.C. § 1201(a) (TPM must "*effectively* control[] access" (emphasis added)). Congress provided illustrative examples: An "encrypted" DVD cannot be watched at all until "decrypt[ed]." *Id.* § 1201(a)(3)(A). A "scrambled" audio file cannot be played at all until "descramble[d]." *Id.* And when faced with a password-protected website "limiting access to [the] website to paying customers," a user who has the password can use it to view the works on the website, whereas a user who does not have the password cannot view the works at all. USCO 2017 Rep. at 6. In short, "access" is a "gates-up-or-down inquiry"; "one either can or cannot access" a work. *Van Buren v. United States*, 593 U.S. 374, 390 (2021) (interpreting "access" as used in the analogous Computer Fraud and Abuse Act).

Section 1201(a) thus does not apply to "a technological measure that restricts one form of access but leaves another route wide open." *MDY Indus.*, 629 F.3d at 953 (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 547 (6th Cir. 2004), *abrogated on other grounds by eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006)). And so, when a work is

DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED CLASS ACTION COMPLAINT                    5
CASE NO. 2:26-cv-01134-JNW

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

publicly accessible, no "authority of the copyright owner" is required to "gain access"; that is, no technological measure controls access to the work.

### B.    Statutory Structure

The statutory structure reinforces that Section 1201(a) concerns only the initial exposure to a copyrighted work.  As the Ninth Circuit has recognized, Section 1201 distinguishes between two types of TPMs: access controls and copy controls.  *See MDY Indus.*, 629 F.3d at 944-45.  Whereas Section 1201(a) governs access controls and is concerned with what happens in order *to gain access*, *see supra* at 4-5, Section 1201(b) governs copy controls and is concerned with what happens *after gaining access*.

Copy controls are "technological measure[s] that effectively protect[] a right of a copyright owner under this title in a work or a portion thereof."  17 U.S.C. § 1201(b)(1)(A).  A technological measure that "effectively protects a right of a copyright holder" "prevents, restricts, or otherwise limits the exercise of a right of a copyright owner under this title."  *Id.* § 1201(b)(2)(B).  The "right[s] of a copyright owner" are set out in the Copyright Act and include the "exclusive right" of reproduction.  *Id.* § 106(1).

Unlike access controls, copy controls "do[] nothing to prevent access to … the work."  S. Rep. No. 105-190 ("Senate Rep."), at 12 (1998).  Rather, they are concerned with how the work is used *after* it is accessed and are designed "to prevent [a] work from being copied" after the fact.  *Id.*; *see also Corley*, 273 F.3d at 441 (copy controls "*permit access* to a work but *prevent copying* of th[at] work"); *MDY Indus.*, 629 F.3d at 944-45 (similar).  The quintessential copy control is "a technology that blocks users from downloading copies" of a work.  *WIPO Copyright Treaties Implementation Act; and Online Copyright Liability Limitation Act: Hearing Before the Subcomm. on Cts. & Intell. Prop.* ("1997 Hearing"), 105th Cong. 48 (1997).  Such a system is not an access control because it does not prohibit a user from viewing, listening to, or otherwise "gain[ing] access to the work."  17 U.S.C. § 1201(a)(3)(B).  Instead, it prevents a user from creating an unauthorized reproduction of the work; that is, it "protects a right of a copyright owner."  *Id.* § 1201(b)(1)(A).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

Critically—and dispositively for Plaintiffs' claim here—Section 1201 prohibits different conduct for access controls and copy controls. *MDY Indus.*, 629 F.3d at 944. With regard to access controls, "Congress banned *both* the act of circumventing access control restrictions *as well as* trafficking in and marketing of devices that are primarily designed for such circumvention." *United States v. Elcom Ltd.*, 203 F. Supp. 2d 1111, 1119-20 (N.D. Cal. 2002) (emphasis added). Section 1201(a)(1), the act-of-circumvention prohibition, provides that "[n]o person shall circumvent a technological measure that effectively controls access to a work protected under this title." 17 U.S.C. § 1201(a)(1)(A). Section 1201(a)(2), the anti-trafficking provision, prohibits the manufacture or sale of "any technology, product, service, device, component, or part thereof" that is "primarily designed or produced for the purpose of circumventing" an access control. *Id.* § 1201(a)(2).

Congress chose to treat copy controls differently. Section 1201(b) bans trafficking in devices primarily designed for circumvention. *Id.* § 1201(b). But it does *not* ban the act of circumventing a copy control. That is because "copyright law has long forbidden copyright infringement"—the result of circumventing a copy control—and "so no new prohibition was necessary." *MDY Indus.*, 629 F.3d at 945 (citation omitted). Any claim alleging a circumvention of a copy control is properly brought (if at all) as a copyright infringement claim under the Copyright Act, *see* 17 U.S.C. § 501, subject to its various requirements, including registration, *see id.* § 411(a), and deposit copies, *see id.* § 407, and its variety of affirmative defenses—most notably, the fair use defense, *see id.* § 107; *see also* 17 U.S.C. § 1201(c)(1) ("Nothing in this section shall affect … defenses to copyright infringement, including fair use.").

