The Honorable Jamal N. Whitehead

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**SEATTLE DIVISION**

| | |
|---|---|
| TED ENTERTAINMENT, INC., MATT FISHER, and GOLFHOLICS, INC., each individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC., a Delaware Corporation<br><br>Defendant | Case No. 2:26-cv-01134-JNW<br><br>**PLAINTIFFS' OPPOSITION TO AMAZON'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Note on Motion Calendar: August 25, 2026<br><br>**Oral Argument Requested** |



SUSMAN GODFREY LLP
401 Union St., Suite 3000
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

## TABLE OF CONTENTS


BACKGROUND ............................................................ **Error! Bookmark not defined.**

I. The Digital Millennium Copyright Act and Section 1201(a).**Error! Bookmark not defined.**

II. YouTube's Access Restrictions. .................................. **Error! Bookmark not defined.**

III. Amazon's Circumvention of YouTube's Access Restrictions.**Error! Bookmark not defined.**

LEGAL STANDARD ............................................................ **Error! Bookmark not defined.**

ARGUMENT ............................................................ **Error! Bookmark not defined.**

I. Plaintiffs Have Alleged Circumvention of Access Controls Under Section 1201(a) **Error! Bookmark not defined.**

a. Plaintiffs Have Alleged TPMs that Effectively Control Access to Their Works **Error! Bookmark not defined.**

b. YouTube's TPMs Are Access Controls Even If They Do Not Prevent Users from Viewing the Works on YouTube's Platform .................... **Error! Bookmark not defined.**

c. Courts Have Uniformly Rejected Amazon's Arguments About YouTube's Measures After VidAngel............................................................ **Error! Bookmark not defined.**

d. YouTube's TPMs Can Be Both Access and Copy Controls**Error! Bookmark not defined.**

e. Section 1201(a) Protects Copies and Phonorecords..**Error! Bookmark not defined.**

CONCLUSION ............................................................ **Error! Bookmark not defined.**




SUSMAN GODFREY LLP
401 Union St., Suite 3000
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....6

*Ass'n for Info. Media & Equip.* v. *Regents of the Univ. of Calif.*,
2012 WL 7683452 (C.D. Cal. Nov. 20, 2012) ....21, 22

*Avaya, Inc. v. Telecom Labs, Inc.*,
2012 WL 13035096 (D.N.J. May 1, 2012) ....18

*CDK Global, LLC v. Tekion Corp.*,
2025 WL 1939951 (N.D. Cal. July 15, 2025) ....1, 4, 10

*Cordova v. Huneault*,
817 F.Supp.3d 819 (N.D. Cal. Jan. 23, 2026) ....3, 19, 20

*CouponCabin LLC v. Savings.com, Inc.*,
2016 WL 3181826 (N.D. Ind. June 8, 2016) ....18

*Craigslist, Inc. v. Naturemarket, Inc.*,
694 F.Supp.2d 1039 (N.D. Cal. 2010) ....14

*Digital Drilling Data Sys., L.L.C. v. Petrolink Servs., Inc.*,
965 F.3d 365 (5th Cir. 2020) ....17

*Disney Enterprises, Inc. v. VidAngel, Inc.*,
869 F.3d 848 (9th Cir. 2017) .... *passim*

*Edland v. Basin Elec. Power Coop.*,
2021 WL 3080225 (D.S.D. July 21, 2021) ....3, 19

*Ets-Hokin v. Skyy Spirits, Inc.*,
225 F.3d 1068 (9th Cir. 2000) ....23

*Green v. United States Dep't of Just.*,
111 F.4th 81 (D.C. Cir. 2024) ....1, 4

*Hattler v. Ashton*,
2017 WL 11634742 (C.D. Cal. Apr. 20, 2017) ....18

*Justice v. Suno, Inc.*,
2026 WL 2445362 (D. Mass. Aug. 20, 2026) ....3, 18, 19



SUSMAN GODFREY LLP
401 Union St., Suite 3000
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

*Justice v. Uncharted Labs, Inc.*,
2026 WL 1430232 (S.D.N.Y. May 21, 2026)....................3, 19

*Koala v. Khosla*,
931 F.3d 887 (9th Cir. 2019)....................6

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
387 F.3d 522 (6th Cir. 2004)....................12, 17

*London-Sire Recs., Inc. v. Doe 1*,
542 F. Supp. 2d 153 (D. Mass. 2008) ....................23

*Matthew Bender & Co. v. W. Publ'g Co.*,
158 F.3d 693 (2d Cir. 1998)....................23

*MDY Indus., LLC v. Blizzard Ent., Inc.*,
629 F.3d 928 (9th Cir. 2010).................... *passim*

*Perfect 10, Inc. v. Amazon.com, Inc.*,
508 F.3d 1146 (9th Cir. 2007)....................23

*Project Travel, LLC v. Terra Dotta, LLC*,
2026 WL 890422 (M.D. Fla. Apr. 1, 2026) ....................17, 18

*Reddit, Inc. v. SerpApi LLC*,
2026 WL 2210094 (S.D.N.Y. July 31, 2026) ....................2, 14, 17

*Sony Music Ent. v. Uncharted Labs Inc.*,
2026 WL 1019199 (S.D.N.Y. Apr. 15, 2026)....................3, 8, 19, 20

*Sullivan v. Flora, Inc.*,
936 F.3d 562 (7th Cir. 2019)....................23

*Ted Entertainment, Inc. v. Snap, Inc.*,
2026 WL 2435349 (C.D. Cal. Aug. 19, 2026).................... *passim*

*Ticketmaster L.L.C. v. Prestige Ent., Inc.*,
306 F.Supp.3d 1164 (C.D. Cal. 2018)....................6, 7, 14

*Ticketmaster L.L.C. v. RMG Techs., Inc.*,
507 F. Supp. 2d 1096 (C.D. Cal. 2007)....................13

*UMG Recordings v. Suno Inc.*,
2026 WL 2410184 (D. Mass. Aug. 18, 2026)....................3, 19, 20

*Van Buren v. United States*,
593 U.S. 374 (2021)....................18



SUSMAN GODFREY LLP
401 Union St., Suite 3000
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

*Yout, LLC v. Recording Indus. Ass'n of Am., Inc.*, 633 F.Supp.3d 650 (D. Conn. Sep. 30, 2022) ........ *passim*

**Statutes**

17 U.S.C. § 106 ........ 20

17 U.S.C. § 1201 ........ *passim*

18 U.S.C. § 1030 ........ 19

Digital Millennium Copyright Act ........ *passim*

**Rules**

Fed. R. Civ. P. 8(a) ........ 3, 10

Fed. R. Civ. P. 12(b)(6) ........ 6

**Regulations**

37 C.F.R. 201.40(b)(1)(i)(A) ........ 5

**Other Authorities**

*Access*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/access (last visited Aug. 24, 2026) ........ 15

H.R. Rep. No. 105-551(I), (1998) ........ 3, 24

H.R. Rep. No. 105-551(II), (1998) ........ 4, 22, 23

*Online Copyright Liability Limitation Act: Hearing Before the Subcomm. on Cts. & Intell. Prop.*, 105th ........ 21

*Report of the Register of Copyrights* (June 2017) ........ 21

S. Rep. No. 105-190 ........ 1, 3

Section 1201 Rulemaking: Ninth Triennial Proceeding Recommendation of the Register of Copyrights (Oct. 2024) ........ 14

U.S. Copyright Office, *Frequently Asked Questions — Definitions*, https://www.copyright.gov/help/faq-definitions.html ........ 24

U.S. Copyright Office, *Section 1201 of Title 17* ........ 21

*WIPO Copyright Treaties Implementation Act; and Online Copyright Liability Limitation Act: Hearing Before the Subcomm. on Cts. & Intell. Prop.*, 105th

Cong. 48 (1997) ....................................................................................................................21





SUSMAN GODFREY LLP
401 Union St., Suite 3000
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

**INTRODUCTION**

Since the Ninth Circuit decided *Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848 (9th Cir. 2017), courts in this Circuit and nationwide have rejected Amazon's arguments about YouTube's technological measures. Amazon's Motion to Dismiss should be denied.

