THE HONORABLE JAMAL N. WHITEHEAD

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

TED ENTERTAINMENT, INC., MATT FISHER, and GOLFHOLICS, INC., each individually and on behalf of all others similarly situated,

Plaintiffs,

v.

AMAZON.COM, INC., a Delaware Corporation,

Defendant.

Case No. 2:26-cv-01134-JNW

**DEFENDANT AMAZON.COM, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

Note on Motion Calendar: September 14, 2026

Oral Argument Requested



LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

**TABLE OF CONTENTS**


Page

INTRODUCTION ........................................ 1

ARGUMENT ........................................ 2

I. PLAINTIFFS' ALLEGATIONS CONFIRM THAT YOUTUBE'S TPMS ARE NOT ACCESS CONTROLS ........................................ 2

II. PLAINTIFFS' ATTEMPTS TO RECHARACTERIZE YOUTUBE'S TPMS AS ACCESS CONTROLS FAIL ........................................ 3

III. PLAINTIFFS HAVE NOT PLAUSIBLY ALLEGED THAT AMAZON CIRCUMVENTED AN ACCESS CONTROL ........................................ 7

IV. PLAINTIFFS' THEORY WOULD ELIMINATE FAIR USE IN THE DIGITAL WORLD ........................................ 10

CONCLUSION ........................................ 11




LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adobe Sys. Inc. v. A&S Elecs., Inc.*,
No. 15-cv-2288, 2015 WL 13022288 (N.D. Cal. Aug. 19, 2015) ....9

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*,
589 U.S. 327 (2020) ....5

*Couponcabin LLC v. Savings.com, Inc.*,
No. 14-cv-39, 2016 WL 3181826 (N.D. Ind. June 8, 2016) ....6

*DISH Network L.L.C. v. World Cable Inc.*,
893 F. Supp. 2d 452 (E.D.N.Y. 2012) ....9, 10

*Disney Enters., Inc. v. VidAngel, Inc.*,
869 F.3d 848 (9th Cir. 2017) ....4

*Hattler v. Ashton,*
No. 16-cv-4099, 2017 WL 11634742 (C.D. Cal. Apr. 20, 2017) ....4

*Heggem v. Snohomish Cnty.*,
No. 10-cv-1724, 2011 WL 4559057 (W.D. Wash. Aug. 16, 2011) ....12

*I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.*,
307 F. Supp. 2d 521 (S.D.N.Y. 2004) ....9

*Kirtsaeng v. John Wiley & Sons, Inc.*,
568 U.S. 519 (2013) ....3

*L.V. Sun, Inc. v. Adelson*,
147 F.4th 1103 (9th Cir. 2025) ....4

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
387 F.3d 522 (6th Cir. 2004) ....6

*LivePerson, Inc. v. 24/7 Customer, Inc.*,
83 F. Supp. 3d 501 (S.D.N.Y. 2015) ....9

*MDY Indus., LLC v. Blizzard Ent., Inc.*,
629 F.3d 928 (9th Cir. 2010) .... *passim*

*Perfect 10, Inc. v. Amazon.com, Inc.*,
508 F.3d 1146 (9th Cir. 2007) ....3



LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

*Reddit, Inc. v. SerpApi LLC*,
No. 25-cv-8736, 2026 WL 2210094 (S.D.N.Y. July 31, 2026) ....................8

*Replenium Inc. v. Albertsons Cos.*,
No. 24-cv-1281, 2025 WL 460057 (W.D. Wash. Feb. 11, 2025) ....................2

*Sony Music Ent. v. Uncharted Labs, Inc.*,
No. 24-cv-4777, 2026 WL 1019199 (S.D.N.Y. Apr. 15, 2026) ....................5

*Ted Ent., Inc. v. Snap, Inc.*,
No. 26-cv-754, 2026 WL 2435349 (C.D. Cal. Aug. 19, 2026) ....................5

*Ticketmaster L.L.C. v. RMG Techs., Inc.*,
507 F. Supp. 2d 1096 (C.D. Cal. 2007) ....................7, 9