In short, Section 1201(a) and (b) are "not interchangeable." Senate Rep. at 12. As the leading copyright treatise explains, Section 1201(a) prohibits breaking into a digital "house" to see a work, whereas Section 1201(b) focuses "not on breaking in but on violating 'the house rules.'" 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12A.03[C] (Matthew Bender rev. ed. 2023). Accordingly, access controls and copy controls are distinctly defined and governed by different statutory provisions:

DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED CLASS ACTION COMPLAINT          7
CASE NO. 2:26-cv-01134-JNW

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

|  | Circumvention Prohibition | Trafficking Prohibition |
|---|---|---|
| Access Controls | § 1201(a)(1) | § 1201(a)(2) |
| Copy Controls | Not governed by § 1201 | § 1201(b) |

*See* USCO 2017 Rep. at 7.  Any interpretation of what constitutes an access control, what constitutes a copy control, and, in rare circumstances, what constitutes both must not collapse this considered distinction between access and copy controls and must "ensure[] that neither section [1201(a) or (b)] is rendered superfluous."  *MDY Indus.*, 629 F.3d at 946.

### C.    Legislative History

The legislative history reinforces that Section 1201(a) covers only technological measures that control access and makes clear that Congress deliberately enacted an asymmetrical framework to ensure that the DMCA did not serve as a workaround to the Copyright Act, including the fair use defense.

When proposals for an anti-circumvention bill first came before Congress in 1995, the bill prohibited only trafficking in devices designed to circumvent copy controls.  NII Copyright Protection Act of 1995, H.R. 2441, 104th Cong. § 1201 (1995).  Legacy media groups wanted to go even further and lobbied for a sweeping prohibition, backed by criminal sanctions, on the act of circumventing copy controls.  *See, e.g.*, *NII Copyright Protection Act of 1995: Hearing on H.R. 2441 and S. 1284 Before Subcomm. on Cts. & Intell. Prop.*, pt. 2 ("1996 Hearing"), 104th Cong. 380, 494 (1996); *see also* Jessica D. Litman, Digital Copyright 131 (2d ed. 2006), available at https://repository.law.umich.edu/books/1.  But technology industry representatives, among others, noted that such a broad prohibition would "impede 'legal' copying"—namely, fair use.  1996 Hearing at 149; *see also id.* at 83, 432 (tech coalitions arguing that "any 'anti-circumvention' provision must be carefully drafted so as not to prevent legitimate activities"); *id.* at 543 (noting that fair use is a prototypical example of the public being able to "make copies of [a] work without infringing the copyright"); Litman, *supra*, at 132 (industry groups argued that "[i]f the reason a person circumvented a copy protection measure was to make fair use of the protected work, then that circumvention should itself be legal").  Prohibiting *anything* that could be construed as

DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED CLASS ACTION COMPLAINT        8
CASE NO. 2:26-cv-01134-JNW

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

circumvention of copy controls would prohibit and chill activity that the fair-use doctrine expressly authorizes.

To protect "the continued ability to make fair use of copyrighted works," Congress enacted an asymmetrical framework that clearly distinguishes between access controls and copy controls. U.S. Copyright Office, *The Digital Millennium Copyright Act of 1998: U.S. Copyright Office Summary* ("USCO 1998 Rep.") at 4 (Dec. 1998), https://www.copyright.gov/legislation/dmca.pdf. As explained, the statute prohibits the circumvention of access controls. *See supra* at 7. But "[s]ince copying of a work may be fair use under appropriate circumstances, section 1201 does not prohibit the act of circumventing a [copy control]." USCO 1998 Rep. at 4.

The justification for the "compromise" reflected in the resulting statutory framework is straightforward. Litman, *supra*, at 133-34. Any copyright owner has the baseline right to decide when and how to make her work accessible to the public—e.g., whether to keep a newly written book under "lock and key," whether to "show it to others selectively," or whether to make it freely available for public access. 1997 Hearing at 49 (testimony of Marybeth Peters, Register of Copyrights). Access controls are simply another way to implement this decision, and prohibiting their circumvention is nothing more than another way to "back[]" the choice to withhold access *ab initio* "with legal sanctions." *Corley*, 273 F.3d at 435.

But once a copyright owner decides to make a work accessible to the public, whether someone can copy it depends *not* on the copyright owner's preference, but on the Copyright Act, which imposes significant limitations on copyright owners' exclusive rights, including the doctrine of fair use. *See* 17 U.S.C. § 107; *see also Elcom*, 203 F. Supp. 2d at 1121 (fair use "allow[s] a certain amount of direct copying for certain uses, without the permission of the copyright owner and notwithstanding the copyright owner's exclusive rights"). Copyright holders and the platforms that host their works are free to implement TPMs that prevent copying as a technical matter. *See* House Rep. at 19. Indeed, Congress encouraged such self-help, by prohibiting trafficking in tools designed to allow others to circumvent copy controls. But prohibiting the

DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED CLASS ACTION COMPLAINT   9
CASE NO. 2:26-cv-01134-JNW

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

circumvention of copy controls outright would have amounted to a strict legal prohibition on copying any time a work is protected by a copy control, even if that copying would otherwise be explicitly authorized under the doctrine of fair use. By enacting Section 1201's asymmetrical regime, "Congress expressly disclaimed any intent to impair any person's rights of fair use." *Elcom*, 203 F. Supp. 2d at 1120-21. And it affirmed that the remedies for circumventing copy controls, if any, are governed by the Copyright Act—not the DMCA. *See MDY Indus.*, 629 F.3d at 947.