Congress "enacted the [Digital Millennium Copyright Act], 17 U.S.C. § 1201, to 'mitigate the problems presented by copyright enforcement in the digital age.'" *CDK Global, LLC v. Tekion Corp.*, 2025 WL 1939951, at *8 (N.D. Cal. July 15, 2025) (citation omitted); S. Rep. No. 105-190, at 8 (1998). Section 1201(a)'s anticircumvention provision is a "prohibition against digital trespass" that backs, with legal sanctions, copyright owners' use of "digital walls" to protect their works from piracy. *Green v. United States Dep't of Just.*, 111 F.4th 81, 89 (D.C. Cir. 2024). YouTube embodies that vision: it lets copyright owners make their works "readily available" to millions of viewers while protecting them against "massive piracy." S. Rep. No. 105-190, at 8.

YouTube uses at least five technological protection measures ("TPMs") that control access by permitting streaming only through its authorized website or app, where views generate revenue, and preventing access to or downloading of the underlying file outside that environment. Amended Complaint ("AC") ¶¶ 52-75 (Dkt. 13). The rolling cipher, IP blocking and rate limiting, session-bound URLs, CAPTCHA challenges, and proof-of-origin tokens form interlocking digital walls around files on YouTube's servers. Plaintiffs rely on those protections in uploading their works. *Id.* ¶¶ 10, 38, 117. Non-Premium viewers pay through advertisements; Premium subscribers pay by subscription. *Id.* ¶¶ 73, 119-120. *Access* outside that pathway produces no advertising impressions, Premium watch time, or creator revenue. *Id.* ¶¶ 119-120.

Amazon circumvented each of YouTube's TPMs to gain unauthorized access to video files of tens of thousands of creators, including Plaintiffs. *Id.* ¶¶ 94-112. It took the files rather than merely streaming them. That is exactly the conduct that Section 1201(a)(1)(A) was designed to prevent. *See Reddit, Inc. v. SerpApi LLC*, 2026 WL 2210094, at *1 (S.D.N.Y. July 31, 2026) ("Congress sought to protect against *mass piracy* by making it unlawful to





SUSMAN GODFREY LLP
401 Union St., Suite 3000
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

circumvent, or create products that circumvent, technological measures implemented to prevent unauthorized access to and infringement of such works").[1] Amazon downloaded millions of those files to train its AI model, "Nova Reel." AC ¶¶ 1-4, 80-92. It picked YouTube's digital locks millions of times to obtain the dataset rather than pay Plaintiffs and other creators. Because it accessed the files outside YouTube's authorized player, Plaintiffs and other creators lost the ad revenue they otherwise would have earned. *Id.* ¶¶ 119-120.

Amazon's central premise that none of YouTube's TPMs "controls access" because an ordinary user can still stream videos on YouTube is foreclosed by binding Ninth Circuit precedent. In *VidAngel*, the Ninth Circuit rejected the argument that DVD purchasers' ability to watch movies on licensed players meant the DVD protections controlled only copying under Section 1201(b). 869 F.3d at 863-64. It held that "us[ing] … software to decrypt the TPMs to obtain a digital copy" of the underlying video file "is exactly like 'breaking into a locked room in order to obtain a copy of a [movie]'" and violated Section 1201(a). *Id.* at 864-65. It added: "[n]othing in the legislative history suggests that VidAngel did not circumvent an access control simply because there are authorized ways to access the Studios' works." *Id.* at 865. The same distinction controls here; *see infra* Part I.a.

Recent Section 1201(a) decisions illustrate the point. In *Ted Entertainment*, *Inc. v. Snap, Inc.*, 2026 WL 2435349, at *4-7 (C.D. Cal. Aug. 19, 2026), Judge Birotte considered the same Plaintiffs, five TPMs, and arguments raised here, rejecting Snap's argument that the asserted TPMs are only "copy controls" and holding that the complaint adequately alleged control "by ensuring access only through the permitted channel: the YouTube streaming architecture." *Id.* at *4. The previous day, Judge Saylor reached the same conclusion in *UMG Recordings v. Suno Inc.*, holding that the access-versus-use-control argument "cannot be resolved on the pleadings." 2026 WL 2410184, at *5 (D. Mass. Aug. 18, 2026). Every court that has addressed YouTube's technological measures post-*VidAngel* rejected Amazon's arguments here.[2] These

[1] Unless otherwise indicated, all emphasis in this brief has been added.
[2] *See Justice v. Suno, Inc.*, 2026 WL 2445362, at *4 (D. Mass. Aug. 20, 2026); *Sony Music Ent.*



SUSMAN GODFREY LLP
401 Union St., Suite 3000
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

decisions reinforce that Amazon's pre-*VidAngel* authorities, different statutory provisions, and fact-bound summary-judgment decisions do not support dismissal at the pleading stage.

Plaintiffs allege that Amazon used descrambling tools, IP rotation, and automated workflows to defeat YouTube's access protections and extract the underlying files of Plaintiffs' works and many others. AC ¶¶ 94-112. This plausibly alleges circumvention under 17 U.S.C. § 1201(a)(1)(A), and Amazon's motion should be denied.

## BACKGROUND

### I. The Digital Millennium Copyright Act and Section 1201(a).

Congress enacted the DMCA to "create[] the legal platform for launching the global digital on-line marketplace for copyrighted works," S. Rep. No. 105-190, at 8, and to "ensure a thriving electronic marketplace for copyrighted works on the Internet," H.R. Rep. No. 105-551(I), at 9-10 (1998); *see also id.* at 10 ("When copyrighted material is adequately protected in the digital environment, a plethora of works will be distributed and performed over the Internet."). Without protection, "copyright owners will hesitate to make their works readily available on the Internet." Congress therefore "'backed with legal sanctions' copyright owners' use of 'digital walls' to protect their copyrighted works from piracy." *Green*, 111 F.4th at 89 (citation omitted). Those walls, called technological protection measures, or "TPMs," limit both use of copyrighted works and access to them. *Id.*

Section 1201(a)(1)(A) provides that "[n]o person shall circumvent a technological measure that effectively controls access to a work protected under this title." 17 U.S.C. § 1201(a)(1)(A). The statute defines "circumvention" as "to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner." *Id.* § 1201(a)(3)(A). And a measure "effectively controls access to a work" when it, "in the ordinary course of its

*v. Uncharted Labs Inc.*, 2026 WL 1019199, at *3 (S.D.N.Y. Apr. 15, 2026); *Justice v. Uncharted Labs, Inc.*, 2026 WL 1430232, at *3 (S.D.N.Y. May 21, 2026) ("*Udio*"); *Cordova v. Huneault*, 817 F.Supp.3d 819, 833–35 (N.D. Cal. Jan. 23, 2026); *Edland v. Basin Elec. Power Coop.*, 2021 WL 3080225, at *6 (D.S.D. July 21, 2021); *cf. Yout, LLC v. Recording Indus. Ass'n of Am., Inc.*, 633 F.Supp.3d 650, 676 (D. Conn. Sep. 30, 2022).