*UMG Recordings, Inc. v. Suno Inc.*,
No. 24-cv-11611, 2026 WL 2410184 (D. Mass. Aug. 18, 2026) ....................5

*United States v. Elcom Ltd.*,
203 F. Supp. 2d 1111 (N.D. Cal. 2002) ....................2

*Universal City Studios, Inc. v. Corley*,
273 F.3d 429 (2d Cir. 2001) ....................11

*Wilson v. Target Corp.*,
No. 25-cv-43, 2025 WL 3114455 (N.D. Cal. Nov. 6, 2025) ....................12

**STATUTES**

17 U.S.C.
§ 106A(e)(2) ....................4
§ 1201(a) ....................2
§ 1201(a)(1)(A) ....................3, 5
§ 1201(a)(1)(C) ....................11
§ 1201(a)(3)(B) ....................2, 5, 7, 8
§ 1201(b) ....................2
§ 1201(c)(1) ....................11

**OTHER AUTHORITIES**

Merriam-Webster, *Gain/Get Access To*, https://www.merriam-webster.com/dictionary/gain%2Fget%20access%20to (last visited Sep. 14, 2026) ....................7

H.R. Rep. No. 105-551, pt. 1 (1998) ....................5

H.R. Rep. No. 105-551, pt. 2 (1998) ....................6



LATHAM & WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

4 *Nimmer on Copyright* § 12A.06[C][5]........................................................................................8

*Online Copyright Liability Limitation Act: Hearing Before the Subcomm. on Cts. & Intell. Prop.*, 105th Cong. 48 (1997)........................................................................................3

U.S. Copyright Off., *Section 1201 Rulemaking: Ninth Triennial Proceeding to Determine Exemptions to the Prohibition of Circumvention, Recommendation of the Register of Copyrights* (Oct. 2024), https://www.copyright.gov/1201/2024/2024_Section_1201_Registers_Recommendation.pdf ........................................................................................5

## INTRODUCTION

Plaintiffs do not dispute that YouTube's controls permit anyone to "watch and listen to videos" on YouTube "for free." Dkt. 13 ("FAC") ¶ 35. That concession ends this case. Section 1201 only prohibits circumventing technological measures that control access to a work, not measures that merely prevent copying of a freely available work. Because Plaintiffs' own allegations establish that members of the public can view their works on YouTube without restriction, the measures they identify are definitionally *copy controls*, not access controls, and their Section 1201(a) claim fails.

Amazon does not contest—though only at this early motion to dismiss stage—that Plaintiffs alleged that YouTube employs technological measures of some sort. But the question at this stage is whether, as alleged, Amazon circumvented measures that control *access* to Plaintiffs' works (which would state a claim under Section 1201), or merely measures that control copying (which would not). As the FAC's allegations make clear, they do the latter: "YouTube locks users from downloading copies of the work," *id.*; the rolling cipher prevents "downloading, copying or distribution," *id.* ¶ 55; and the TPMs "prohibit scraping, unauthorized downloading, bulk extraction," *id.* ¶ 147. In opposition, Plaintiffs attempt to recharacterize these copy controls as access controls. Their arguments are inconsistent with the statutory text, collapse the distinction Congress drew between access controls and copy controls, and are unsupported by their own complaint. Even if the Court concluded otherwise, Plaintiffs have not plausibly alleged that Amazon circumvented the access-control component of any TPM.

To be sure, some courts have permitted Section 1201 claims based on alleged circumvention of YouTube's anti-scraping measures to survive motions to dismiss. But these decisions were wrong; they did not engage with the plain language of the statute or the critical distinction between access controls and copy controls.

Concluding that Plaintiffs' claim is not cognizable under the DMCA does not deprive rights owners of other remedies. Many rights owners have filed ordinary copyright infringement claims based on the use of their works for training generative AI models. Plaintiffs chose not to do so


LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

here. This Court should not reward that choice by finding a DMCA remedy where Congress chose not to provide one.