In short, Section 1201(a)(1) prohibits the circumvention of only technological measures that control "access"—not copying or any other form of copyright infringement that occurs after access.

## II.     Plaintiffs Have Not Identified a Technological Measure that Controls Access

### A.     Plaintiffs' Concession that Their Videos Are Publicly Accessible Forecloses Their Section 1201(a) Claim

On Plaintiffs' own account, YouTube is the paradigmatic platform where videos that have been made public, like Plaintiffs', can be accessed *without* circumventing an access control. Plaintiffs do not allege that YouTube has technological measures that restrict or otherwise control one's ability to "gain access to the work." 17 U.S.C. § 1201(a)(3)(B). For example, they do not allege that YouTube encrypts or scrambles its videos so that they cannot be viewed by anyone without the decryption or a descrambler or that YouTube uses a password that prevents those without the password from watching videos. *Id.* § 1201(a)(3)(A). Nor do they allege that Amazon "appli[ed]"—or needed to apply—any "information, or a process or a treatment" in order to watch videos on YouTube's platform. *Id.* § 1201(a)(3)(B).

Rather, YouTube is "generally available to the internet-using public." *Twitter*, 598 U.S. at 498. Plaintiffs concede that all members of the public "can watch and listen to videos" on YouTube "for free." FAC ¶ 35; *see also id.* ¶ 73 (similar); *id.* ¶ 34 (videos that are designated "public" "may be viewed by anyone and may appear in search results and recommendations"). And YouTube's Terms of Service expressly state that individuals, like Plaintiffs, who upload their

DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED CLASS ACTION COMPLAINT          10
CASE NO. 2:26-cv-01134-JNW

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

content to YouTube, grant a "license" to "each other user of [YouTube] … to *access [their] Content* through [YouTube's] Services." Terms of Service, *supra* (emphasis added); *see* FAC ¶ 71. Indeed, YouTube's business model depends on such free access. The whole reason why content-creators, like Plaintiffs, upload their work on YouTube is *because* it allows a broader number of people to view their work. Plaintiffs, for example, "invested substantial time and money into bringing awareness around [their] content" because they "deriv[e] value via viewership" of their videos. FAC ¶¶ 19-20, 22-25. And they did so successfully: Plaintiffs claim that billions of people have watched their public videos for free. *See id.* ¶¶ 19, 22, 24. As the Ninth Circuit has made clear, access controls affect whether "someone [can] watch or listen to a work." *MDY Indus.*, 629 F.3d at 945. Plaintiffs' concession that YouTube employs no measures that affect whether someone can watch or listen to their works is thus dispositive of their Section 1201(a) claim.

Multiple courts of appeals have confirmed that public accessibility squarely forecloses a Section 1201(a) claim. In *MDY Industries*, the Ninth Circuit concluded that a TPM that "scans a computer[]" to ensure that "a bot is [not] running" "prior to allowing the player to connect to [World of Warcraft's ("WoW")] servers" did not control access to WoW's software code or the "visual and audio components of [its] game" because both could "be accessed by a user without signing on to the server." *Id.* at 942, 952. A technology that "block[s] only one form of access" to a work while "le[aving] intact another form of access" is not an access control. *Id.* at 952. In *Lexmark*, the Sixth Circuit concluded that a TPM that prevents the use of unauthorized toner cartridges with printers was not an access control because "[a]nyone who buys a Lexmark printer may read the literal code of [the program] directly from the printer memory" and thus can access the work without interacting with the technological measure. 387 F.3d at 546-47. In other words, although the TPM blocked the *use* of the printer when an unauthorized cartridge was present, it did not prevent the purchaser of a printer from *accessing* the copyrighted code without circumventing anything, such as by simply examining it directly. *Id.* Drawing on a physical analogy, the Sixth Circuit emphasized: "Just as one would not say that a lock on the back door of a house 'controls access' to a house whose front door does not contain a lock … , it does not make

DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED CLASS ACTION COMPLAINT          11
CASE NO. 2:26-cv-01134-JNW