SUSMAN GODFREY LLP
401 Union St., Suite 3000
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work." *Id.* § 1201(a)(3)(B).

Section 1201(a) creates "a new anticircumvention right" in favor of copyright owners that is "independent" of a copyright-infringement claim. *See MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 946 (9th Cir. 2010). Congress recognized that "the digital environment poses a unique threat to the rights of copyright owners," H.R. Rep. No. 105-551(II), at 25, and that Section 1201(a) was needed to "mitigate the problems presented by copyright enforcement in the digital age," *CDK*, 2025 WL 1939951, at *8.

Congress understood that Section 1201(a) could sweep in some non-infringing fair uses along with the piracy it targeted. H.R. Rep. No. 105-551(II), at 35-36, 41 (1998). For this reason, Congress built in statutory and regulatory exemptions. *See, e.g.*, 17 U.S.C. § 1201(d). And Congress created a rulemaking process to keep pace with the ever-changing nature of technology. Under Section 1201(a)(1)(C), "the Librarian of Congress conducts a triennial rulemaking proceeding to grant exemptions to people who are likely to be 'adversely affected' by the anticircumvention provision in their ability to make noninfringing uses of copyrighted materials." *Green*, 111 F.4th at 90.[3] No exemption covers mass circumvention to download millions of YouTube videos for commercial use. Amazon has neither sought nor received such an exemption.

## II. YouTube's Access Restrictions.

YouTube illustrates how Section 1201(a)'s balance fostered the "thriving electronic marketplace" Congress intended. Rightsholders—from major record labels to independent creators like Plaintiffs—upload content for streaming and rely on YouTube's ad-supported model for revenue. AC ¶¶ 32-38.

[3] Notable exemptions include, for example, an exemption that allows the circumvention of TPMs for the purpose of excerpting "short portions of . . . motion pictures . . . [f]or the purpose of criticism or comment . . . [f]or use in documentary filmmaking, or other films where the motion picture clip is used in parody or for its biographical or historically significant nature" (codified at 37 C.F.R. 201.40(b)(1)(i)(A)).



SUSMAN GODFREY LLP
401 Union St., Suite 3000
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

YouTube attracts creators because they retain control through its content-sharing process: they can upload content for streaming through the authorized, ad-supported player while controlling how it is viewed and used. AC ¶¶ 34-35. Its Terms of Service prohibit users from "access[ing], reproduc[ing], download[ing], distribut[ing], transmit[ting], broadcast[ing], display[ing], sell[ing] licens[ing], alter[ing], modify[ing], or otherwise us[ing] any part of the Service or any Content except: (a) as expressly authorized by the Service; or (b) with prior written permission from YouTube and, if applicable, the respective rights holders." *Id.* ¶ 75 n.3. Creators therefore expect no uncompensated access outside of YouTube's authorized players.

The Amended Complaint alleges at least five TPMs—the rolling cipher, IP-based blocking and rate limiting, session-bound, short-lived URLs, CAPTCHA challenges, and proof-of-origin tokens—that enforce YouTube's Terms of Service and protect the underlying files. *Id.* ¶¶ 3, 44-49, 52-75. Together they form interlocking "digital walls" around the files on YouTube's servers and ensure access to the copyrighted content occurs only through the authorized pathway. The TPMs are described below. *See infra* at 8-11.

## III. Amazon's Circumvention of YouTube's Access Restrictions.

Plaintiffs allege that Amazon deliberately circumvented YouTube's TPMs to gain unauthorized access to underlying data files otherwise inaccessible to the public. AC ¶¶ 94-112. It systematically scraped millions of copyrighted videos to feed, train, improve, and commercialize its generative AI model, Nova Reel, which allows users to generate videos from text and image prompts. *Id.* ¶¶ 1-2. On information and belief, Amazon used yt-dlp, IP rotation, and other tools to do so. *Id.* ¶¶ 99-106. Descrambling tools like yt-dlp automate stream ripping by deciphering YouTube's rolling cipher and extracting underlying audio and visual files from its servers rather than using the authorized player. *Id.* ¶¶ 99-102. IP rotation cycles through IP addresses via virtual machines to evade blocking and monitoring. *Id.* ¶¶ 103-106. Automated activity circumvented CAPTCHA challenges and kept access alive despite session-bound, short-lived URLs. *Id.* ¶¶ 62-64, 109-110. Amazon could not have extracted millions of videos without circumventing YouTube's TPMs. *Id.* ¶ 94. Through circumvention, Amazon gained



SUSMAN GODFREY LLP
401 Union St., Suite 3000
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

unauthorized access to Plaintiffs' and the putative Class's content. *Id.* ¶¶ 151-157. Scraping generated no advertising impressions or revenue (*Id.* ¶ 119), no Premium watch time or subscription allocation (*Id.* ¶ 120), and no view counts, watch time, or algorithmic signals (*Id.* ¶ 122). It also displaced the market for the works (*Id.* ¶ 123) and deprived creators of control over their files (*Id.* ¶ 124).

## LEGAL STANDARD

On a motion to dismiss under Rule 12(b)(6), a court must "accept the complaint's well-pleaded factual allegations as true, and construe all inferences in the plaintiff's favor[.]" *Koala v. Khosla*, 931 F.3d 887, 894 (9th Cir. 2019) (citation omitted). "[T]here are no heightened pleading requirements for a DMCA circumvention claim. [A plaintiff] only needs to allege facts that, accepted as true, 'state a claim to relief that is plausible on its face.'" *Ticketmaster L.L.C. v. Prestige Ent., Inc.*, 306 F.Supp.3d 1164, 1174 (C.D. Cal. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"Questions of fact" regarding the operation or purpose of a technological measure are "for the factfinder." *Id.* A plaintiff asserting a Section 1201(a)(1) claim need only plausibly allege: (1) ownership of a copyrighted work; (2) that a technological measure effectively controls access to the work; and (3) that the defendant circumvented that measure. *See* 17 U.S.C. § 1201(a)(1)(A); *Ticketmaster*, 306 F. Supp. 3d at 1172.

## ARGUMENT

### I. Plaintiffs Have Alleged Circumvention of Access Controls Under Section 1201(a)

Amazon claims that the alleged measures are not "access" controls under Section 1201(a) because they do not prevent a user from "watch[ing] or listen[ing] to videos," like a password or a paywall. MTD 10-13. It contends a TPM does not "control access" unless it completely prevents anyone from perceiving the work. *Id.* Amazon mischaracterizes the Amended Complaint and the law. The statutory text and legislative history foreclose that position, as *VidAngel* and subsequent decisions confirm. The alleged measures control all forms of access, and ordinary users must satisfy them to watch YouTube videos. An authorized,



SUSMAN GODFREY LLP
401 Union St., Suite 3000
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

controlled means of access does not relinquish Section 1201(a) protection. The Amended Complaint therefore alleges access controls under Section 1201(a).

**a. Plaintiffs Have Alleged TPMs that Effectively Control Access to Their Works**

The DMCA provides that "a technological measure 'effectively controls access to a work' if the measure, in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work." 17 U.S.C. § 1201(a)(3)(B). Plaintiffs allege YouTube's TPMs operate this way: before accessing Plaintiffs' works—whether by viewing them on YouTube *or* reaching the underlying file—users encounter gatekeeping mechanisms requiring information. Those TPMs are the "rolling cipher," the "proof-of-origin" tokens, and the short-lived, session-bound URLs. AC ¶¶ 54-60, 65-68. YouTube also employs TPMs that can *revoke* access to YouTube if it suspects suspicious activity—like Amazon's "[l]arge-scale scraping operations." *Id.* ¶ 62. Those TPMs are called "IP blocking" and "CAPTCHA challenges." *Id.* ¶¶ 57-58, 61-64.