## ARGUMENT

### I. Plaintiffs' Allegations Confirm That YouTube's TPMs Are Not Access Controls

Plaintiffs do not dispute that Congress established, in Section 1201, a clear distinction between access controls (measures that "effectively control[] access to a work") and copy controls (measures that "effectively protect[] a right of a copyright owner," such as the exclusive right of reproduction). 17 U.S.C. § 1201(a)-(b). For access controls, Congress prohibited both circumventing and trafficking in circumvention devices. *Id.* § 1201(a). But for copy controls, Congress prohibited only trafficking in circumvention devices. *Id.* § 1201(b). By refusing to prohibit circumvention, "Congress expressly disclaimed any intent to impair any person's rights of fair use." *United States v. Elcom Ltd.*, 203 F. Supp. 2d 1111, 1120-21 (N.D. Cal. 2002).

As alleged in the FAC, YouTube's TPMs "permit[] members of the public" to "watch and listen to videos" on YouTube "for free." FAC ¶¶ 35, 39, 73. A measure that permits free, public access to a work does not control one's ability to "gain access" to that work, and so is not an access control. 17 U.S.C. § 1201(a)(3)(B). Instead, as repeatedly alleged in the FAC, YouTube's TPMs prohibit copying, not access. *See* FAC ¶ 36 ("To enforce its prohibitions on downloading content, YouTube uses technological processes and tools to detect and block access to files for unauthorized downloading."); *id.* ¶ 81 (YouTube implemented TPMs "to impede the downloading of audiovisual content from its platforms"); Dkt. 17 ("Mot.") at 23.[1] And the FAC alleges that Amazon circumvented these TPMs not by viewing otherwise unviewable content but by "enabling automated systems to retrieve permanent copies of content." FAC ¶ 94. As the Register of Copyrights has explained, "a technology that blocks users from downloading copies" is a quintessential copy control. *WIPO Copyright Treaties Implementation Act; and Online Copyright*

---

[1] To the extent Plaintiffs attempt to argue that the TPMs do *not* prevent downloading and prevent only accessing, *see* Dkt. 19 at 13 (whether "Amazon downloaded videos … makes no difference"), that is completely contrary to what they alleged in the FAC. "A plaintiff 'cannot amend its complaint by advancing arguments solely in an opposition brief.'" *Replenium Inc. v. Albertsons Cos.*, No. 24-cv-1281, 2025 WL 460057, at *13 (W.D. Wash. Feb. 11, 2025).



LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

*Liability Limitation Act: Hearing Before the Subcomm. on Cts. & Intell. Prop.*, 105th Cong. 48 (1997).

## II. Plaintiffs' Attempts to Recharacterize YouTube's TPMs as Access Controls Fail

Despite these dispositive allegations, Plaintiffs attempt to recharacterize YouTube's controls as access controls. These attempts fail.

**Measures that only control access to a "file," but let anyone view the work embodied on that file, are not access controls.** Plaintiffs' primary argument is that because YouTube imposes measures that prevent access to the underlying *file* containing a video, obtaining a copy of that file constitutes unauthorized "access" under Section 1201(a)(1), *even if* the audiovisual "work" embodied in that file is freely accessible to anyone. Dkt. 19 ("Opp'n") at 20-21, 28-30. Plaintiffs thus assert that downloading a YouTube video is an act of "unauthorized access to *underlying data files*." *Id.* at 11-12. Plaintiffs explicitly rely on this "access to the file" reading for at least three of the five asserted TPMs—the rolling cipher, proof-of-origin token, and session-bound, short-lived URLs. *Id.* at 13-15.

But the Copyright Act forecloses that argument. Mot. 23-24. Plaintiffs do not deny that Section 1201 refers to technological measures that "effectively control[] access to *a work*," not a "*copy*" of a work. 17 U.S.C. § 1201(a)(1)(A). Nor do they dispute the ample case law distinguishing between a "work" and a "copy" of that work. *See*, *e.g.*, *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1160 (9th Cir. 2007) ("[a] photographic image is a work," while "[t]he image stored in the computer is the 'copy' of the work for purposes of copyright law"). Plaintiffs' suggestion that these cases are "unrelated" is wrong. Opp'n 29. The DMCA is part of the Copyright Act, and a protected "work" under the DMCA is one that is "protected under the Copyright Act." *MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 942 (9th Cir. 2010) (alteration accepted) (citation omitted). The same words "presum[ptively]" "'carry the same meaning when they appear in different but related sections'" of the same statute. *Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519, 536 (2013) (citation omitted). A claim of unauthorized access to the "files" embodying a copyrighted work is insufficient to state a claim under Section



LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

1201(a) where the "work" embodied in that file—the actual viewable video—is already accessible. Had Congress intended Section 1201(a) to extend to *copies* of a work, it would have said so. *See, e.g.*, 17 U.S.C. § 106A(e)(2) (distinguishing between a "work" and a "copy of that work").

*Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848 (9th Cir. 2017), does not support Plaintiffs' interpretation. There, VidAngel purchased encrypted DVDs and Blu-ray discs, used software to "remov[e] [the encryption] on the disc," made copies of the work, and used those copies to create a streaming service. *Id.* at 853-54. The plaintiffs sued for both copyright infringement and violation of Section 1201(a)(1). *Id.* at 855.

After concluding that the plaintiffs would likely prevail on their infringement claim, the court turned to the circumvention claim. The court rejected VidAngel's authorization defense, concluding that "lawful purchasers have permission only to view their purchased discs with a DVD or Blu-ray player licensed to decrypt the TPMs." *Id.* at 863. And though the court recognized that the DMCA does not prohibit circumvention of a copy control, it concluded that DVD and Blu-ray encryption served both purposes and that the plaintiffs adequately alleged that VidAngel circumvented its access control component. *Id.* at 863-64.

*VidAngel* thus had no occasion to address the "access to the file" theory at issue here, because the content on the discs was inaccessible for viewing absent *authorized* decryption using a licensed device. Here, by contrast, Plaintiffs *concede* that YouTube's controls allow anyone to "watch and listen to videos" on YouTube "for free." FAC ¶ 35. YouTube's TPMs thus only prevent *copying* of the freely viewable material. And *VidAngel* did not supersede *Hattler v. Ashton* and other cases involving works "accessible for viewing to the general public." No. 16-cv-4099, 2017 WL 11634742, at *5-8 (C.D. Cal. Apr. 20, 2017) (dismissing claim for failure to identify access control where plaintiff identified only a TPM that prohibited downloading, and distinguishing DVD encryption from downloading publicly available works); Mot. 17-18.

Finding no support in either the plain text or case law, Plaintiffs resort to legislative history. Opp'n 29. But legislative history cannot override the plain text. *L.V. Sun, Inc. v. Adelson*, 147 F.4th 1103, 1116 (9th Cir. 2025). Moreover, the cited legislative history did not address the



LATHAM & WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

situation here, where anyone has free access, and thus has "obtained authorized access," to the relevant "work," and the alleged restrictions only control access to the underlying file from which that work can be copied. H.R. Rep. No. 105-551, pt. 1, at 17 (1998). An access control that prevents access to a copy of the work even for viewing would be a quintessential "lock on the door." But that is not the situation here, where YouTube grants access to anyone with an internet connection.

**Measures that permit some forms of access but not others do not qualify as a protected "technological measure that effectively controls access to a work."** Plaintiffs rely heavily on *Ted Entertainment, Inc. v. Snap, Inc.*, No. 26-cv-754, 2026 WL 2435349 (C.D. Cal. Aug. 19, 2026).[2] But that decision rests on a faulty premise: that YouTube's "background authentication and authorization processes" that are completely invisible to the user are qualifying "technological measures" under Section 1201. *Id.* at *5.

But these "background processes" are not access controls. Section 1201 prohibits circumvention only of those measures that "effectively control[] access to a work." 17 U.S.C. § 1201(a)(1)(A). The statute specifies that "a technological measure 'effectively controls access to a work' if the measure, in the ordinary course of its operation, requires *the application of information, or a process or a treatment … to gain access to the work*." *Id.* § 1201(a)(3)(B) (emphasis added).