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

sense to say that [Section 1201] applies to otherwise-readily-accessible copyrighted works." *Id.* at 547. And in *Digital Drilling Data Systems, L.L.C. v. Petrolink Services, Inc.*, the Fifth Circuit concluded that a technology that "may have effectively restricted certain unauthorized uses of [a] software" was not an access control in part because the relevant "data was stored in an open database file." 965 F.3d 365, 376 (5th Cir. 2020). Numerous district courts are in accord. *See, e.g.*, *Hattler v. Ashton*, No. 16-cv-4099, 2017 WL 11634742, at *5-8 (C.D. Cal. Apr. 20, 2017) (dismissing Section 1201(a)(1) claim for failure to identify access control where plaintiff alleged that defendant had circumvented a TPM that prohibited downloading); *CouponCabin LLC v. Savings.com, Inc.*, No. 14-cv-39, 2016 WL 3181826, at *6 (N.D. Ind. June 8, 2016) (no Section 1201(a) violation where "website remains accessible" notwithstanding technological measures); *Avaya, Inc. v. Telecom Labs, Inc.*, No. 6-cv-2490, 2012 WL 13035096, at *8 (D.N.J. May 1, 2012) (rejecting Section 1201(a) claim based on technological measure that did not "prevent *all* forms of access to a work"); *Project Travel, LLC v. Terra Dotta, LLC*, No. 24-cv-2817, 2026 WL 890422, at *6 (M.D. Fla. Apr. 1, 2026) ("[T]he DMCA is 'not concerned with people exceeding the alleged limits of their authority once given valid access.'").

To be sure, a small handful of non-binding district court decisions have addressed YouTube's anti-scraping measures under Section 1201(a). In *Yout, LLC v. Recording Industry Association of America, Inc.*, the district court suggested for the first time in the DMCA's 28-year history that a technology that controls a means of copying but not access constitutes an access control. 633 F. Supp. 3d 650, 662 (D. Conn. 2022), *appeal pending*, No. 22-2760 (2d Cir.). But the parties in *Yout* did not brief or argue the statutory distinction between access and copy controls, leading to an opinion that failed to analytically distinguish between the two on this critical, threshold question. *Id.* Nor did the defendants or court reconcile their position with the binary meaning of access and the body of circuit precedent suggesting that public accessibility forecloses a Section 1201(a) claim. *Id.* For this reason, the Second Circuit granted a motion to file an out-of-time amicus brief in support of neither party, and gave the parties the opportunity to file responsive briefing, so this issue could be properly briefed and considered. *See* Dkt. 124, *Yout*,

No. 22-2760 (2d Cir. Oct. 10, 2025) (motion order); Dkt. 127, *Yout*, No. 22-2760 (2d Cir. Oct. 10, 2025) (amicus brief). In the meantime, a few district courts have followed suit and have compounded the error in *Yout*. But none meaningfully grappled with the statutory distinction between access and copy controls. In *Cordova v. Huneault*, for example, the court purported to follow the lead of several cases, including *Yout*, and concluded that "identifying measures that restrict access to downloadable files[] [is] sufficient" to allege an access control for a Section 1201(a)(1) claim. 817 F. Supp. 3d 819, 834 (N.D. Cal. 2026). But its primary support for this conclusion was a string cite that included cases addressing *both* Section 1201(a) and Section 1201(b), revealing that the court mistakenly treated these provisions to be interchangeable when binding case law dictates otherwise. *See MDY Indus.*, 629 F.3d at 946 (Sections 1201(a) and (b) are "not interchangeable"). These cases are thus inconsistent with Section 1201(a)'s text, structure, and purpose and should be disregarded.

## B.   Plaintiffs Have Not Otherwise Identified an Access Control

The public accessibility of Plaintiffs' videos ends the inquiry and is sufficient, alone, to dismiss Plaintiffs' Section 1201(a) claim. Although Plaintiffs identify five TPMs that they allege are access controls, Plaintiffs concede that none affects a user's experience watching or listening to videos on YouTube. The TPMs still "permit[] members of the public" to "watch and listen to videos" on YouTube "for free," without having to apply any information, process, or treatment. FAC ¶¶ 35, 39, 73. And they do not otherwise affect the viewing experience on YouTube or a user's ability to "gain access to [a] work." 17 U.S.C. § 1201(a)(3)(B). As explained, that concession is dispositive. *See supra* at 10-13.

But even if the Court were to consider the specific TPMs identified by Plaintiffs, the FAC's allegations make clear that none "controls access to a work"—much less does so "in the ordinary course of its operation." 17 U.S.C. § 1201(a). None of the TPMs is encountered by every user in the ordinary course of viewing a YouTube video. *See id.* § 1201(a)(3)(B). None requires the user to "tak[e] any affirmative step" in order to circumvent the TPM and view a YouTube video. *In re OpenAI, Inc. Copyright Infringement Litig.*, No. 25-cv-4315, 2025 WL 3635559, at *4 (S.D.N.Y.

DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED CLASS ACTION COMPLAINT          13
CASE NO. 2:26-cv-01134-JNW

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

Dec. 15, 2025); *see MDY Indus.*, 629 F.3d at 952 (TPM not an access control if a user "need not encounter" the measure to view the work). Instead, each is a conditional safeguard, triggered only after a user has engaged in activity beyond ordinary viewing—specifically, downloading.