***First***, the "rolling cipher." The "rolling cipher" is, in effect, a digital lock that constantly changes its combination. As Plaintiffs allege, YouTube maintains two different URLs for each video: the page URL for streaming a file, and the file URL for the underlying file. AC ¶ 55. The file URL is encrypted using a complex, periodically changing algorithm called the rolling cipher. *Id.* ¶¶ 54-56. To play a video, users must receive a "client," *i.e.* YouTube's player software. *Id.* ¶¶ 45, 50. Sent to the browser, that software uses a decryption routine to authenticate requests and as a proxy to confirm that the request originates from YouTube's streaming environment. *Id.* ¶¶ 54-56. The user can watch a video only if the rolling cipher is satisfied.

The player software decrypts the rolling cipher for streaming playback, not downloading; the underlying video file remains under lock and key. Thus, the rolling cipher authorizes users to view Plaintiffs' works only from the YouTube streaming platform. Every user who watches a video encounters it. AC ¶¶ 48, 54. This is an access control under the statute.



SUSMAN GODFREY LLP
401 Union St., Suite 3000
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

Amazon argues that the cipher encrypts only the "file URL" and "does not similarly encrypt the page URL." MTD 14. But that distinction is meaningless under the statute. *See* 17 U.S.C. 1201(a)(3)(B). Without descrambling the rolling cipher, the file URL cannot be accessed.

In *Yout*, the court held that YouTube's rolling cipher qualifies as a TPM that "effectively controls access" to copyrighted works. 633 F.Supp.3d at 667-70. The court rejected the argument, identical to Amazon's, that the cipher merely restricts "downloading" rather than "access," explaining that the cipher encrypts the pathway to the video data itself. *Id.* at 668-69. *Accord Sony*, 2026 WL 1019199, at *8 (denying motion to dismiss Section 1201(a) claim based on circumvention of YouTube's "signature cipher"). As *Yout* accurately explained: "YouTube directs users to stream videos and, by not making a download option readily available on the player page, restrains users' ability to access and copy audio and video files." 633 F.Supp.3d at 669.

***Second***, proof-of-origin tokens similarly control access to Plaintiffs' works. YouTube's official player software generates tokens that accompany file requests, and servers validate them before delivering the stream. AC ¶¶ 65-68. Because proof-of-origin tokens are generated exclusively within YouTube's authorized player environment, software operating outside that environment cannot obtain valid tokens through ordinary means. *Id.* ¶ 66. To retrieve audiovisual files at scale, automated scraping tools must therefore extract, replicate, or spoof the token parameters required for server authentication. *Id.* ¶ 66. Proof-of-origin tokens thus effectively control access by conditioning delivery of copyrighted works on proof that the requester is operating within YouTube's authorized playback environment. *Id.* ¶ 68.

Amazon mistakenly argues that these proof-of-origin tokens "do not limit or otherwise affect a user's ability to watch videos." MTD 16-17. But this conflates authorized access (streaming through the YouTube player, which provides the token automatically) with unauthorized access (bulk downloading by automated bots that must forge the token). Proof-of-origin tokens require "the application of information … with the authority of the copyright owner, to gain access to the work." 17 U.S.C. § 1201(a)(3)(B). The "information" is the token.

Plaintiffs allege that Amazon forged or bypassed these tokens to make its automated requests appear as though they originated from an authorized YouTube player. AC ¶¶ 111-12. That is textbook "circumvention"—using a forged key to open a locked door. *VidAngel*, 869 F.3d at 864-65 (analogizing circumvention to "breaking into a locked room").

***Third***, YouTube controls access by issuing only session-bound, short-lived URLs. AC ¶¶ 59-60. These URLs include authorization parameters that expire, after which the server refuses to honor them. *Id.* YouTube sends each video through temporary links playable only through its system while checking each step. *Id.* ¶¶ 45-46. To stream the full video, a user therefore must continuously apply the processes described above—executing YouTube's proprietary decryption code to "unlock" the rolling cipher and sending back proof-of-origin tokens—which the user can only do if they are trying to view the video in an authorized manner on YouTube's platform. Session-bound URLs require "the application of information" (a valid session token) "to gain access to the work" (the content). 17 U.S.C. 1201(a)(3)(B); *CDK*, 2025 WL 1939951, at *9 (holding session-based authentication tokens constitute access controls under Section 1201(a)). Anyone who wants to access the file URL so that they can download and view the file outside of YouTube must circumvent these measures. *Id.* ¶¶ 48-50.

***Fourth***, IP blocking, rate limiting, and CAPTCHA challenges likewise control access to the works. *Id.* ¶¶ 57-64. YouTube uses automated processes to detect bot-and-scraper activity like Amazon's, and responds by blocking IP addresses and presenting CAPTCHA challenges. *Id.* They control access because they block users from watching or otherwise accessing the audiovisual works. *Id.*

Plaintiffs' detailed allegations are far above the threshold under Rule 8(a), as Judge Birotte held in *Snap*. *Snap* involved the same Plaintiffs, same alleged technological measures, and the same arguments raised in a motion to dismiss. As here, Snap argued that Plaintiffs failed to plead access controls because "their works are freely accessible" on YouTube, and that YouTube's controls were designed to "restrict download access." 2026 WL 2435349, at *4. The Court rejected these arguments, holding that the system "performs background


SUSMAN GODFREY LLP
401 Union St., Suite 3000
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

authentication and authorization processes before granting access to a video, and continued access remains subject to additional technological restrictions." *Id.* at *5.

As *Snap* recognized, YouTube's TPMs resemble the access controls at issue in *VidAngel*. *Id.* The *VidAngel* plaintiffs had made their works available on DVDs and Blu-ray discs which contained encryption measures. 869 F.3d at 853. To access the disc's contents, those encryption measures had to be decrypted. Only a DVD player from a licensed manufacturer could "lawfully decrypt [the] disc's content, and then only for playback, not for copying." *Id.* The defendant, VidAngel, circumvented the DVD's encryption measures to access and copy the discs' contents without using an authorized player. *Id.* VidAngel argued— as Amazon argues here— that purchasers could watch the movies on licensed DVD players, so they already had "access" and the DVD encryption measures were only a "copy control" governed by Section 1201(b), not an "access" control under Section 1201(a). The Ninth Circuit rejected the Defendant's position and held that the DVD's encryption measures were access controls. *Id.* at 865.

YouTube's TPMs operate similarly to the encryption measures on DVDs. To stream a YouTube video, the rolling cipher must first be decrypted and YouTube's servers must receive valid proof-of-origin tokens. Only YouTube's player software contains the keys to descramble the rolling cipher and to provide the proof-of-origin tokens, just as only an authorized DVD player contained the keys to decrypt the DVD's encryption measures. But even then, the ordinary user has only gained access to the webpage where the video playback occurs, not to the underlying video file, just as the ordinary user in *VidAngel* only gained access to the DVD's contents for playback, not for copying or viewing on an unauthorized device. In both cases, the TPMs control access to the underlying video file even though authorized viewing remains possible. To gain access to the underlying video file, Amazon, like VidAngel, had to circumvent YouTube's TPMs.

Amazon claims that none of these measures are "access measures" because they are not "encountered by every user or in the ordinary course of viewing a YouTube video." MTD 13.