The Copyright Office has explained that "application of information, or a process or a treatment" refers to affirmative actions like "provid[ing] a password, API key, or some other credential … to gain access." U.S. Copyright Off., *Section 1201 Rulemaking: Ninth Triennial*

---

[2] The *Uncharted Labs* and *Suno* cases mentioned only in passing are likewise unpersuasive. Opp'n 8-9 & n.2. In those cases, the court deferred the statutory construction question because the complaint did "not establish how [YouTube's TPMs] function sufficiently to determine their legal classification." *Sony Music Ent. v. Uncharted Labs, Inc.*, No. 24-cv-4777, 2026 WL 1019199, at *3 (S.D.N.Y. Apr. 15, 2026); *see UMG Recordings, Inc. v. Suno Inc.*, No. 24-cv-11611, 2026 WL 2410184, at *6 (D. Mass. Aug. 18, 2026) (similarly emphasizing that "it is not clear how [the TPMs and circumvention tools] work"). But this gets things exactly backwards. Alleging "a technological measure that effectively controls access to a work" is a material element of a Section 1201(a) claim, and "a complaint [cannot] survive a motion to dismiss when it fails to allege essential elements of a plaintiff's claim." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 340-41 (2020).


LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

*Proceeding to Determine Exemptions to the Prohibition of Circumvention, Recommendation of the Register of Copyrights* at 123 (Oct. 2024), https://www.copyright.gov/1201/2024/2024_Section_1201_Registers_Recommendation.pdf; *see also* H.R. Rep. No. 105-551, pt. 2, at 39 (1998) ("[M]easures that can be deemed to 'effectively control access to a work' would be those based on encryption, scrambling, authentication, or some other measure which requires *the use of a 'key' provided by a copyright owner* to gain access to a work." (emphasis added)). Additionally, a measure cannot "control access to a work" if it "restricts one form of access but leaves another route wide open." *MDY Indus.*, 629 F.3d at 953 (citation omitted).

On Plaintiffs' own account, everyone that enters YouTube's URL into any web browser undergoes background processes "behind the scenes" that exchange data in the course of viewing videos on YouTube. Opp'n 17. But such invisible processes are not measures that require "application of information, or a process or a treatment" to "gain access." Indeed, the Copyright Office rejected the claim that IP-based blocking and rate limiting are access controls for exactly that reason. Mot. 21. A measure that allows a website to "remain[] accessible to users of servers and/or internet service providers that have not been blocked by the Plaintiff's technology" does not effectively control access. *Couponcabin LLC v. Savings.com, Inc.*, No. 14-cv-39, 2016 WL 3181826, at *6 (N.D. Ind. June 8, 2016).

Plaintiffs do not assert that the alleged "background processes" permit authorized users to view the work while blocking unauthorized users. Instead, they at most allege that these measures impose "a limited" control of "access," in which the work is freely available to all who visit YouTube to watch videos, but not those who seek to copy videos. Opp'n 30. This "partial access" theory of liability makes YouTube's measures analogous to those in *MDY*, *Lexmark*, and *Digital Drilling*, which, like here, involved works freely available in some forms. Mot. 17-18. Contrary to Plaintiffs' suggestion, Opp'n 18, 22, these cases do not turn on whether works "s[it] in an open database," *e.g.*, *MDY Indus.*, 629 F.3d at 952-53 (works available only after player purchased game and installed it); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 547 (6th


LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

Cir. 2004) (similar). Indeed, if simply alleging background content delivery mechanics were enough, every piece of content on the internet would be automatically protected by Section 1201(a) since technical information-exchange processes underlie all content delivery on the internet.

Plaintiffs also fault Amazon for interpreting "'effectively *controls* access'" to mean "'effectively *prevents* access,'" when they believe it should mean "effectively control how users access Plaintiffs' works." Opp'n 20-21. But Plaintiffs draw an imaginary line between "control[ing]" and "prevent[ing]" access and add words ("control *how* users access") to the statute that are simply not there. They also ignore the actual statutory text, which states that a measure "effectively controls access" if it requires the application of information "to *gain access* to the work." 17 U.S.C. § 1201(a)(3)(B) (emphasis added). To "gain access" is "to get the right to see." Merriam-Webster, *Gain/Get Access To*, https://www.merriam-webster.com/dictionary/gain%2Fget%20access%20to (last visited Sep. 14, 2026). Everyone with an internet connection has the right to see YouTube videos; the asserted TPMs thus cannot control access at all. Plaintiffs offer no response to this straightforward reading of the statutory text.