Rolling Cipher: By Plaintiffs' own admission, the purpose of the rolling cipher is to "restrict[] downloading." FAC ¶ 55. Every video on YouTube has two URLs: (1) a "page URL," which is "visible to the user" and links to "the webpage where the video playback occurs"; and (2) a "file URL," which is "not visible to the user" and links to "the video file itself." *Id.* Plaintiffs allege that the rolling cipher encrypts the file URL to prevent "downloading, copying or distribution of the audiovisual content." *Id.* They further allege that Amazon circumvented the rolling cipher by decrypting the file URL to "download[] audiovisual files." *Id.* ¶ 102. But according to Plaintiffs, the rolling cipher does not similarly encrypt the page URL or otherwise affect the experience of *watching* videos on YouTube. *See id.* ¶ 55 (content still "available on YouTube … for streaming"). And a user does not need to do anything—much less apply any information, process, or treatment—to watch a YouTube video. Rather, anyone with a web browser and internet connection can view Plaintiffs' works on YouTube. The rolling cipher is thus not an access control.

IP-Based Blocking and Rate Limiting Triggered by Excessive Downloading: Plaintiffs do not allege that this measure is employed each time a YouTube video is watched or streamed. Rather, they allege that this measure is employed only against certain IP addresses, when those IP addresses exhibit "excessive or abuse request patterns" consistent with "too many download attempts." *Id.* ¶¶ 36, 57. When that happens, YouTube blocks that IP address from "further" accessing the YouTube platform. *Id.* ¶ 58. There is thus no dispute that prior to the block, users have free access to the videos on YouTube's platform. The DMCA "affords no protection to technologies designed to discriminate between categories of users." 4 *Nimmer on Copyright* § 12A.06[C][5].

Importantly, Plaintiffs do not allege that Amazon circumvented the TPM by somehow "gain[ing] access" to YouTube's platform after its IP address was blocked. 17 U.S.C.

DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED CLASS ACTION COMPLAINT          14
CASE NO. 2:26-cv-01134-JNW

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

§ 1201(a)(3)(B). Rather, they allege that Amazon used an IP rotator to download at scale, without triggering the block at all. FAC ¶ 63; *see Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 864 (9th Cir. 2017) (TPM was access control insofar as it required decryption to "watch" DVD using "unlicensed DVD player," but copy control insofar as it required decryption to "reproduce[]" or "cop[y]"). Even when the block is triggered, Plaintiffs do not allege that Amazon applies any information, process, or treatment to circumvent the block. Rather, they contend that Amazon simply uses "a new IP address," which allegedly allows it to "immediately resume[]" downloading. FAC ¶ 103. These allegations only reinforce that anyone with internet access can freely access Plaintiffs' works on YouTube.

For these reasons, the Copyright Office has already concluded that these sorts of "rate limit enforcement systems do not effectively control access to a work as contemplated by section 1201," explaining that "[t]hey do not require 'the application of information, or a process or a treatment'— but instead require that users refrain from [certain] conduct," namely, downloading. U.S. Copyright Off., *Section 1201 Rulemaking: Ninth Triennial Proceeding to Determine Exemptions to the Prohibition of Circumvention, Recommendation of the Register of Copyrights* ("Section 1201 Rulemaking Rep.") at 125 (Oct. 2024), https://www.copyright.gov/1201/2024/2024_Section_1201_Registers_Recommendation.pdf; *see also* Exemption to Prohibition on Circumvention of Copyright Protection Systems for Access Control Technologies, 89 Fed. Reg. 85437, 85437 (Oct. 28, 2024) (final rule adopting Copyright Office's recommendations). And it has observed that "IP address rotation … does not appear to involve the circumvention of an effective control" because it does "not prevent [users] from accessing … the web service via other servers and internet service providers." Section 1201 Rulemaking Rep. at 125. Plaintiffs offer no reason to depart from this conclusion.

Short-Lived, Session-Bound Streaming URLs: Plaintiffs allege that YouTube uses temporary URLs to make it more difficult to copy videos that a user is free to access and view. As explained, Plaintiffs allege that every video on YouTube has two URLs: (1) a link to "where the video playback occurs," and (2) a link to "the video file itself." FAC ¶ 55. Whereas the latter is a

DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED CLASS ACTION COMPLAINT          15
CASE NO. 2:26-cv-01134-JNW

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

permanent link, the former is a temporary link "tied to a particular playback session." *Id.* ¶ 59. When a user watches a video on YouTube, YouTube provides them with only the temporary link to "where the video playback occurs"—and not a permanent link to "the video file itself." *Id.* ¶ 55. By providing users with only the temporary link, YouTube prevents users from being able to download the video file itself using "a static link." *Id.* ¶ 60. Plaintiffs acknowledge that the use of these temporary URLs affects only users who attempt to "persistent[ly] retriev[e] [the video] files in a manner not available to ordinary users," such as by "scraping" (i.e., downloading). *Id.* And they likewise acknowledge that the use of these links does not affect the experience of an "ordinary user[]" viewing and streaming videos on YouTube within the "ordinary playback" environment. *Id.* These URLs are thus not access controls.