SUSMAN GODFREY LLP
401 Union St., Suite 3000
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

But that is a disputed question of fact because Plaintiffs *do* allege that users encounter YouTube's TPMs in the ordinary course of watching a video. Plaintiffs allege that "[v]iewing a work on YouTube … requires the application of a sequence of authorized processes, including the issuance and validation of session-specific tokens, execution of player-side instructions, and reconstruction of segmented media streams into a continuous audiovisual experience." AC ¶ 48. Although these processes occur behind the scenes, an ordinary user must, as alleged, satisfy the technological protection measure to watch a video. *Snap* rejected the premise that an access control must be a visible, user-initiated barrier: "Nothing in § 1201(a) requires an access control to take the form of a paywall, password prompt, or other measure requiring affirmative user input. Rather, the statutory inquiry is whether the technological measure, in the ordinary course of its operation, requires the application of authorized information, or a process or a treatment, to gain access to the work." 2026 WL 2435349, at *4 (cleaned up). Each TPM "controls access to a work," *contra* MTD 17, by limiting the user's access to streaming the video on YouTube's platform, where YouTube and content creators like Plaintiffs can generate revenue from clicks and views. A user seeking the underlying video file must circumvent these measures.

YouTube's TPMs are thus different from those at issue in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522 (6th Cir. 2004). *See* MTD 11. Lexmark made printers and toner cartridges. *Id.* at 529-30. The question in *Lexmark* was whether an authentication sequence was a technological measure that effectively controlled access to Lexmark printer's software, called the Printer Engine Program Code. *Id.* at 546-47. The Sixth Circuit said no, because a user did not need to encounter the authentication code to access the Printer Engine Program Code; anyone could "read the literal code of the Printer Engine Program directly from the printer memory, with or without the benefit of the authentication sequence." *Id.* at 546. "No security device, in other words, protect[ed] access to the Printer Engine Program Code and no security device accordingly must be circumvented to obtain access to that program code." *Id.* at 547.



SUSMAN GODFREY LLP
401 Union St., Suite 3000
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

Here, users cannot access Plaintiffs' works—on YouTube or in the underlying file—without encountering TPMs like the rolling cipher and proof-of-origin tokens. YouTube's files are not in an "open database"; their cryptographic protections must be circumvented before delivery. As *VidAngel* makes clear, *authorized* viewing does not negate circumvention to reach the underlying video file. *See* 869 F.3d at 865.

In addition to the rolling cipher, proof-of-origin tokens, and short-lived, session-bound URLs, YouTube also employs two measures—IP blocking and CAPTCHA challenges—that can *revoke* access to YouTube's platform. As Plaintiffs allege, YouTube monitors network behavior and blocks IP addresses that exhibit patterns consistent with abusive behavior, so that the IP addresses lose access to the entire YouTube platform. AC ¶¶ 57-58. IP rotation abandons the challenged address and resumes from a new one to circumvent IP blocking. YouTube also deploys CAPTCHA challenges (tests "often requiring identification of objects with grainy images") when automated or suspicious activity is detected. *Id.* ¶¶ 61-64. These challenges "perform a gatekeeping function by prohibiting a certain type of user (a bot) from accessing the platform and the audiovisual works hosted on it." *Id.* ¶ 61. YouTube deploys them when traffic looks automated or suspicious and denies continued streaming until the challenge is completed. Large-scale scraping necessarily triggers CAPTCHA challenges. *Id.* ¶¶ 61–64.

Amazon argues that neither CAPTCHA nor IP blocking counts as access controls because they are only triggered by abusive behavior and not deployed "each time a user tries to watch a YouTube video." MTD 14, 16. Amazon ignores Plaintiffs' allegations that they were in place at *all* relevant times and that Amazon could not have accessed the underlying files referenced in the datasets without circumventing them. AC ¶ 69. A measure that denies access to unauthorized users controls access. The Ninth Circuit has held that measures that *revoke* access can also be access controls under Section 1201(a): "[I]n our view, an access control measure can both (1) attempt to block initial access and (2) *revoke access* if a secondary check determines that access was unauthorized." *MDY*, 629 F.3d at 943. In *MDY*, a TPM called "Warden" scanned a player's computer to detect bots before allowing connection to World of





SUSMAN GODFREY LLP
401 Union St., Suite 3000
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

Warcraft's servers and also ran periodically in the background to detect bots and boot them. The Ninth Circuit held that Warden was "an effective access control measure" with respect to certain copyrighted work. *Id.* at 942, 954. YouTube, like Warden, monitors network behavior and employs TPMs like IP blocking and CAPTCHA challenges that monitor behavior and boot unauthorized users from the YouTube platform.

Indeed, courts regularly recognize TPMs like CAPTCHA as access measures. *See, e.g.*, *Ticketmaster L.L.C. v. RMG Techs., Inc.*, 507 F. Supp. 2d 1096, 1112 (C.D. Cal. 2007) ("[B]ecause CAPTCHA 'in the ordinary course of its operation, requires the application of information … to gain access to the work,' it is a technological measure that regulates access to a copyrighted work."); *see also Ticketmaster*, 306 F.Supp.3d at 1174 (same); *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F.Supp.2d 1039, 1056 (N.D. Cal. 2010) (same). Judge Engelmayer's recent decision in *Reddit v. SerpApi* is particularly on point. The court held that Google's "SearchGuard," a TPM used by Google, was "a 'process' required 'to gain access to the work,'" because "[i]t erects a gate between users and Google [search engine results pages], which, in the ordinary course, can be opened only by human users but which keeps out automated users." 2026 WL 2210094, at *16. The very same is true of YouTube's CAPTCHA and IP blocking measures.

Amazon's assertion that it circumvented CAPTCHAs by "downloading in bulk without triggering" them (MTD 16) *reinforces* Plaintiffs' claim. Section 1201(a)(3)(A) defines circumvention to include "avoid[ing]" or "bypass[ing]" a technological measure. If Amazon structured its scraping to avoid triggering CAPTCHAs, it "avoid[ed]" an access control—which is circumvention by statutory definition. Moreover, Plaintiffs allege that Amazon circumvented this measure by rotating IP addresses across virtual machines to avoid detection. AC ¶¶ 103-106. Whether IP blocking constitutes an access control in the abstract is a question this Court need not resolve at the pleading stage. It is enough that Plaintiffs have plausibly alleged that the measure controls access and that Amazon circumvented it.



SUSMAN GODFREY LLP
401 Union St., Suite 3000
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

Amazon also places great weight on the Copyright Office's discussion of rate-limiting. Amazon claims that it "concluded that these sorts of rate-limit enforcement systems do not effectively control access to a work as contemplated by Section 1201." MTD 15. But the Copyright Office repeatedly emphasized the limited amount of information it had before it to assess whether IP address rotation schemes effectively control access to a work. *See, e.g.*, Section 1201 Rulemaking: Ninth Triennial Proceeding Recommendation of the Register of Copyrights, at 125 (Oct. 2024) ("IP address rotation, *based on the thin record before the Office*, does not *appear* to involve circumvention of an effective control").

Because YouTube's TPMs are precisely the type of measures that the Ninth Circuit already has held are access controls under Section 1201(a), Amazon's motion should be denied.

**b. YouTube's TPMs Are Access Controls Even If They Do Not Prevent Users from Viewing the Works on YouTube's Platform**

Amazon argues that because Plaintiffs' works are viewable on YouTube, users have "access to the work," and Section 1201(a) offers nothing more for the underlying file. MTD 10-13. Plaintiffs allege that YouTube's TPMs require a process for *any* access to the works, including streaming. In any event, Section 1201(a) does not require TPMs to prevent viewing or streaming; they need only *effectively control* how users access Plaintiffs' works.