**The possibility of "merged" access and copy controls is irrelevant.** Amazon has never disputed that a TPM can be both an access and copy control. *See* Mot. 14; Opp'n 25-26. But Plaintiffs do not explain why the TPMs at issue here are both. Rather, they urge this Court to conclude that YouTube's TPMs are access controls because they prohibit "access" to a copy of a work (the downloadable file). As explained, this argument has no merit. Mot. 23-24; *supra* at 3-5; *see, e.g.*, *Ticketmaster L.L.C. v. RMG Techs., Inc.*, 507 F. Supp. 2d 1096, 1112 (C.D. Cal. 2007) (TPM "controls access" when "a user cannot proceed to the copyright protected webpage without solving [the TPM]" and "protects rights of a copyright owner" when it "prevents users from copying those pages" (emphasis omitted)).

## III. Plaintiffs Have Not Plausibly Alleged That Amazon Circumvented An Access Control

Even if Plaintiffs are correct that YouTube's TPMs *can* function as access controls, that is not enough. Plaintiffs must also allege that *Amazon* circumvented the access control component of the TPM, i.e., that the measures functioned as access controls with respect to Amazon, and that



LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

Amazon circumvented them to "gain access to the work." 17 U.S.C. § 1201(a)(3)(B); *see* Opp'n 27 ("distinction between access controls and copy controls turns on the *function* of the measure"). Plaintiffs have not done so. Their attempts to argue otherwise reimagine the FAC's allegations.

Rolling Cipher: The FAC alleges that the rolling cipher "inhibits access to the underlying audiovisual files for the purposes of any downloading, copying or distribution." FAC ¶ 55. This is not an access control. Mot. 20. Plaintiffs respond by recharacterizing the rolling cipher as a measure that "[e]very user who watches a video [must] encounter[]." Opp'n 13-14. But these allegations are not in the FAC. Plaintiffs cite paragraphs 48 and 54, but they merely describe the general streaming process with no reference to the rolling cipher, and an automated machine-to-machine process to obtain the "file location," respectively. FAC ¶¶ 48, 54. Nowhere in the FAC do Plaintiffs allege that Amazon had to "encounter" or otherwise affirmatively do anything—much less apply any "information, or a process or a treatment"—"to gain access to the work." 17 U.S.C. § 1201(a)(3)(B).

IP-Based Blocking, Rate Limiting, and CAPTCHA Challenges Triggered by Excessive Downloading: The FAC alleges that these TPMs are employed only against certain IP addresses, when those IP addresses exhibit "excessive or abusive request patterns" consistent with "too many download attempts." FAC ¶¶ 36, 57. Only when that happens does YouTube block the IP address or issue a CAPTCHA challenge. *Id.* ¶ 58. The DMCA "affords no protection to technologies designed to discriminate between categories of users." 4 *Nimmer on Copyright* § 12A.06[C][5]; Mot. 20-22.

Plaintiffs respond that these TPMs "were in place at *all* relevant times." Opp'n 18. But whether these TPMs were "in place" does not bear on whether they were triggered each time a YouTube video was watched. This distinguishes these TPMs from the TPMs in *MDY* and *Reddit*, which applied to *every* user trying to access plaintiffs' works. *MDY Indus.*, 629 F.3d at 942, 954 (TPM "scan[ned] [each] player's computer" *before* "a player [could] connect to Blizzard's servers" and "access" plaintiffs' work); *Reddit, Inc. v. SerpApi LLC*, No. 25-cv-8736, 2026 WL 2210094, at *16 (S.D.N.Y. July 31, 2026) (TPM "examine[d] *each* search query to determine


LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

whether it is coming from a recognized or unrecognized source"). YouTube's TPMs, in contrast, are triggered only *after* "bot-and-scraper activity" is detected. Opp'n 15, 18-19.[3] Neither *MDY* nor *Reddit* thus supports Plaintiffs' novel theory that a measure allowing initial access and only later checking for authorization after suspected copying is an access control.