CAPTCHA Challenges Triggered by Excessive Downloading: As with IP-based blocking, Plaintiffs do not allege that CAPTCHA challenges are employed each time a user tries to watch a YouTube video. Rather, users can watch videos on YouTube without completing a CAPTCHA challenge. But if their "traffic patterns indicate automated or suspicious activity," such as excessive downloading by "bots," YouTube may "require[] completion of a CAPTCHA challenge." *Id.* ¶ 61. Plaintiffs' allegations thus make clear that the purpose of the CAPTCHA challenge is to prevent further downloading (not access in the first instance), and that the CAPTCHA challenge targets only "a certain type of user (a bot)" (and not all users). *Id.* In addition, Plaintiffs allege that Amazon "circumvent[ed]" the technology by downloading in bulk *without* triggering the CAPTCHA challenge. *Id.* ¶¶ 62-63. As with IP blocking, Plaintiffs' allegation that the CAPTCHA penalty was never imposed is incompatible with an allegation that Amazon circumvented the unapplied measure. In all events, these speculative CAPTCHA challenges serve as a tool to prevent downloading (i.e., copying) and not to restrict who can view (i.e., access) the work in the first instance.

Proof-of-Origin Tokens: As alleged, YouTube uses proof-of-origin tokens to ensure that a user is merely viewing content on YouTube and not downloading or otherwise "retriev[ing] [the] audiovisual file[]" itself. *Id.* ¶ 66. As alleged by Plaintiffs, these tokens do not limit or otherwise

DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED CLASS ACTION COMPLAINT          16
CASE NO. 2:26-cv-01134-JNW

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

affect a user's ability to watch videos on YouTube. *Id.* A user does not need to do anything—much less apply any information, process, or treatment—to watch a video on YouTube's platform. *Id.* These tokens are thus not access controls.

On Plaintiffs' own account, YouTube's TPMs prohibit only "unauthorized downloading." *Id.* ¶¶ 99, 147; *see also id.* ¶¶ 46, 55, 76. But to "download[]" is a form of "reproduction." *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1034 (9th Cir. 2013). And so, a prohibition on downloading protects a copyright holder's exclusive right to reproduction under Section 106—not the right to control access to the work. The legislative history confirms this. Most obviously, the Register of Copyrights used "a technology that blocks users from downloading copies" of a work as the quintessential example of a "measure[] that prevent[s] acts of infringement, rather than access"—i.e., a copy control. 1997 Hearing at 48. And the Register of Copyrights stated, unambiguously, that Section 1201 "does not include a prohibition on the act of circumvent[ing]" such a measure that prevents downloading. *Id.* Put simply, a TPM that prohibits downloading is not an access control.

**III.    Plaintiffs' Attempt to Rewrite Section 1201(a)(1) Should Be Rejected**

Plaintiffs cannot avoid this straightforward result by rewriting the statute as prohibiting the circumvention of TPMs that control "access to *files* for unauthorized downloading." FAC ¶ 36; *see also id.* (Section B of Factual Background). Plaintiffs' core contention appears to be that TPMs that prohibit downloading are access controls because downloading is an act of "unauthorized access to the underlying media file[]." *Id.* ¶ 55; *see also id.* ¶¶ 14, 149. But that is not what the statute says. Section 1201(a)(1) defines an access control as a TPM that "controls access to *a work*." 17 U.S.C. § 1201(a)(1)(A) (emphasis added); *see also id.* § 1201(a)(3)(B) (to "'effectively control[] access to a work'" is to "require[] the application of information … to gain access to *the work*" (emphasis added)). Had Congress intended for Section 1201(a) to protect access to specific files, i.e., "copies of" a work, FAC ¶ 35, Congress would have said so explicitly.

*First*, controlling access to a "file" is not the same as controlling access to a "work." In copyright law, the term "work" refers to the "original expression … entitled to protection."

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

*Sullivan v. Flora, Inc.*, 936 F.3d 562, 567-68 (7th Cir. 2019); *see also Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1079 (9th Cir. 2000) ("[T]he term 'work' or 'works' is used throughout the Copyright Act to refer to the 'subject matter' that the act is designed to protect: 'original works of authorship.'").  In other words, a "work," in this context, means *the expressive content itself*—i.e., the copyrighted expression embodied in the video files that YouTube makes available for free public streaming—and not the particular "material object" in which the work is embodied.  *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1160 (9th Cir. 2007) ("[a] photographic image is a work," while "[t]he image stored in the computer is the 'copy' of the work for purposes of copyright law"); *London-Sire Recs., Inc. v. Doe 1*, 542 F. Supp. 2d 153, 171 (D. Mass. 2008) (Congress "distinguish[ed] between the abstract, original work on the one hand, which is the source of the copyrights, and its material incarnation on the other"); *Matthew Bender & Co. v. W. Publ'g Co.*, 158 F.3d 693, 702 (2d Cir. 1998) (the Copyright Act establishes a "fundamental distinction" between a work and a copy of that work).  If the copyrighted *expression* is available without going through or circumventing the TPM, then the TPM does not "control[] access to [the] *work*."  17 U.S.C. § 1201(a)(1)(A) (emphasis added).