Start with the plain language of the statute. Amazon's reading of the DMCA does not align with the words Congress used. The statute says "access"; not "perceive," "view," or "watch." *See* 17 U.S.C. § 1201(a)(3)(B). "Access" includes the "freedom or ability to obtain or make use of something." *See Access*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/access (last visited Aug. 24, 2026); *see also Yout*, 633 F.Supp.3d at 664 (citing Merriam Webster and concluding that TPMs "that restrain a YouTube user's freedom or ability to access the location where downloadable files are stored and download them" are plausibly access controls). That is exactly what Plaintiffs allege: that YouTube employed TPMs restricting users' "freedom or ability to obtain" (*i.e.* "access") the underlying audiovisual files, and that Amazon circumvented those controls to "obtain[] millions of videos from YouTube's

platform." AC ¶ 152. Accessing the underlying file is accessing the work. Viewing it through an authorized player does not erase the copyright owner's right to bar unauthorized access to the file.

Further, the plain text of the statute says "effectively *controls* access," not "effectively *prevents* access." As the Ninth Circuit explained, "[t]he statutory definition of the phrase 'effectively control access to a work' does not require that an access control be strong or circumvention-proof. Rather, it requires an access control measure to provide some degree of control over access to a copyrighted work." *MDY*, 629 F.3d at 954 n.17 (citation omitted). Amazon's claim that a TPM must render a work completely inaccessible to satisfy Section 1201(a) has no support in the statute, case law, or common sense. Under Amazon's logic, DVD encryption would not qualify because consumers can watch the movies at a theater.

*VidAngel* forecloses Amazon's interpretation of Section 1201(a). The Ninth Circuit rejected the argument that viewing the works made the DVD's TPMs use rather than access controls: "[n]othing in the legislative history [of the DMCA] suggests that VidAngel did not circumvent an access control simply because there are authorized ways to access the Studios' works." 869 F.3d at 865. The same reasoning applies here: YouTube's TPMs limit access to authorized streaming while protecting the underlying files (*see supra* Part I.a).

The legislative history of the DMCA also forecloses Amazon's narrow interpretation of Section 1201(a). In enacting Section 1201(a), Congress "was particularly concerned with encouraging copyright owners to make their works available in digital formats such as 'on-demand' or 'pay-per-view,' which allow consumers effectively to 'borrow' a copy of the work for a limited time or a limited number of uses." *MDY*, 629 F.3d at 947. As the House Commerce Committee warned, "[t]o operate in this environment, content providers will need both the technology to make new uses possible and the legal framework to ensure they can protect their work from piracy." *Id.* (quoting H.R. Rep. No. 105-551(II), at 23). Congress clearly had in mind that Section 1201(a) would not just encompass access controls that prevent users from viewing the works (such as paywall), but also those that protect streamers from piracy (by preventing





SUSMAN GODFREY LLP
401 Union St., Suite 3000
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

users from accessing and downloading the underlying video file, even if they could otherwise *view* the work by streaming it). If Section 1201(a) did not extend to this latter type of "access control," then copyright owners like Plaintiffs would never make their works available for on-demand streaming—on YouTube or any streaming platform—contrary to Congress's intent.

Against the statutory language, the Ninth Circuit's controlling authority, and legislative history, Amazon relies on cases that state that unremarkable point that if Plaintiffs' video files sat in an open database for anyone to open and access, they would not have a Section 1201(a) claim.

For example, Amazon relies on *MDY* to argue that public accessibility forecloses a Section 1201(a) claim. MTD 11. But, in *MDY*, the Ninth Circuit held that the technological measure—which scanned a user's computer before allowing them to connect to the defendant's servers to detect for bots—was not an access control with respect to *certain* copyrightable elements of the video game (the game's source code and certain "visual and audible components of the game") because those elements were already stored on the players' hard drives. 629 F.3d at 954. A user did not need to connect to the defendant's servers to access these elements and so never would have encountered the TPM. Here, by contrast, the measures are encountered by users.

Likewise, Amazon relies on *Lexmark* to argue that public accessibility forecloses a Section 1201(a) claim. MTD 11-12. But *Lexmark* only held that a TPM is not an access control when the underlying program is "readable" from the printer's memory without any circumvention. 387 F.3d at 546-47. Here, on the other hand, the underlying video files are not "readable" without circumvention—they are locked away behind YouTube's "digital walls" and delivered only through YouTube's authorized player. AC ¶¶ 38-59. Moreover, Judge Engelmayer's recent *Reddit* decision concluded that *Lexmark*'s broad language—including its "back door analogy"—is "dicta," and that denying statutory coverage for a measure designed to prevent bulk electronic circumvention "does not follow from the statutory text and is in tension, if not outright antithetical, to the DMCA's purposes." 2026 WL 2210094, at *17.



SUSMAN GODFREY LLP
401 Union St., Suite 3000
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

Amazon also seeks support from *Digital Drilling Data Sys., L.L.C. v. Petrolink Servs., Inc.*, 965 F.3d 365 (5th Cir. 2020). *Digital Drilling* stands for the premise that a TPM is not an access control if it does not "control[] access to the [work] *at all*." *Id*. at 376-77 (holding that the plaintiff's TPMs did not control access to the plaintiff's "database schema" because the "data was stored in an *open database file* to allow users to query the database using off-the-shelf products."). Here, the video files remain in "a locked room," which Amazon needed to break into in order "to obtain a copy of [the works]." *VidAngel*, 869 F.3d at 865.

*Project Travel, LLC v. Terra Dotta, LLC*, 2026 WL 890422 (M.D. Fla. Apr. 1, 2026) is both inapposite and non-binding. There, the court determined that there was no Section 1201(a) claim because the plaintiff used a valid password to access the software, so there was no circumvention. *Id.* at *6. Here, Plaintiffs have specifically alleged various methods that Amazon used to circumvent YouTube's TPMs to gain unauthorized access to the files. And in *Avaya, Inc. v. Telecom Labs, Inc.*, 2012 WL 13035096 (D.N.J. May 1, 2012), there was also no protection measure that guarded "access [to] the copyrighted aspect of the [plaintiff's] software," and so no violation of Section 1201(a). *Id.* at *8.

Amazon also points to *Hattler v. Ashton*, 2017 WL 11634742 (C.D. Cal. Apr. 20, 2017), an unpublished decision predating *VidAngel*, for the proposition that where access is provided there is no Section 1201(a) violation. MTD 12. But *Hattler* involved remarkably sparse (in fact, completely nonexistent) allegations about the technological measures at issue. While the plaintiff claimed that the defendants "circumvented the technological measure on [Plaintiff's] sites," he did not allege *anything* about what those technological measures were, nor did he allege that users encountered those measures before accessing and copying his works. *See* Request for Judicial Notice (RJN), Dkt. 20 (Ex. A). Equally important, *Hattler* predates *VidAngel* and is obsolete to the extent it assumes that allowing a person to view a work relinquishes Section 1201(a) protection. Post-*VidAngel*, courts have denied motions to dismiss involving the same claims and YouTube measures. *See, e.g.*, *Snap*, 2026 WL 2435349, at *1; *Suno*, 2026 WL 2445362, at *4.

And in *CouponCabin LLC v. Savings.com, Inc.*, 2016 WL 3181826, at *6 (N.D. Ind. June 8, 2016)—another pre-*VidAngel* case on which Amazon relies—the court dismissed the Section 1201(a) claim because the plaintiff's TPM was plainly ineffective: the defendants simply switched to servers that had *not* been blocked. The decision does not hold that IP blocking is categorically not an access control. Amazon also cites *Van Buren v. United States* for the assertion that "access" is a "gates-up-or-down" inquiry." MTD 5. But *Van Buren* is about the use of the term "access" in the Computer Fraud and Abuse Act, which the Ninth Circuit has interpreted differently than Section 1201(a). *See VidAngel*, 869 F.3d at 863 n. 15 (declining to rely on CFAA authorities in interpreting Section 1201(a)).