In addition, as alleged by Plaintiffs, Amazon used an IP rotator to avoid triggering the block or "ever responding" to the CAPTCHA challenge, by "presenting to YouTube's servers as a fresh, undetected requester." FAC ¶ 110. Plaintiffs argue that such "avoid[ance]" triggers Section 1201(a) liability. Opp'n 19. But the statute is clear: it prohibits "affirmative[]" acts that "disable[]" or "void" a technological measure. *LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F. Supp. 3d 501, 509 (S.D.N.Y. 2015). Here, Amazon was allowed access to YouTube as anyone else would have been because it was, and received approval as, an authorized user. The "use of the normal process" to gain access to a work does "not avoid or bypass [a] conditional access system because [it] use[s] the intended mechanism." *DISH Network L.L.C. v. World Cable Inc.*, 893 F. Supp. 2d 452, 465-66 (E.D.N.Y. 2012); *see also Adobe Sys. Inc. v. A&S Elecs., Inc.*, No. 15-cv-2288, 2015 WL 13022288, at *8 (N.D. Cal. Aug. 19, 2015) (collecting cases); *I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.*, 307 F. Supp. 2d 521, 532 (S.D.N.Y. 2004).

Short-Lived, Session-Bound Streaming URLs: Plaintiffs' opposition confirms that short-lived, session-bound streaming URLs do not affect the link to "the video file itself"—much less the actual "video file." FAC ¶ 55. Rather, they are temporary URLs to "where the video playback occurs," issued by YouTube so that YouTube does not have to provide the link to the video file. *Id.* According to Plaintiffs, there is nothing a user can do to obtain the link to the video file or the video file itself. And there is nothing a user needs to do to obtain a streaming URL or watch a video using a streaming URL. *See* Opp'n 15 (arguing only that rolling cipher and proof-of-origin tokens kick in *after* obtaining a streaming URL). That is not an access control. In any case,

[3] For this reason, Plaintiffs' CAPTCHA cases are distinguishable. Opp'n 19. Each involves a CAPTCHA challenge that every user had to complete before gaining access to a website at all. *See, e.g.*, *Ticketmaster*, 507 F. Supp. 2d at 1112 (all users must complete a CAPTCHA to "make[] a ticket request on ticketmaster.com," and no user can "proceed to copyright protected webpages without solving CAPTCHA").



LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

Plaintiffs allege that Amazon circumvented these URLs by "programmatically renewing expired credentials and initiating new *authorized* sessions" to download Plaintiffs' works. FAC ¶ 60 (emphasis added). As explained, accessing a work via an "authorized session" is not cognizable under Section 1201(a).

Proof-of-Origin Tokens: Proof-of-origin tokens are not access controls because, according to Plaintiffs, YouTube uses proof-of-origin tokens to ensure that a user is merely viewing—and not downloading—YouTube content. Mot. 22-23. Plaintiffs respond that these tokens "control access by conditioning delivery of copyrighted works on proof that the requester is operating within YouTube's authorized playback environment." Opp'n 14. But Plaintiffs do not allege that Amazon viewed or otherwise accessed their content outside of YouTube's authorized playback environment. Rather, they allege that Amazon used an "automated tool to interact with YouTube's player infrastructure" to obtain the necessary tokens; then "present[ed] valid-appearing proof-of-origin credentials to YouTube's servers." FAC ¶¶ 66-67. Put differently, they at best argue that Amazon obtained "valid" tokens through improper means. *See* Opp'n 15 ("forged key"). Again, "using deception to gain access to copyrighted material is not the type of 'circumvention' that Congress intended to combat in passing the DMCA." *World Cable*, 893 F. Supp. 2d at 464.