Here, Plaintiffs allege, at most, that YouTube has TPMs that present a barrier to parties seeking to download specific files containing "copies of" Plaintiffs' works.  FAC ¶¶ 35, 55, 94.  And they allege, at most, that Amazon circumvented these TPMs by "retriev[ing] permanent copies of content that YouTube makes available only for streaming."  *Id.* ¶ 94.  But, as explained, Plaintiffs never allege that YouTube has TPMs that restrict or otherwise control one's ability to "gain access to the work" in the first place.  *See supra* at 4-6, 10-11.  Indeed, Plaintiffs acknowledge that the "expression" embodied in their works is readily accessible without circumventing TPMs.  *See supra* at 10-17.  As described by Plaintiffs, therefore, YouTube's TPMs are not access controls.

*Second*, Plaintiffs' attempt to equate downloading with access is inconsistent with the structure and purpose of the DMCA.  *See Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 666 (2007) (noting the "fundamental canon of statutory construction that the words of a

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

statute must be read in their context and with a view to their place in the overall statutory scheme"). Plaintiffs allege that TPMs preventing users from copying or downloading content are access controls, under the theory that a prohibition of copying or downloading restricts the "manner" of access. FAC ¶ 50. But Plaintiffs' allegations, taken to their logical conclusion, would mean that all copy controls are also access controls. That is the opposite of what Congress intended.

As explained, Congress carefully distinguished between access and copy controls and created an asymmetrical statutory scheme that treats them differently. *See supra* at 6-10. Section 1201(a) "'protect[s] access to a copyrighted work,'" a right "independent of traditional copyright infringement." *MDY Indus.*, 629 F.3d at 946-47 (citation omitted). Subsection (b) "'protect[s] the traditional copyright rights of the copyright owner'" by "grant[ing] copyright owners a new weapon against copyright infringement." *Id.* (citation omitted). Whereas subsection (a) prohibits circumventing access controls, subsection (b) "d[id] not prohibit circumvention [of copy controls] because such conduct was already outlawed," where appropriate (and subject to defenses such as fair use), "as copyright infringement." *Id.* at 945.

As the Ninth Circuit has emphasized, Sections 1201(a) and (b) are "not interchangeable." *Id.* at 946 (quoting Senate Rep. at 12). Indeed, "many devices will be subject to challenge only under one of [Sections 1201(a) or (b)]." *Id.* But Plaintiffs' interpretation would collapse this distinction. Take, for instance, a mechanism designed to "prevent[] the copying of an e-book after it has been downloaded to a user's device"—a paradigmatic copy control. USCO 2017 Rep. at 6. Under Plaintiffs' formulation, that mechanism would also be an access control, even though it does not prevent a user from accessing (i.e., reading) the book, because it "restrict[s] users' ability to access" the work by preventing the kind of access that would enable a user to make a copy. FAC ¶ 37. That is not a plausible interpretation of the statute.

*Finally*, if Section 1201(a)(1) creates liability for circumventing a TPM that controls *how* freely accessible works are used or interacted with, as Plaintiffs urge, it would permit an end-run around the requirements and defenses of the Copyright Act. The Copyright Act gives copyright owners several exclusive rights, including the right of reproduction. 17 U.S.C. § 106(1). This

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

right of reproduction encompasses the right to prevent others from downloading the work. *See Columbia Pictures Indus.*, 710 F.3d at 1034. When this right is infringed, the Copyright Act provides a remedy: "The legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of section 411, to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b). Accordingly, before bringing an infringement claim, such as for unauthorized downloading, a plaintiff must "regist[er] … the copyright claim" with the Copyright Office, *see id.* § 411(a), and "deposit as a part of his application … 'bona fide copies of the original work,'" *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1211 (9th Cir. 1998) (citation omitted). To prevail on the claim, the plaintiff must prove that "(1) he or she owns the copyright in the infringed work, and (2) the defendant copied protected elements of the copyrighted work." *Williams v. Gaye*, 895 F.3d 1106, 1119 (9th Cir. 2018). And the plaintiff must defeat any affirmative defenses a defendant raises, including fair use. *See Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 18 (2021).

To obtain statutory damages for the infringement, the Copyright Act imposes additional requirements. For instance, "[r]egistration prior to infringement or, if the work is published, within three months of publication, is necessary for an owner to obtain statutory damages and attorneys' fees." *Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ'g Co.*, 747 F.3d 673, 678 (9th Cir. 2014). Even then, an award of statutory damages is capped at $30,000 per "work," or when a plaintiff has satisfied its burden of proving that "infringement was committed willfully," at $150,000 per "work." 17 U.S.C. § 504(c)(1)-(2).

Section 1201(a) of the DMCA was enacted against this existing backdrop and targeted a specific problem: the circumvention of access controls. For this narrow set of claims, "[a]ny person injured by a violation of section 1201[(a)]" can "bring a civil action … for such violation." *Id.* § 1203(a). And it imposes penalties ranging from $200 to $2,500 for each "act of circumvention." *Id.* § 1203(c)(3)(A). Unlike a copyright infringement claim, therefore, a Section 1201(a) claim is not limited to copyright holders and thus does not require registration to initiate a suit or obtain statutory damages. *See, e.g., Echostar Satellite, L.L.C. v. Viewtech, Inc.*, 543 F.

Supp. 2d 1201, 1205 (S.D. Cal. 2008) (collecting cases).  And it imposes statutory damages for "each act of circumvention," rather than for each "work," meaning that damages in a Section 1201(a) case could outstrip statutory damages in an infringement action.