**c. Courts Have Uniformly Rejected Amazon's Arguments About YouTube's Measures After VidAngel**

The case law confirms that Amazon's arguments are meritless. District courts have uniformly rejected Amazon's arguments and denied motions to dismiss Section 1201(a) claims premised on YouTube's TPMs. Amazon tries to wave away what it calls a "small handful" of decisions rejecting its arguments about "YouTube's anti-scraping measures under Section 1201(a)." MTD 12. That is a dramatic understatement, and even more so now than it was at the time Amazon filed its Motion. Every court since *VidAngel* has declined to dismiss Section 1201(a) claims premised on YouTube's TPMs. *See, e.g.*, *Sony*, 2026 WL 1019199, at *3 (YouTube measures plausibly alleged to regulate access); *see also Udio*, 2026 WL 1430232, at *3 (same); *Suno*, 2026 WL 2445362, at *4 (same); *Cordova*, 817 F.Supp.3d 819, 833-35 (denying motion to dismiss); *Edland*, 2021 WL 3080225, at *6 (YouTube TPMs supported claim); *cf. Yout*, 633 F.Supp.3d at 676 (YouTube TPM); *Snap*, 2026 WL 2435349, at *1 (TPMs alleged as access controls). In just the four weeks since Amazon filed its Motion, Judge Birotte rejected the same arguments in *Snap*—which involves the same Plaintiffs here—and Judge Saylor did the same in a pair of cases against Suno, Inc.

Despite the mountain of relevant post-VidAngel precedent, Amazon addresses only *Cordova* and mischaracterizes its decision as treating Section 1201(a) and Section 1201(b) as



SUSMAN GODFREY LLP
401 Union St., Suite 3000
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

interchangeable. MTD 13. That is not what the court held; rather, the court explained that "[Plaintiff] has adequately pled that YouTube applies technological measures, including 'rolling-cipher technology' designed to prevent unauthorized downloading, to videos published on its platform that effectively control access to his videos for purposes of §1201(a)." *Cordova*, 817 F.Supp.3d at 834. The string cite that Amazon references merely confirms that other courts have recognized that YouTube employs TPMs to protect its content, whether in the context of a Section 1201(a) or a Section 1201(b) claim. Nowhere did the court take the position that Section 1201(a) and Section 1201(b) are interchangeable. In any event, whatever the *Cordova* decision may arguably lack the *Snap*, *Udio*, and *Suno* decisions all address in detail, correctly holding that detailed inquiries into the mechanisms of YouTube's TPMs and Amazon's acts of circumvention are factual questions better left for discovery, summary judgment, and trial. 2026 WL 2435349, at *5; 2026 WL 1430232, at *3; 2026 WL 2445362, at *3. This Court should decline Amazon's request for an extraordinary departure from settled law to resolve this case on the pleadings without any factual record or discovery.

d. **YouTube's TPMs Can Be Both Access and Copy Controls**

Amazon further argues that because the alleged TPMs restrict downloading, they are copy controls, not access controls. *See, e.g.*, MTD 17-21. But this both mischaracterizes the allegations of the Amended Complaint and is wrong on the law. Amazon misreads both the statute and *VidAngel*. First, the Amended Complaint alleges that the contested TPMs restrict all forms of access, not solely downloading. Amazon would still be liable for a Section 1201(a) claim had it circumvented the rolling cipher, for example, to stream Plaintiffs' videos from YouTube's servers outside of the authorized playback environment, an act that would similarly deprive Plaintiffs of advertising revenue. That Amazon downloaded videos instead of watching them after it circumvented the TPMs makes no difference.

Second, the Ninth Circuit has squarely rejected Amazon's assertion that there is a rigid, unyielding, distinction between access controls governed by Section 1201(a) and use controls governed by Section 1201(b). In *VidAngel*, the Ninth Circuit explained that "the statute does





SUSMAN GODFREY LLP
401 Union St., Suite 3000
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

not provide that a TPM cannot serve as both an access control and a use control …. [W]hen a defendant decrypts the TPMs and then also reproduces that work, it is liable for both circumvention in violation of § 1201(a)(1)(A) and copyright infringement in violation of § 106(1).” 869 F.3d at 864. Similarly, in *MDY*, the Ninth Circuit acknowledged that a TPM could “both (1) control[] access and (2) protect[] against copyright infringement.” 629 F.3d at 946; *Snap*, 2026 WL 2435349, at *6 (“[I]t is irrelevant that the rolling cipher may also restrict download access since the statute does not provide that a TPM cannot serve as both an access control and a use control.”). The DMCA does not force a copyright owner to label each measure either an “access control” or a “copy control.” Indeed, even the Copyright Office has its own term for TPMs that do both jobs at once: “merged access and copy controls.” *See* U.S. Copyright Office, *Section 1201 of Title 17: A Report of the Register of Copyrights*, at 126 (June 2017).[4] Amazon’s claim that YouTube’s TPMs must be classified as either access controls or copy controls is a false dichotomy that the Ninth Circuit has already rejected.

Amazon’s reliance on the hearing concerning the WIPO Copyright Treaties Implementation Act and Online Copyright Liability Limitation Act (the “1997 Hearing”) does not change the analysis. The Ninth Circuit has already explained that “neither the language of section 1201 nor the legislative history addresses the possibility of access controls that also restrict use.” *VidAngel*, 869 F.3d at 865. Amazon therefore offers legislative history from the 1997 Hearing on a question the Ninth Circuit has said that history does not answer: the Register’s example of “a technology that blocks users from downloading copies” addresses a single-function measure that blocks copying after content has already been delivered to the user, not a measure that conditions delivery of the file itself on authenticated requests through an

[4] In its report, the Copyright Office further wrote that “[a] few commenters proposed that in ***the many cases*** *where access controls and copy controls are merged*, the rulemaking should treat the inquiry into the adverse effects on noninfringing uses differently,” such that “obtaining an exemption” under the DMCA “should be easier where the TPM at issue is merged.” *Id.* The Office rejected this argument, noting that “[t]he Office believes that section 1201(a)(1) is best read as protecting the integrity of access controls even where prohibited conduct would not be infringing.” *Id.* at 126-27.



SUSMAN GODFREY LLP
401 Union St., Suite 3000
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

authorized player, as Plaintiffs allege here (AC ¶¶ 54-56, 65-68). *WIPO Copyright Treaties Implementation Act; and Online Copyright Liability Limitation Act: Hearing Before the Subcomm. on Cts. & Intell. Prop.*, 105th Cong. 48 (1997); *see* MTD 17. As *VidAngel* confirms, "[n]othing in the legislative history suggests that VidAngel did not circumvent an access control simply because there are authorized ways to access the Studios' works." *VidAngel*, 869 F.3d at 865.

Amazon also argues that because it had one form of authorized access to Plaintiffs' works (the ability to view them on YouTube), it could not run afoul of any provision of Section 1201. MTD 21. But Amazon's reliance on that proposition and on *Ass'n for Info. Media & Equip.* v. *Regents of the Univ. of Calif.*, 2012 WL 7683452, at *9 (C.D. Cal. Nov. 20, 2012), is misplaced. *Regents* held that there was no Section 1201(a) violation where the defendant "had lawful access to the DVDs." *Id.* That reasoning does not survive *VidAngel*, which squarely rejected the argument that a DVD purchaser's "lawful access" authorized it to "decrypt [technological measures] to view the discs' content." 869 F.3d at 863. Rather, the Ninth Circuit said, "lawful purchasers have permission only to view their purchased discs with a DVD or Blu-Ray player licensed to decrypt the TPMs." *Id.* at 863.