## IV. Plaintiffs' Theory Would Eliminate Fair Use In The Digital World

Finally, Plaintiffs appeal to policy considerations, noting that Congress intended for the DMCA to ensure that "content providers" have "both the technology to make new uses possible and the legal framework to ensure they can protect their work from piracy." Opp'n 21. From this, Plaintiffs conclude that Congress intended *Section 1201(a)* to accomplish both purposes; that is, to "prevent users from viewing the works" *and* "protect streamers from piracy." *Id.* But the Ninth Circuit, interpreting the same legislative history, has stated otherwise: "section (a) creates a new anticircumvention right distinct from copyright infringement, while section (b) strengthens the traditional prohibition against copyright infringement." *MDY Indus.*, 629 F.3d at 947-48; *see*


LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

*Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 441 (2d Cir. 2001). Plaintiffs' attempt to collapse subsections (a) and (b) should be rejected.[4]

Plaintiffs respond that unless the Court interprets Section 1201(a) to prohibit copying, "copyright owners like Plaintiffs would never make their works available for on-demand streaming." Opp'n 22. Not so. Amazon does not argue that there is *no* recourse for unauthorized copying—rights owners can address unlawful copying by suing for copyright infringement as Congress intended. But Section 1201(a) is directed at a different problem. It addresses Congress's "concern[] with encouraging copyright owners to make their works available in digital formats such as 'on-demand' or 'pay-per-view,'" *id.* at 21 (quoting *MDY Indus.*, 629 F.3d at 947), by imposing penalties on those who circumvent technologies that limit initial *access*—such as those who access "on-demand" or "pay-per-view" platforms without paying—because such unauthorized access would not otherwise be subject to copyright remedies.

Ultimately, Plaintiffs' complaint is about unauthorized copying of their videos for training generative AI systems; that is the claim they should have brought. It makes no sense to recognize a parallel remedy under the DMCA for unauthorized copying, shorn of all the traditional requirements and defenses that attend copyright infringement claims. And Plaintiffs' interpretation would result in an unprecedented expansion of Section 1201(a) that would convert every anti-downloading measure into an access control. The text, structure, and history of Section 1201(a) all make clear that Congress specifically sought to avoid that outcome. *See* Mot. 10-16.

## CONCLUSION

For these reasons, Amazon's motion should be granted, and Plaintiffs' FAC should be dismissed with prejudice. Although Plaintiffs "request leave to amend" in passing, Opp'n 30, they have already received one opportunity to amend, do not move to amend, and do not "present in

---

[4] The triennial exemption process, which permits the Librarian of Congress to carve out certain "class[es]" of works from the prohibition of circumventing access controls, is irrelevant. 17 U.S.C. § 1201(a)(1)(C). Plaintiffs' theory would still circumvent the fair use defense for a large category of copyright claims—requiring defendants to seek ad hoc, discretionary exemptions for acts of copying that would otherwise be protected by fair use. Indeed, Plaintiffs' argument is directly contrary to Section 1201: "Nothing in this section shall affect … defenses to copyright infringement, including fair use." 17 U.S.C. § 1201(c)(1).



LATHAM&WATKINS LLP
ATTORNEYS AT LAW
1271 AVENUE OF THE AMERICAS
NEW YORK, NY 10020
TEL: (212) 906-1200

conjunction … a proposed amended pleading," *Heggem v. Snohomish Cnty.*, No. 10-cv-1724, 2011 WL 4559057, at *2 (W.D. Wash. Aug. 16, 2011); *see, e.g.*, *Wilson v. Target Corp.*, No. 25-cv-43, 2025 WL 3114455, at *4 (N.D. Cal. Nov. 6, 2025).

Dated: September 14, 2026

By: */s/ Sarang V. Damle*
Sarang V. Damle (*pro hac vice*)
*sy.damle@lw.com*
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Tel: (202) 637-3332

Allison L. Stillman (*pro hac vice*)
*alli.stillman@lw.com*
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200

*/s/ David Freeburg*
David Freeburg (WSBA No. 48935)*
*david.freeburg@us.dlapiper.com*
Danielle Igbokwe
*danielle.igbokwe@us.dlapiper.com*
DLA PIPER LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104
Tel: (206) 839-4800

*Attorneys for Defendant Amazon.com, Inc.*

*I certify that this memorandum contains 4,200 words, in compliance with the Local Civil Rules.