As explained, Section 1201 was not supposed to replace the Copyright Act as the way to vindicate copyright infringement.  *See supra* at 8-10; *MDY Indus.*, 629 F.3d at 945-46 (Section 1201(a) does not remedy "a copyright owner's traditional exclusive rights").  Rather, Congress deliberately crafted Section 1201 to not prohibit circumvention of copy controls *because* "such conduct was already outlawed as copyright infringement."  *MDY Indus.*, 629 F.3d at 945.  And Section 1201 was certainly not enacted to implicitly expand the Copyright Act to prohibit all forms of copying—regardless of whether such copying was fair use—so long as it involved the circumvention of a technological measure.  Such a regime would make no sense—which is why Congress explicitly considered and rejected it.

Here, Plaintiffs seek to recover for the alleged "unlawful[] cop[ying] and use[]" of their "intellectual property."  FAC ¶ 13; *see also id.* ¶ 7 (complaining about Defendants' alleged "*use*[]" of Plaintiffs' "intellectual property" (emphasis added)); *id.* (Prayer for Relief) (seeking injunction to "restrain infringement").  Such allegations are not cognizable under Section 1201(a)(1).  *See Hattler*, 2017 WL 11634742, at *8 (dismissing with prejudice Section 1201(a)(1) claims based on unauthorized downloading because Section 1201(a)(1) "should be interpreted narrowly to exclude technologies that permit access to copyrighted work, but restrict copying"); *Adobe Sys. Inc. v. A&S Elec., Inc.*, No. 15-cv-2288, 2015 WL 13022288, at *8 (N.D. Cal. Aug. 19, 2015) (dismissing DMCA claims with prejudice because allegations of "unauthorized copying and distribution" are "not covered by the DMCA"); *Ass'n for Info. Media & Equip. v. Regents of the Univ. of Cal.*, No. 10-cv-9378, 2012 WL 7683452, at *9 (C.D. Cal. Nov. 20, 2012) (similar); *see also* 4 *Nimmer on Copyright* § 12A.03[D][3] ("[A] person who engages in prohibited usage of a copyright work to which he has lawful access does not fall afoul of any provision of Section 1201.").  Plaintiffs' attempt at an end run around the Copyright Act and its various requirements and limitations should be firmly rejected.

DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED CLASS ACTION COMPLAINT          21
CASE NO. 2:26-cv-01134-JNW

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

## CONCLUSION

For the foregoing reasons, Amazon's motion should be granted, and Plaintiffs' FAC should be dismissed. Dismissal should be with prejudice because "[a] party cannot amend pleadings to 'directly contradict an earlier assertion made in the same proceeding.'" *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) (cleaned up). Plaintiffs have alleged in two separate complaints against Amazon that all members of the public can stream, watch, and listen to Plaintiffs' videos on YouTube for free, notwithstanding YouTube's TPMs, which prohibit only "downloading permanent copies." *See, e.g.*, Compl. ¶ 33; FAC ¶ 73. Any attempt to reverse these core allegations would be impermissible. And any other amendment in the face of those allegations would be futile. *See Airs Aromatics*, 744 F.3d at 600; *see, e.g.*, *Hattler*, 2017 WL 11634742, at *8 (amendment of Section 1201(a) claim would be futile where plaintiff failed to identify access control and "it is uncontested that the Works are accessible to the public on many websites"); *Adobe Sys. Inc.*, 2015 WL 13022288, at *8 ("Because the conduct alleged by Adobe [(unauthorized copying and distribution)] is not actionable [under the DMCA], further amendment to this claim would be futile.").

Dated:  July 28, 2026

By: */s/ Sarang V. Damle*
Sarang V. Damle (*pro hac vice*)
sy.damle@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Tel: (202) 637-3332

Allison L. Stillman (*pro hac vice*)
alli.stillman@lw.com
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200

*/s/ David Freeburg*
David Freeburg (WSBA No. 48935)*
david.freeburg@us.dlapiper.com
Danielle Igbokwe
danielle.igbokwe@us.dlapiper.com
DLA PIPER LLP (US)

DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED CLASS ACTION COMPLAINT          22
CASE NO. 2:26-cv-01134-JNW

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

701 Fifth Avenue, Suite 6900
Seattle, WA 98104
Tel: (206) 839-4800

*Attorneys for Defendant Amazon.com, Inc.*

\*I certify that this memorandum contains 8,022 words, in compliance with the Local Civil Rules.

DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED CLASS ACTION COMPLAINT    23
CASE NO. 2:26-cv-01134-JNW

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

## <u>CERTIFICATE OF CONFERRAL</u>

Pursuant to Section 5.6 of the Court's Chambers Procedures – Civil, I certify that counsel for Defendant Amazon.com, Inc. conferred with counsel for Plaintiffs on July 20, 2026.  The parties were unable to reach an agreement that would obviate the need for this motion.


<u>/s/ *Sarang V. Damle*</u>
Sarang V. Damle

DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED CLASS ACTION COMPLAINT          24
CASE NO. 2:26-cv-01134-JNW

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200