The same logic applies here. The public has lawful access to view Plaintiffs' works *on YouTube*, but has no permission to access them otherwise—not through a bootleg player or by copying the underlying video files. Just as the TPMs in *VidAngel* prevented viewing through an unlicensed mechanism *and* accessing or reproducing the DVD's underlying file, YouTube's TPMs likewise prevent viewing outside its platform *and* accessing or reproducing the underlying video file. That YouTube's access controls may *also* be copy controls is no reason to dismiss Plaintiffs' claims.

Amazon's parade of horribles—that Plaintiffs' reading would "collapse [the access/copy control] distinction," MTD 19, or render every copy-prevention mechanism an access control—is illusory. The distinction between access controls and copy controls turns on the *function* of the measure, not on whether the underlying work exists in other forms;

YouTube's TPMs control who can access the video data and under what conditions. That some of those measures *also* prevent copying does not strip them of their access-control function. *VidAngel*, 869 F.3d at 864.

Amazon claims that Plaintiffs' interpretation would "permit an end-run around the requirements and defenses of the Copyright Act" by allowing copyright owners to circumvent fair use through technological controls. MTD 19. This policy argument was considered and rejected by Congress when it enacted the DMCA. Congress was well aware that Section 1201(a) would restrict some otherwise lawful uses of copyrighted works. H.R. Rep. No. 105-551(II), at 36. Rather than narrow the definition of "access" control, Congress addressed this concern through its carefully calibrated system of exemptions: the triennial rulemaking process and the statutory exemptions. This was a deliberate choice. Amazon asks the Court to second-guess that choice by judicially grafting a fair-use limitation onto the definition of "access control" itself. The proper mechanism for addressing fair use in the Section 1201(a) context is the exemptions framework, not judicial narrowing of the statute's terms.

**e. Section 1201(a) Protects Copies and Phonorecords**

Amazon's fallback argument is a definitional one—that "access to a work" under Section 1201(a)(1)(A) means access to the expressive content, not to any particular copy or file embodying the work. MTD 17-18. On this theory, Amazon argues that because Plaintiffs' videos are available for streaming, anyone can "access" the work, and no measure restricting access to the underlying file qualifies as an access control. *Id.* at 18. This is both irrelevant and wrong.

It is irrelevant because, even under Amazon's reading, the Amended Complaint states a claim under Section 1201(a). The Amended Complaint alleges that Amazon circumvented YouTube's technological measures to download full video files, which contain the expressive elements of Plaintiffs' works. AC ¶¶ 51, 87, 92, 152. That satisfies even Amazon's blinkered reading of the statute.

Amazon's reading is wrong because it contradicts the plain text, case law, and legislative history.



SUSMAN GODFREY LLP
401 Union St., Suite 3000
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

Amazon's argument rests on the premise that Section 1201(a)(1)(A) refers to "access to a work," not access to "the particular 'material object' in which the work is embodied." *Id.* Amazon seizes on the statute's use of "work" and marshals cases from unrelated copyright contexts to reverse-engineer a definition that excludes any physical embodiment of a work. *See* MTD 18 (citing *Sullivan v. Flora, Inc.*, 936 F.3d 562, 567–68 (7th Cir. 2019); *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1079 (9th Cir. 2000); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1160 (9th Cir. 2007); *London-Sire Recs., Inc. v. Doe 1*, 542 F. Supp. 2d 153, 171 (D. Mass. 2008); *Matthew Bender & Co. v. W. Publ'g Co.*, 158 F.3d 693, 702 (2d Cir. 1998)). But the statute contains no such limitation. Section 1201(a)(1)(A) protects access to a work; it does not say that access to a work excludes access to a copy or file in which the work is embodied.

The legislative history in fact affirmatively cuts the other way. The House Report accompanying the DMCA states that Section 1201(a) "applies when a person has not obtained authorized access to *a copy or a phonorecord* of a work for which the copyright owner has put in place a technological measure that effectively controls access to his or her work." H.R. Rep. No. 105-551(I), at 19 (1998). And the Copyright Office defines "copy" as "[t]he material object, other than a phonorecord, in which the copyrighted work is first fixed, and from which the work can be perceived, reproduced, or otherwise." U.S. Copyright Office, *Frequently Asked Questions — Definitions*, https://www.copyright.gov/help/faq-definitions.html. Amazon's position is untenable against this backdrop, as these authorities directly undermine its contention that the term "work" only refers to the expressive content itself. MTD 18.

*VidAngel* again confirms this to be true. There, the court took issue with VidAngel's circumvention of the Studios' TPMs to "obtain a digital *copy* of the disc's movie" and likened it to "breaking into a locked room in order to obtain a copy of a [movie]." *VidAngel*, 869 F.3d at 864-65. In other words, the Ninth Circuit construed Section 1201(a)(1)(A)'s reference to "access to a work" to include access to *copies* of the work—the very reading Amazon asks this Court to reject. The Ninth Circuit accepted CSS and AACS as access controls even though the films they



SUSMAN GODFREY LLP
401 Union St., Suite 3000
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

protected could be viewed through other licensed means. The relevant question, then, is not whether the work could be perceived somewhere, but whether the particular TPM controlled access to the work as embodied in a particular medium. YouTube's TPMs control access to the copyrighted work as it exists in the form of a digital file on YouTube's servers. The fact that the same work can be streamed through YouTube's player—a limited, authorized mode of access—does not render the TPMs any less of an access control with respect to the files themselves.

## CONCLUSION

For the foregoing reasons, the Court should deny Amazon's motion to dismiss. If it concludes that Plaintiffs' claims are insufficiently pleaded, Plaintiffs request leave to amend.

Dated: August 31, 2026

Respectfully submitted,

/s/ *Jordan Connors*

Rohit Nath (*pro hac vice pending*)
Michael Gervais (*pro hac vice pending*)
Samantha Frazier (*pro hac vice pending*)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
rnath@susmangodfrey.com
mgervais@susmangodfrey.com
sfrazier@susmangodfrey.com

Jordan Connors (WSB #41649)
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-2683
jconnors@susmangodfrey.com

Max Lalon Tribble, Jr (*pro hac vice pending*)
SUSMAN GODFREY L.L.P.
1000 Louisiana Avenue, Suite 5100
Houston, Texas 77002
mtribble@susmangodfrey.com

Janelle Bailey
WASHINGTON INJURY LAW
1905 Queen Anne Avenue N, Suite 300
Seattle Washington 98109
jbailey@washingtoninjurylaw.com

Tom Kherkher (*pro hac vice pending*)

Jarrett Lee Ellzey (*pro hac vice pending*)
Leigh S. Montgomery (*pro hac vice pending*)
Tyler Yagman (*pro hac vice pending*)
ELLZEY KHERKHER SANFORD
MONTGOMERY LLP
4200 Montrose Street, Suite 200
Houston, TX 77006
tkherkher@eksm.com
jellzey@eksm.com
lmontgomery@eksm.com

*Attorney for Plaintiffs and the Proposed Class*

## CERTIFICATION OF COMPLIANCE

I certify that this memorandum contains 8,343 words, in compliance with the Local Civil Rules.

*/s/ Jordan Connors*
Jordan Connors

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Jordan Connors*
Jordan Connors



SUSMAN GODFREY LLP
401 Union St., Suite 3000
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883